1
2
3
4
5

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

6  DUSTY BUTTON AND MITCHELL
7  TAYLOR BUTTON

                  Case No:

8
9              PLAINTIFFS,

10  V.

11  SIGRID MCCAWLEY

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

12
13
14              DEFENDANT.

REC'D BY_____D.C.

MAY 2 8 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

15
16
17
18
19        Plaintiffs Dusty Button and Mitchell Taylor Button file this
20  Complaint and sue Defendant Sigrid McCawley and allege as follows:

21
22  ## NATURE OF THE ACTION

23  1. This is an action arising from Sigrid McCawley's transmission and
24      publication of intentionally false and defamatory statements made to
25      numerous third parties, the media, the press and hundreds of thousands of

26
27
28

1
COMPLAINT AND DEMAND FOR JURY TRIAL

members of the general public including but not limited to any and all potential jurors about Plaintiffs Dusty Button and Mitchell Taylor Button.

2. More specifically, and as set forth in greater detail below, this case is about the perpetrator and Defendant, Sigrid McCawley, who exploited her position of power and influence as a famous globally renowned and frequently televised attorney, to orchestrate a false and defamatory foundation in order to assure the careers, businesses, reputations and well-known and respected good names of the Plaintiffs in this case were *entirely decimated* **prior** to bringing forth a fraudulent lawsuit on behalf of her clients and their fabricated false allegations, thus intentionally crippling their finances and rendering them incapable of defending themselves against the fraudulent litigation she, and her clients strategically published on the world stage prior to Plaintiffs ever learning that they were being sued.

3. This case is about Sigrid McCawley, an attorney who *knowingly* violated the model rules of professional conduct by making extrajudicial statements that *she knew* would be disseminated by means of public communication and would have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter, by making

*knowingly false statements* in the media and in the press against Plaintiffs in order to create severe bias of *any potential juror* and the public.

4. This is not a case of Plaintiffs "disagreeing" or "disapproving" false statements published about them in the media; this case is an exemplary example of someone with power, fortune, fame and influence, *egregiously* making and amplifying knowingly false and defamatory statements with *actual malice* to a **mass** audience *aggressively, proudly, publicly and repeatedly,* as an orchestrated attack to destroy the livelihoods, businesses, careers and reputations of Plaintiffs though targeted deployments of defamation to the audiences including to those who not only subscribed to every move that Plaintiffs made in their respective careers but to those who merely received daily news by way of the media and the press in a global media campaign waged against Plaintiffs.

5. This case is about an attorney, who blinded by her selfish career aspirations blatantly abused her power and influence in the media and in the press, (weaponizing the fame garnered from her representation of Virginia Giuffre in the Jeffrey Epstein and Ghislaine Maxwell case), to defame, severely harass and threaten Plaintiffs who she *strategically* and *repeatedly* attempts to equate to Epstein and Maxwell in the eyes of her massive public audience to further her image and ride the Epstein wave on

the backs of Plaintiffs, who are drowning in the defamation she uses as her vessel.

6. Indeed, the Defendant personally architected and orchestrated the narrative of her clients' case *prior to preparation* of her clients' complaint whereas, the complaint in and of itself is maliciously defamatory however, the defamatory statements made by Ms. McCawley described herein were made outside of the parameters of privilege and the malicious litigation she created; these statements were knowingly reckless and harmful yet wrongfully justified by her egotistical eagerness to ensure the media and the press published the narrative that she was representing another couple akin to "Epstein and Maxwell".

7. Ms. McCawley knowingly made these defamatory statements to garner public attention prior to filing her clients' complaints and is continuing.

8. Ms. McCawley must be ordered to stop harassing and defaming Plaintiffs through false and defamatory statements in the media.

9. The statements made by Ms. McCawley were not and are not privileged.

10. Ms. McCawley's defamatory statements were *unethically* made outside of litigation, to the media, the press and the public to intentionally and specifically influence any potential juror or person who learned of her clients' allegations and her maliciously frivolous case against Plaintiffs.

4

COMPLAINT AND DEMAND FOR JURY TRIAL

11. This is an action about Defendant's intentional infliction of harm against Plaintiffs including by way of ensuring the media and the press interviewed and published her clients' and her false allegations prior to Plaintiffs *ever being served* or even having knowledge of the lawsuit itself, assuring bias against Plaintiffs by way of the defamatory statements made in the media and the press and which were covered, globally, by virtually every news publication and media outlet beginning in May 13th 2021 and perpetuating to date.

12. As detailed and proven further herein, Ms. McCawley was in possession of all unfounded false police reports and statements, all of which were cleared by exception and had knowledge that both Plaintiffs had never committed nor had they or have they currently ever been charged or convicted of any crime but continued to spread false, defamatory and misleading statements by telling the media, the public and the world that Plaintiffs are, "*a pair of perpetrators who are highly sophisticated, highly manipulative, and are continuing [ ... ]*".

13. Ms. McCawley knew that her statement was false and defamatory but misled the public and any potential juror to believe Plaintiffs had committed a multitude of heinous crimes and were continuing to commit

crimes all of which Ms. McCawley manipulated the world to believe that Plaintiffs had been charged for, thus rendering them *criminals*.

14. The defamatory statements made to the media and the press by Ms. McCawley *were,* and are *now* and *forever* false in their entirety, and were made by Defendant with *actual malice* and/or with a reckless disregard for the truth given that Defendant knew her statements were patently and demonstrably false following her self-professed "hundreds of hours of research and interviews" which the Court will find could have only resulted in one possible outcome, that the claims she made to the media were false and defamatory in their entirety.

15. Defendant made these defamatory statements, which were communicated and published to *millions* of readers and/or viewers, with the intent to harm Plaintiffs given that, *inter alia,* Defendant was and is aware of the truth regarding her defamatory statements and was aware at the time she made those defamatory statements, that they were false.

16. Defendant's defamatory statements were intentionally published to provide traction for her clients' litigation against Dusty and Taylor Button and to ignite extreme disgust and reaction from the public in turn villainizing Plaintiffs to gain an advantage for her clients in the Court of public opinion, a Court that no attorney should play to.

17. Ms. McCawley knew that her defamatory statements would spread like wildfire, and they did; ultimately going viral[1] to the extent of a globally televised interview on a major news publication, which, in turn, *immediately* caused further destruction of Plaintiffs' businesses, careers and reputations, resulting in the termination of *all employment* for Plaintiffs then and forever.

## THE PARTIES

18. Plaintiff Dusty Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina. Ms. Button is the wife of Plaintiff Taylor Button.

19. Plaintiff Taylor Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina. Mr. Button is the husband of Plaintiff Dusty Button.

20. Upon belief, Defendant Sigrid McCawley is an individual who resides and is domiciled in Fort Lauderdale, Florida and is an attorney and managing partner with Boies Schiller & Flexner LLP in Fort Lauderdale, Florida.

## JURISDICTION AND VENUE

---

[1] Viral – relating to or involving an image, video, piece of information, etc., that is circulated rapidly and widely from one internet use to another.

COMPLAINT AND DEMAND FOR JURY TRIAL

21. Plaintiffs are citizens of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C § 1332.

22. Defendant is a citizen of the State of Florida for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

23. This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

24. Pursuant to 28 U.S.C § 1391(b), venue is proper in this Court because the Defendant resides in this district.

25. The Court has general jurisdiction over Defendant as she is a resident of this State.

26. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district by virtue of the transmission and publication of the false and defamatory statements in this district (and elsewhere) and also because Defendant is subject to this Court's personal jurisdiction with respect to this action.

## **FACTUAL BACKGROUND**

1. Plaintiff Dusty Button was a *world-renowned* ballet dancer who trained at the Jacqueline Kennedy Onassis School at the American Ballet Theatre in New York City. In 2007, she joined the Royal Ballet School in London and in 2008 she joined Birmingham Royal Ballet in England.

2. In 2011, Ms. Button danced with American Ballet Theatre.

3. Ms. Button is best known for her work with the Boston Ballet, which she joined in 2012 and was promoted to their highest position of principal ballerina in 2014.

4. Ms. Button was Red Bull's first and only ballet athlete and has been published in media publications across the globe and has positively influenced hundreds of thousands of people nationally and internationally, including by performing and teaching in over thirty different countries and across the United States.

5. Plaintiff Dusty Button's Instagram account, @dusty_button, at the time of the events described herein, amassed nearly half of a million followers and subscribers.

6. Ms. Button deleted her account in 2021 after succumbing to trauma from severe cyber bullying and harassment which Plaintiff endured as a direct result of Sigrid McCawley's defamatory statements, in an unethical play to a mass audience and waging a global media campaign against Plaintiff

to destroy her livelihood, career, reputation and business and to gain attention and traction for her clients' false and fraudulent complaints.

7. Plaintiff Mitchell Taylor Button, (Taylor Button), was one of the world's *most influential* custom Ferrari and military vehicle designers and builders for seven years, approximately from 2014 – 2021, with his work having been published in media publications across the globe for his automotive design, builds and work in the industry.

8. Plaintiff has positively influenced hundreds of thousands of people nationally and internationally and has been procured from global organizations for speaking engagements and commissions that continue to live on with his legacy today despite the destruction of his life's work by Sigrid McCawley.

9. Plaintiff Taylor Button's Instagram account, @button_built, at the time of the events described herein, amassed nearly half of a million followers and subscribers.

10. Mr. Button deleted his account in 2021 after succumbing to the severe cyber bullying and harassment which Plaintiff endured as a direct result of Sigrid McCawley's defamatory statements, in an unethical play to a mass audience and waging a global media campaign against Plaintiff to destroy

his livelihood, career, reputation and business and to gain attention and traction for her clients false and fraudulent complaints.

11. Plaintiffs' names and likeness *was* their business and generated one hundred percent of their yearly revenue whereas, Plaintiffs, themselves and what they provided to their respective industries was *solely* based on what they provided as their name brands, known as Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built, Button Brand, Bravado by Dusty Button, Meisturwerk and Meisturwerk Machinen.

12. Plaintiffs' established businesses, goods and services were directly sourced and provided from their good names, talent, expertise, reputations, skills, manufacturing and marketing capabilities, which were **completely destroyed** by Sigrid McCawley and her abuse of power to influence the media, the public and the press, as a famous, world-renowned attorney.

13. A culture of defamation permeates and plagues the #MeToo movement, particularly in the entertainment industries and has in turn, destroyed the credibility of real victims everywhere, while simultaneously mocking the judicial system and enabling people to weaponize the civil justice system with false accusations, which ultimately have the same consequence on

innocent lives as they would if they were true accusations against guilty parties, rendering Courts and parties afraid to defend against claims of this magnitude due to the inevitable nuclear social fallout.

14. The culture of defamation has dialed the integrity of civil litigation back decades, as recently seen in cases around the world such as Depp v. Heard, Bauer v. Hill and more recently, the Eleanor Williams case in England, all of which proved innocent parties' lives were *completely destroyed* by false and defamatory statements not only in litigation, but in the media and in the press.

15. Other prominent dancers have been publicly defamed and severely harassed in past years, through fraudulent and defamatory statements online including but not limited to British dancer and choreographer Liam Scarlett, who sadly took his own life as a direct cause of false and defamatory statements in the media and through industry gossip.

> *"We feel Liam would not have taken his life if his name hadn't been dragged through the press with inaccurate allegations"*, stated by Deborah Scarlett, Liam's mother.

16. Liam Scarlett was cleared of any wrongdoing, but only *after* his death which included the false and defamatory statements of misconduct with children, which were *all proven to be false* statements but which were

never acknowledged or rectified by any media source **to date**, much like the false and defamatory statements made by Sigrid McCawley.

17. As alleged further herein, Sigrid McCawley is an extremely well-known member of the Florida Bar Association, a self-proclaimed and renowned advocate for victims of sex trafficking, (including but not limited to her representation of Virginia Giuffre) and decorated attorney including:

- *Litigator of the Year by The American Lawyer; Top Ten Female Litigator in 2020 and 2021 by Benchmark Litigation; Finalist for Attorney of the Year in Florida by Daily Business Review; Most Effective Lawyer in Arbitration by Daily Business Review; Leading Lawyer in America by Lawdragon; and Thought Leader 2021 by Corporate Counsel* and a finalist for The American Lawyer's Attorney of the Year for her work representing victims of sexual abuse.

18. Sigrid McCawley currently represents six clients, (*pro hac vice*), in the District Court of Nevada (per diversity jurisdiction), with pending complaints against Plaintiffs, which were filed on July 28th, 2021, September 23rd, 2021 and December 13th, 2021 that carry with them Plaintiffs' currently pending Motion to Dismiss and Counterclaim against all six of Ms. McCawley's clients.

19. Ms. McCawley has not only used manipulative and unethically strategic tactics in the Courtroom but has used those same tactics to defame, harass and destroy the livelihoods, reputations, businesses and careers of Plaintiffs even before they knew they were being sued in order to prevent them from being able to generate revenue necessary to fund a defense for themselves.

20. Ms. McCawley is protected in the Courtroom regardless of the unethical tactics she uses against *pro se* Plaintiffs as she is self-portrayed as the awarded "victims advocate" who "took down Epstein", though her firm is famously known for its illegal and disgraceful relationships and representation of Harvey Weinstein, Theranos and many others.

21. Ms. McCawley continues to enjoy success as a managing partner at Boies Schiller & Flexner LLP while continuing to garner media attention from around the globe in relation to her representation in the Epstein and Maxwell case as well as Plaintiffs litigation, which she meticulously yet redundantly and exhaustingly compares to the case of the disgraced and renowned couple, largely contributing to Plaintiffs losing everything they have ever worked for rendering them jobless, homeless without a single asset to their names.

22. Plaintiffs have suffered *unimaginable* loss to their businesses, careers, reputations, finances, mental health, and overall livelihood and will continue to suffer as a direct and proximate result of Sigrid McCawley's conduct for the painfully foreseeable future.

23. Plaintiffs are currently enrolled into government assisted programs in South Carolina, such as SNAP for food and Medicaid, as Plaintiffs are expecting their first child in August of 2024.

24. Plaintiffs have *no income*, no ability to generate income due to the global media campaign Ms. McCawley attached to their names and have generated *no income* since the onset of the defamatory statements, as a direct result of Sigrid McCawley's intentional infliction of emotional distress and harm on Plaintiffs in order to amplify her representation of her clients' false and frivolous allegations that in themselves had already been amplified through every media service imaginable.

25. Sigrid McCawley **intentionally, willfully** and **maliciously destroyed** Plaintiffs' livelihood, business and future ability to generate work or income in both of their respective industries for the foreseeable future, as their names, likeness and reputations were *obliterated* as a direct result of Sigrid McCawley's intentionally harmful, harassing and defamatory

statements, unethical play to the media and professional misconduct by violation of ethical and moral rules of conduct.

### A. The Nevada District Court Matters

26. On July 28th, 2021, Sage Humphries and Gina Menichino, (represented by Sigrid McCawley and associates from Boies Schiller & Flexner), filed a civil complaint against Plaintiff Taylor Button[2].

27. Plaintiffs discovered through the headlining front-page publishing of The New York Times that this complaint was filed, *prior* to Plaintiff Taylor Button even being served.

28. Plaintiff Dusty Button was *not named* as a Defendant in Ms. Humphries' and Ms. Menichino's complaint.

29. Plaintiff Dusty Button has never met Gina Menichino.

30. The allegations brought forth in the complaint three years ago are fraudulent in and of themselves however, Plaintiffs have since deposed all of Sigrid McCawley's clients and received discovery which proves Sigrid McCawley not only lied to the Court but continued to manipulate the allegations and "backtrack, ( once Plaintiffs' provided evidence proving their crime of perjury to the Court ), in order to protect her name, her

---

[2] See Nevada District Court Case: 2:21-cv-01412-ART-EJY

BAR license and her clients' fraud to the extent of hiring BAR counsel to defend against the complaints currently pending against her.

31. Ms. McCawley knew the statements she made in the media and the press were defamatory, as she was in possession of materials which proved the very statements, she made were false, as verified through her own admissions.

32. As seen further, within this complaint, Ms. McCawley had knowledge that her statements were untrue but made them anyway.

33. Following The New York Times publishing of Sigrid McCawley's defamatory statements and her clients' false and fraudulent allegations, Plaintiff Taylor Button was served with the complaint filed by Sage Humphries and Gina Menichino on July 29th, 2021.

34. The New York Times publication was detrimental to Plaintiffs as it not only contained false and fraudulent allegations, but it intentionally and falsely stated that Plaintiffs, together, abused Ms. Humphries and Ms. Menichino as a direct result of Sigrid McCawley's manipulative narrative.

35. Ms. Menichino was once, a dance student at Centerstage Dance Academy where Plaintiff Taylor Button taught in 2009.

36. Ms. Humphries was never a student of Taylor or Dusty Button's but was in fact, a coworker of Ms. Buttons and was, in 2017, in an open

consensual dating relationship, (as an adult), with both Plaintiffs as
verified through countless documents and Ms. Humphries' own
deposition testimony and admissions.

37. The New York Times article was reposted hundreds of thousands of
times, additionally causing third parties within Plaintiffs' industries to
further defame them; shown more so within this complaint.

38. On September 23rd, 2021, Plaintiffs were met with an amended complaint
by Ms. McCawley whereas Ms. McCawley and her associates recruited
three more litigants whom they added to the amended complaint, as
verified through the admissions and depositions of those recruits; Plaintiff
Taylor Button's ex-girlfriend from 2009, Danielle Gutierrez, another
woman from the same dance studio in 2009, Rosie DeAngelo and a
woman Plaintiffs have never met or heard of, known as Jane Doe 1
( formerly known as Jane Doe 100 ).[3]

39. Following Ms. McCawley's filing of the amended complaint, she
arranged for her clients' to be interviewed by Cosmopolitan Magazine
which included further defamatory, false and misleading statements made
by Ms. McCawley and her clients to again, pour a false foundation and

---

[3] Sigrid McCawley originally filed Jane Doe 1 as Jane Doe 100 in order to lead the public to believe there were hundreds of victims, sensationalizing the complaint for the media. On February 2nd, 2023, the Court ordered Ms. McCawley to refer to Jane Doe 100 as Jane Doe 1.

garner misguided attention from the pliable public easily manipulated by her position of power, ensuring any potential juror would be biased.

40. The allegations brought forth by all three litigants are false in their entirety however, these three complaints prove Sigrid McCawley's defamation further as her defamatory statements about Plaintiffs are not supported by the allegations *even if* the allegations were true, (they are not).

41. Plaintiff Dusty Button has never met any of the three litigants added to the amended complaint which include Danielle Gutierrez, Rosemarie DeAngelo and Jane Doe 1.

42. In fact, Plaintiff Dusty Button **has never met or heard of Jane Doe 1**.

43. In fact, Plaintiff Taylor Button **has never met or heard of Jane Doe 1**.

44. Sigrid McCawley *intentionally, maliciously and knowingly* created a further, false narrative for her clients, which she portrayed to the media and which was entirely and knowingly false and defamatory to gain shock value from the public, globally, to ensure bias any potential juror.

45. On December 13th, 2021, Plaintiffs were **again**, met with an amended complaint; "The Second Amended Complaint", by Sigrid McCawley; two more litigants were added, Plaintiff Taylor Button's ex-girlfriend's best

friend, Jane Doe 2[4] and Juliet Doherty, associate of Plaintiff Dusty Button who Plaintiffs met on one occasion, but who has now withdrawn and revoked her claims in their entirety.

46. The allegations brought forth by these two litigants are false in their entirety *however,* these two complaints prove Sigrid McCawley's defamation further as her defamatory statements about Plaintiffs are not supported by the allegations *even if* the allegations were true, (they are not).

47. Plaintiff Dusty Button has never met Jane Doe 2.

48. Plaintiff Juliet Doherty voluntarily withdrew herself from the litigation after Taylor and Dusty Button proved her allegations to be fraudulent, the day after Plaintiffs requested admissions from her and sent discovery proving her allegations to be fraudulent.

49. Ms. McCawley's intentionally false and defamatory statements only escalated each time the complaint was amended, further defaming, harassing and causing Plaintiffs *extreme distress.*

50. Due to Ms. McCawley's false and defamatory statements to the New York Times and her inner connections with the publishing company, The

---

[4] Sigrid McCawley originally filed Jane Doe 2 as Jane Doe 200 in order to lead the public to believe there were hundreds of victims, sensationalizing the complaint for the media. On February 2nd, 2023, the Court ordered Ms. McCawley to refer to Jane Doe 200 as Jane Doe 2.

New York Times intentionally and falsely published that Plaintiffs "denied the charges".

51. Plaintiffs have never been charged with a crime, as none have been committed.

52. Ironically, but unsurprising, the author of The New York Times article, Julia Jacobs, is represented by none other than Demetri Blaisdell; former associate and lawyer with Boies Schiller & Flexner. At the time of the publishing of Ms. Jacobs article, Mr. Blaisdell was employed by Boies Schiller & Flexner LLP however, upon Plaintiffs contacting Ms. Jacobs and her New York Times attorney David McCraw, they were deferred to Mr. Blaisdell who spontaneously represented her from that moment on, replacing Mr. McCraw.

53. As another example, and as a direct result of Sigrid McCawley's false and defamatory statements in the press and the media, further defamatory statements about Plaintiffs were made including in The Daily Mail which published, *"Boston prima ballerina Dusty Button, 33, was accused last year by seven women of sexual abuse along with her husband Mitchell Button, 37"*.

54. As another example, ABC7 New York published, *"Former ballet star Dusty Button and her husband are accused of sexually abusing several dancers, including a minor"* [...].

55. As another example, Ms. McCawley's interview with Law.com falsely stated, *"When Boies Schiller Flexner managing partner Sigrid McCawley told the makers of the Netflix documentary "Jeffrey Epstein: Filthy Rich" that she was committed to stopping sexual predators through litigation, one viewer was reminded of something she'd tried in vain to forget. That viewer was Boston Ballet dancer Sage Humphries, who claims she was repeatedly sexually assaulted by her dance instructor in 2017 when she was 19 years old."* Ms. McCawley knew her client never once alleged to anyone including herself that she was assaulted by her "dance instructor" in 2017 and instead was in a consensual dating relationship with both Plaintiffs, whereas Plaintiff Mitchell Taylor Button was not a dance instructor, nor was he Sage Humphries' dance instructor and in fact had not been a dance instructor or involved in the dance industry since 2010.

56. Ms. McCawley's narrative that Plaintiffs were a pair of dance instructors abusing seven women went viral; this was intentional on Ms. McCawley's behalf as this shocking narrative comprised of frivolous trigger words was picked up by the media and the press instantaenously.

57. This defamatory statement, which was published globally, was a direct result of Ms. McCawley's knowingly defamatory statement which was, "*As put forth in our complaint, Dusty and Taylor Button assaulted seven different dancers, including women who have chosen to make their claims anonymously.*"

58. Indeed, Ms. McCawley's statements were intentionally false and defamatory as she knew the complaint, which she wrote, did not "put forth" that "Dusty **and** Taylor Button **assaulted seven** different dancers".

59. As previously stated, Plaintiff Dusty Button has met only one of Ms. McCawley's clients which was only Sage Humphries, who to date has not named Dusty Button as a Defendant in her complaint.

60. Plaintiff Taylor Button has never met or heard of Jane Doe 1.

61. Four of the women who filed complaints brought forth false allegations from 2008 and 2009, all four of which Plaintiff Dusty Button has never met or known.

62. Three of those women lied to law enforcement whereas, the District Attorney of the Hillsborough County Sheriff's Department declined to pursue those allegations as the burden was not met and Ms. McCawley's clients were uncooperative and non-responsive to follow-up calls from the detective. Plaintiff Taylor Button was never charged, questioned or

convicted of any crime, much less for the allegations stated by Ms.
McCawley's clients in 2018, (with allegations from 2008 and 2009), who
all filed their false reports at exactly the same time and in conjunction with
Sage Humphries' permanent restraining order being granted at an ex-parte
hearing on the grounds of fraud.

63. Ms. McCawley knew that the Hillsborough County District Attorney
declined to bring criminal charges but continued to falsely accuse Plaintiff
Taylor Button of verified criminal conduct in the media and in the press.

64. Ms. McCawley has also unethically made these defamatory statements and
accusations in Court including that Plaintiff Taylor Button "declined a
polygraph test" and "lawyered up", stating that was the reason he was not
arrested. As the Court is aware, a lawyer does not prevent charges leading
to an inevitable arrest, though Sigrid McCawley has stated on a number of
occasions that it does. Plaintiff Taylor Button never declined a polygraph
test however, unfortunately for the integrity of the Court through public
perception, Ms. McCawley's statements in the litigation are privileged.

65. Two of the women in the complaint are ex-girlfriends of either Plaintiff
Taylor Button or Plaintiffs, together.

66. Ms. McCawley was in possession of these cleared reports prior to each complaint and amended complaint being filed yet, continued to harass and defame Plaintiff Taylor Button in the media and in the press.

67. Ms. McCawley not only unethically played to the media but she *intentionally* created a false and defamatory narrative which was inconsistent with her clients' complaint to convince the public, including any potential juror that her clients' allegations, (though false), were parallel to the allegations which had recently been her "claim to fame" in the Epstein and Maxwell litigation and her representation of Virginia Giuffre.

68. Ms. McCawley *knew* her false and defamatory narrative provided a questionable foundation for the complaints filed but that it would sensationalize and amplify any headline to follow thus fortifying that frivolous foundation.

69. As Ms. McCawley drafted her clients' complaint, she *knowingly* made these defamatory statements to intentionally mislead the public through the press and the media by falsely stating that Plaintiffs, together, abused seven of their students as dance teachers, which is not in any way, shape or form what the complaint states, though the complaint itself, is fraudulent.

70. Defendants' statements were made out of *actual malice*, in an effort to ruin Plaintiffs' livelihood, career, reputations and overall ability to defend themselves against these false and defamatory allegations in the media prior to the onset of her clients' complaint being filed.

71. On May 27th, 2022, Sage Humphries and Sigrid McCawley requested and executed a globally aired interview on Good Morning America further defaming Plaintiffs.

72. In July of 2022, Plaintiffs Dusty and Taylor Button filed a Motion to Dismiss the Second Amended Complaint and Counterclaim in Nevada, adding a third-party complaint against Sage Humphries' parents and three men whom Sage Humphries had illegal and inappropriate sexual relationships with, Daryl Katz[5] (billionaire and owner of the NHL team The Edmonton Oilers), Anthony Giovanni Deane (Sage Humphries' ex-boyfriend whom was more than two decades her senior) and Chase Finlay, (whom Sage dated whilst he was engaged to another woman, thus destroying their engagement and their relationship in its entirety).

73. Ms. McCawley arranged an interview with Gretchen Voss of Boston Magazine for her clients, Sage Humphries and Jane Doe 1.

---

[5] https://edmontonjournal.com/news/local-news/oilers-owner-daryl-katz-and-ballet-dancer-both-deny-allegations-they-had-sexual-relationship - Edmonton Journal Article regarding Sage Humphries and Daryl Katz' relationship.

COMPLAINT AND DEMAND FOR JURY TRIAL

74. On the day Plaintiff Taylor and Dusty Button's counterclaim was filed, Sage Humphries was mid-interview with Gretchen Voss, whereas everything Sage had ever said was disproven by the counterclaim and exhibits which corresponded and which Sage Humphries and her counsel had withheld in order to maintain the false narrative which was created.

75. As previously stated, during Sage Humphries' interview with Gretchen Voss, she abruptly ended her interview before it was completed.

76. Ms. McCawley had actual knowledge of Ms. Humphries' sexual relationships with Anthony Giovanni Deane, Chase Finlay and Daryl Katz.

77. Sage Humphries' and Jane Doe 1's Boston Magazine interview[6] further proves that Sigrid McCawley knew that her clients' statements were defamatory but made them anyway.

78. Jane Doe 1's interview was "so bad" that Ms. McCawley called Gretchen Voss to apologize for her clients' interview as Ms. Voss stated it was "the worst interview she had ever done" due to the fact that Jane Doe 1 could not construct an intelligible storyline that would have been believable even if she had ever met Plaintiffs' Taylor and Dusty Button before, which she has not.

---

[6] https://www.bostonmagazine.com/news/2022/08/02/ballet-scandal-boston/ - Boston Magazine Article about Sage Humphries and Plaintiffs Dusty and Taylor Button, August 2nd, 2022.

COMPLAINT AND DEMAND FOR JURY TRIAL

79. This interview was slanderous and defamatory as Plaintiffs have never met Jane Doe 1 and therefore nothing that she could say would fall in any realm of truth.

80. In August of 2022, after being physically and financially (legally) threatened by Daryl Katz and his hired convicted felon "fixer", Anthony Pellicano[7], against Plaintiffs' demands, Plaintiffs attorney withdrew Daryl Katz (with a tolling agreement) and the other two men from the third-party complaint leaving only Sage Humphries' parents.

81. In October of 2022, Plaintiffs lost their counsel due to the inability to continue funding their representation having already sold all of their assets to fund that representation up to that point.

82. Since October 14th, 2022, Plaintiffs have been *pro se* against Sigrid McCawley, associates of Boies Schiller & Flexner and their six clients, one of whom Plaintiffs have never met or heard of, (Jane Doe 1) but all of who have admitted under oath that they were recruited by Humphries and her counsel and that their claims have no basis or grounds.

83. On February 2nd, 2023, the Nevada District Court held an Oral Argument on several pending motions including Plaintiffs' Counterclaim against

---

[7] https://variety.com/2022/film/news/anthony-pellicano-daryl-katz-marc-randazza-1235349929/ ;
https://thenevadaindependent.com/article/pellicanos-presence-adds-a-new-twist-in-ballerina-sex-exploitation-litigation ; https://www.casino.org/news/mgm-wiretap-p-i-hired-to-disappear-billionaire-ballerina-sex-lawsuit/ ;
articles regarding Daryl Katz hiring Anthony Pellicano to silence Plaintiffs Dusty and Taylor Button.

Sage Humphries, which included supplemental exhibits including text messages between Sage Humphries and her mother regarding her mother's disapproval of her daughter's consensual dating relationship with Taylor and Dusty Button in 2017 and a July 22nd, 2017 false police incident report filed by Sage Humphries' mother, countering Sage Humphries' allegations, in addition to the defamation claims against her for her Good Morning America interview on May 27th, 2022.

84. Sage Humphries filed to dismiss Dusty and Taylor Button's counterclaim against her whereas, the Court DENIED her motion to dismiss the counterclaim of *defamation per se*, further proving Ms. Humphries allegations to be fraudulent and that not only was Sigrid McCawley unethical by creating a narrative to cover up her clients' relationship with Plaintiffs but that Sigrid McCawley's unethical play to the media included a false, defamatory and malicious narrative created for the sole purpose to mislead the public and that her statements were knowingly and *intentionally* false and defamatory against Plaintiffs[8].

85. On February 22nd, 2023, Plaintiffs filed a motion to vacate Sage Humphries' abuse prevention order which was granted in 2017, (which is

---

[8] On February 17th, 2023 Honorable Judge Traum entered an Order denying Sage Humphries' motion to dismiss Dusty and Taylor Button's defamation claim against her whereas the Court stated: "Based on the details herein and in lights of the record as a whole, the Court denies Sage Humphries' Motion to Dismiss the counterclaim of defamation per se."

currently pending appeal on the grounds of fraud on the Court), in Boston, MA.

86. Plaintiffs' discovered evidence of fraud in the Nevada litigation proving Sage Humphries' fraud on the Court in 2017 and 2018 including false police reports and lying to law enforcement, which Plaintiffs were not aware of until the discovery of the Nevada litigation began but which she used to secure her abuse prevention order in 2017 and 2018.

87. On June 11th, 2023, Plaintiffs filed to appeal the decision to vacate Sage Humphries' restraining order on the grounds of fraud on the Court in light of new evidence.

88. Plaintiffs appeal is currently pending in the Massachusetts Appellate Court[9].

89. On February 24th, 2023, Juliet Doherty, (one of Sigrid McCawley's clients), voluntarily withdrew herself from the Nevada litigation.

90. In June of 2023, Plaintiffs filed a Rule 11 Motion for Sanctions against Jane Doe 1 and Sigrid McCawley as they have never met Jane Doe 1 whereas, Plaintiffs proved that her allegations were not only impossible but that Sigrid McCawley had indeed, violated Rule 11 and had not performed a reasonably diligent inquiry into her clients' allegations.

---

[9] Docket number: 2023-P-1202 – Button v. Humphries

COMPLAINT AND DEMAND FOR JURY TRIAL

91. Jane Doe 1's complaint was "amended", forcing a **third** amended complaint.

92. This action resulted in Plaintiffs filing a new motion to dismiss the complaint and filing a new counterclaim against all parties which is still pending.

93. Plaintiffs have deposed all parties involved whereas, their depositions further prove Sigrid McCawley intentionally and knowingly defamed and inflicted harm upon Plaintiffs while simultaneously recruiting her clients who otherwise had no intention of suing Plaintiffs.

94. Plaintiffs have been in litigation with Ms. McCawley pending three years in which, Ms. McCawley continues to intentionally defame and harass Plaintiffs through litigation, the media and the press.

***The Nevada Litigants and Proof that Ms. McCawley Knew Her Statements were False and Defamatory***

**A. Sage Humphries**

95. In 2012, Plaintiffs moved to Massachusetts as Dusty Button became a company member of the Boston Ballet.

96. In 2014, Dusty was promoted to Boston Ballet's highest position in the company as Principal ballerina.

COMPLAINT AND DEMAND FOR JURY TRIAL

97. In 2016, Sage Humphries, who was also a member of the Boston Ballet, introduced herself to Dusty Button at the Boston Ballet whereas, they became good friends.

98. In 2017, Sage Humphries, (nearly twenty years old), infiltrated Plaintiffs' marriage, initiating a physical and sexual relationship with both Plaintiffs, ultimately forming an open dating relationship for about four months from May until July of 2017, thus making Plaintiffs one of dozens of unconventional relationships that Sage Humphries created in her pursuit of freeing herself from the confines of an overcontrolling family.

99. Plaintiffs have never had interest, been involved in or interested in an open relationship prior to allowing Sage Humphries to infiltrate their marriage and would never again do so.

100.    In April, 2017, Plaintiffs were invited to Ms. Humphries' parents' home in California for Easter and to celebrate Plaintiff Taylor Button's birthday which is April 16th.

101.    On April 16th, 2017, Sage Humphries asked Plaintiffs if they wanted to sleep at her father's "law office" which doubled as a "beach house" in Seal Beach, CA – The Law Office of Michael Humphries.

102.    On April 16th, 2017, Sage Humphries stated she had a "surprise" for Taylor's birthday, whereas, she initiated a three-way sexual and

emotional relationship that evening as a proverbial birthday gift for Plaintiffs Taylor Button and Dusty Button, thus blurring the lines between friendship and relationship.

103.     On the morning of April 17th, 2017, Sage's father walked in on the three, nude together in bed, and while making unbroken eye contact simply reminded Sage Humphries of her dentist appointment that morning and left, later directing Plaintiffs where the best coffee place in town was and carried on for the rest of the trip as if nothing happened.

104.     Following the intimate interaction which took place on April 16th, 2017, Sage Humphries and Plaintiffs continued their relationship, ultimately labeling each other as "boyfriend" and "girlfriend" and spending most of their time together in a relationship as Sage Humphries asked Plaintiffs if she could stay at their apartment the majority of the time.

105.     Ms. Humphries' parents never addressed walking in on the three.

106.     Following the April trip to California, Micah Humphries initiated a "group text" with her daughter and Plaintiffs which was regularly used.

107.     In May of 2017, Ms. Humphries' parents again, invited Taylor Button to their home on two occasions while he was there for work, in which he obliged.

COMPLAINT AND DEMAND FOR JURY TRIAL

108.    At the end of April, 2017, Ms. Humphries' parents, (Micah and Michael Humphries), made it clear that they knew she was in a dating relationship with both Plaintiffs whereas, at first, Ms. Humphries' parents accepted the relationship, asking if she could move in with Plaintiffs stating they knew Sage's desire was to move in with them and wanted to make sure it was okay with Plaintiffs.

109.    In May of 2017, Micah Humphries visited Plaintiffs' home in Massachusetts, staying over for one night during her visit.

110.    In May of 2017, Sage's parents sent the summer itinerary they planned for her, giving her dates in which, she was allowed to make her own plans for the summer, though she was an adult, whereas, Sage Humphries made it clear that she already made plans with Plaintiffs to travel to Australia but would adjust her schedule to also fit in what her parents scheduled for her.

111.    Upon Sage Humphries' statements to her mother regarding her summer schedule, there was a complete turn of events, as Sage Humphries was insistent on being allowed to make her own decisions including the text message between Sage and her mother which stated the following:

COMPLAINT AND DEMAND FOR JURY TRIAL

- **Micah Humphries to Sage**: "They are not your masters. I don't know what control. I'm pretty sure this is a threesome and I'm completely weirded out by all of it. You've known them 3 months. I love you sage but this situation is destructive to you and not healthy."

- **Sage Humphries responded to her mother**: 1) "Dusty is texting you regarding what you said about her to dr k. 2) you are paranoid and sound crazy regarding this relationship.

- **Micah Humphries replied:** "It is weird Sage".

- **Sage Humphries replied**: 3) "this is my choice".

- **Micah Humphries**: "Sage".

- **Sage Humphries**: "my life my summer".

- **Micah Humphries**: "I love you with all my heart".

- **Sage Humphries**: "Nobody is controlling my life. You are the only person trying to do so"

112.     Following this argument between Sage and her mother, it was then made clear (in a turn of events), that her parents suddenly did not approve of her decision to be in an open dating relationship with Plaintiffs.

113.     On May 17th, 2017, Micah Humphries texted her daughter, warning her that if she did not end the relationship with Plaintiffs, she

would fly to Boston from California with her husband and forcibly remove Sage.

114.    Sage Humphries ignored her mother's message regarding coming to get her things and instead, continued her relationship with Plaintiffs as she expressed that was her desire.

115.    On May 22nd, 2017, to Plaintiffs' shock, Plaintiff Dusty Button's contract with the Boston Ballet was abruptly terminated for "just cause", with no explanation as to why she was terminated, banning Dusty and Taylor from the Boston Ballet building as well as the Boston Opera House where the performances were held and in fact, would not allow Dusty to collect her belongings from Boston Ballet.

116.    Dusty Button has never received a reason or cause for her termination from Boston Ballet nor was one named in the official documentation however, Plaintiffs now know, Micah and Michael Humphries conspired with Boston Ballet to prematurely terminate Dusty Button's very financially lucrative and prestigious contract.

117.    On May 24th, 2017, Sage Humphries' parents sent her a text that they were in Massachusetts, ordering her to attend dinner and falsifying that Ms. Humphries' grandfather was "dying". He was not.

118.     On May 25th, 2017, Sage Humphries, (who was an adult), went to dinner with Plaintiffs prior to her performance with Boston Ballet.

119.     Upon Sage Humphries arrival to the Boston Opera House, she was escorted out of the Opera House by Boston Ballet staff and forcibly removed by her own parents who were waiting at the Opera House.

120.     Sage Humphries called Plaintiffs screaming for help as she was forced by her parents into a taxi, through the airport and onto a plane, taken back to California to the Humphries' home to be "converted".

121.     Micah and Michael Humphries (admittedly) stripped their daughter of her drivers' license, cell phone and keys to prevent her from leaving their home or contacting Plaintiffs or any other third party for help as they forced her into therapy that they funded with her own money that they stole from her bank account without permission.

122.     On May 27th, 2017, Sage Humphries' parents sent a text message to Plaintiffs threatening them with restraining orders.

COMPLAINT AND DEMAND FOR JURY TRIAL

> **5:09 PM**     53%
>
> 1 (562) ███████
>
> Mon, May 29, 4:54 AM
>
> **Dusty and Taylor**
>
> I have asked you to leave Sage and our family alone, Yet you contact her friends and stalk our home. Restraining orders are being filed.
>
> If you continue to pursue my daughter we will go public to the media to expose your predatory behavior to ensure there are no other victims, and we will prosecute you to the full extent of the law
> We also have evidence of the hacking of her phone
> She knows about ALL of your previous relationships, as well as dusty's firing from the Birmingham ballet
> She no longer wishes to associate with either of you .
> We will notify you when I will come to retrieve my personal belongings from your house that were in Sages use (computer, piano,clothes ) and I will be escorted by the Boston police.
>
> Mike Humphries
>
> Text Message

123.    Simultaneously, and unbeknownst to Ms. Humphries' parents, she

was using their phones to message Plaintiffs, which she pursued on her

own, begging Plaintiffs for help to, "come save her", "come get her" and

"need help", as seen below:



COMPLAINT AND DEMAND FOR JURY TRIAL

124.     On May 28th, 2017, Sage Humphries' father filed two false police

reports, one in California and one in Massachusetts.

125.     Sage Humphries tried to escape his home in California whereas he

called the police for a family disturbance.

126.     Michael Humphries told the police his daughter's ex-boyfriend,

(Plaintiff Taylor Button), boarded a flight, was coming to kidnap her and

take her back to Boston, that Plaintiffs were going to harm Sage and her

family. Sage Humphries told the police that there was no validity to her

fathers' statements to the police and she felt safe, as seen below:

127.     From June 1st until July 18th, 2017, Sage Humphries continued to pursue Plaintiffs, (who were in Australia), via Snapchat using her younger brothers' phone and at times, stranger's phones, begging Plaintiffs to "save her" and to "come get [her]", that her parents were performing exorcisms on her, had kidnapped her and she was being forced into therapy.

128.     Ms. Humphries hid her relationship and contact with Plaintiffs from her parents.

129.     In July of 2017, Ms. Humphries' parents gave her an ultimatum; to either end her dating relationship with Plaintiffs or she would lose everything she ever loved, including that they would not pay for her ticket to go back to Massachusetts to rejoin the Boston Ballet in August of 2017.

130.     On July 10th, 2017, Ms. Humphries warned Plaintiffs of her parents' ultimatum whereas, she additionally warned Plaintiffs that she would leave a fake breakup voicemail on their phones in order to make her parents believe she ended the relationship, allowing her to **go back to** Boston but insisted she wanted to continue the relationship when back in Boston; she just needed to "make her parents think she was ending it".

131.     On July 14th, 2017, Ms. Humphries contacted Plaintiffs and stated her parents were forcing her to see a lawyer, that she got really upset and

left and stating to Plaintiffs that her parents were forcing her to sign restraining orders against Plaintiffs or they would not give her back her freedom.

132.     Sage Humphries did not fill out the restraining order application form, her parents did, forcing Sage Humphries to sign what they had written.

133.     This forgery has since been admitted by Sage Humphries per her deposition in September of 2023.

134.     On July 18th, 2017, Ms. Humphries succumbed to her parents' pressure when her parents admittedly messaged Plaintiffs from her account thus ending her relationship with Plaintiffs.

135.     On July 22nd, 2017, Sage Humphries' filed a false police report with the Orange County Police Department contradicting her prior statements to the police in May in order to have a record that she filed a report in preparation for her restraining order hearing.

136.     The police noted they had previously been called to her parents' home on numerous occasions for the same matter whereas, every report was unfounded as shown below:



[illegible] Orange County Sheriff Department 11:21:16AM

**Call Detail Information Report**

Call Number: 170722-0273

Call Number 170722-0273

**Call Detail Information**

| Call Number | Clerk | Taker | Pos | Call Group | Date - Time Received |
|---|---|---|---|---|---|
| 170722-0273 | C | [illegible] | 12 | | 07/22/2017 11:21:32 |

| Complaint | | Priority | Dispo | RA | How Received |
|---|---|---|---|---|---|
| 422R CRIMINAL THREATS REPORT | | 3 | [illegible] | RC01 | |

| Incident Location | | | Incident City | Grid |
|---|---|---|---|---|
| [redacted] | | | RO | [illegible] |

| Caller Name | | Telephone | | Agency | Tract |
|---|---|---|---|---|---|
| HUMPHRIES, SAGE | [illegible] | [redacted] | | OCSD | RO |

☐ Images ☐ Medical ☐ Hazard ☐ Premises ☐ OK Arrest in Error

| Alt Time | Call Ready | Sent | Dispatch | Enroute | OnScene | Departed | Arrived | Comp | Stat |
|---|---|---|---|---|---|---|---|---|---|
| | 11:21:32 | 11:22:39 | 11:23:55 | 11:23:59 | 12:37:09 | | | 14:57:52 | 1408 |

**Narrative**

[07/22/2017 14:57:52 : [illegible]]
[Cleared with unit 1A08]

[07/22/2017 14:57:09 : MOB : 1a08]
OTHER DEPUTIES HAVE BEEN DISPATCHED TO THE HOUSE REFERENCE SIMILAR CALLS AND THE CALLS WERE UNFOUNDED.

[07/22/2017 14:55:54 : MOB : 1a08]
INF STATES HER DAD ALLOWS HER TO USE THE PHONE BY PERMISSION ONLY, AND HAS SAVED ALL COMMUNICATIONS ON THE PHONE. INF IS WILLINGLY COMMUNICATING WITH THEM ON HER BROTHERS PHONE WHEN SHE DOES NOT HAVE HER DADS PHONE.

[07/22/2017 14:52:19 : MOB : 1a08]
WHEN SHE RETURNS TO BOSTON. SHE HAS BEEN IN CONSTANT COMMUNICATION WITH THE COUPLE WHILE HERE IN ROSSMOOR. SHE ALLOWED ME TO VIEW HER TEXT MESSAGES WITH THEM AND THE MESSAGES WERE INCONSISTANT WITH THE STATEMENTS SHE MADE IN THE INTERVIEW. THE INF IS 19, IMPRESSIONABLE, AND WAS ABLE TO WALK AWAY OR LEAVE THE RELATIONSHIP AT ANY TIME AND CHOSE TO STAY IN IT. THE CRIMES WERE UNFOUNDED AND THE FATHER STATED THEY ARE IN THE PROCESS OF ATTEMPTING TO OBTAIN RESTRAINING ORDERS IN BOSTON.

[07/22/2017 14:45:22 : MOB : 1a08]
FATHER STATED HE CONTACTED BOSTON PD A COUPLE OF MONTHS AGO TO RELAY THE INFORMATION AND THEY ADVISED HIM WHEN THEIR DAUGHTER IS READY TO SPEAK WITH THEM, THEY WILL LOOK INTO IT. INF IS RETURNING TO BOSTON IN A COUPLE OF WEEKS FOR WORK AND WAS PLANNING ON TELLING BOSTON PD ABOUT THE RELATIONSHIP.

[07/22/2017 14:47:11 : MOB : 1a08]
THE 422 WAS UNFOUNDED BASED ON THE INTERVIEW. THE STATEMENTS MADE ON SNAPCHAT WERE INTERPRETED AS SEXUAL IN NATURE AND NOT IMPLIED TO MEAN GREAT BODILY INJURY OR DEATH. THE SEXUAL RELATIONS INCLUDED "BONDAGE" TYPE ROLE PLAYING AND SHE BELIEVED THE STATEMENT WAS REFERENCE TO "BONDAGE"

[07/22/2017 14:45:38 : MOB : 1a08]
CONTACTED INF WHO STATED SHE IS A BALLET DANCER IN BOSTON WHO BEFRIENDED A COUPLE (MITCHELL TAYLOR MOORE AND DUSTY RACHEL BUTTON) ASSOCIATED WITH THE DANCE COMPANY SHE WORKED FOR. SHE WILLINGLY STAYED AT THERE APARTMENT MOST OF THE TIME, CONSENTED TO ENGAGING IN AN OPEN ROMANTIC RELATIONSHIP WITH THEM, HAD CONSENSUAL INTIMATE RELATIONS WITH THEM FOR A FEW MONTHS. 261 WAS UNFOUNDED BASED ON THE INTERVIEW.

Page 1 of 4

137. Plaintiffs were never aware of these reports filed until 2022.

138. On August 1st, 2017, Ms. Humphries filed her application for a temporary restraining order against Plaintiffs in Boston, Massachusetts.

139. On August 14th, 2017, Ms. Humphries was granted a one-year restraining order against Plaintiffs.

140. Sage Humphries perjured herself in Court that day and committed fraud upon the Court to ensure her restraining order was granted.

141.    Sage Humphries omitted every police report in her hearing in order to state she "filed" police reports against Plaintiffs but failed to bring the actual reports proving all of her statements and her parents' statements to the police were unfounded and that her statements in Court were fraudulent.

142.    Sage Humphries has since been deposed, in 2023, whereas, she admitted her restraining order was actually to prevent Plaintiffs from "blackmailing" her, as she previously uploaded a camera roll from her iPhone in 2017 to Plaintiffs hard drive upon request, in order to send her old phone back when upgrading phones.

143.    The camera roll she uploaded in 2017 consisted of screenshotted text messages in her camera roll between her and Daryl Katz, (owner of the Edmonton Oilers hockey team and one of the wealthiest men in the world), proving illegal sexual activities between the two, whereas, Daryl Katz ordered her to open a Swiss bank account that he could access with UBS in order to send Sage Humphries money, in which he sent her at least $50,000.00 in exchange for sexual favors.

144.    Sage Humphries told Plaintiffs this relationship with Katz began when she was seventeen.

145.     Sigrid McCawley's defamatory global media campaign against Plaintiffs, was a published, misdirected and sinister favor to her client, Sage Humphries.

146.     Sage Humphries' father is an attorney, who abused his power by falsifying documents and forcing his daughter to sign them by way of threat and intimidation.

147.     Sage Humphries' father used his connections to ensure his daughter's restraining order was granted as the Judge refused to look at or accept any evidence against Sage Humphries or her parents provided by Plaintiffs that day when they requested their thousands of files be filed as exhibits.

148.     In 2018, on June 11th, Sage Humphries filed another false police report in Massachusetts against Plaintiffs, falsely stating Plaintiffs were selling illegal firearms in California.

149.     This report was unfounded by police as the allegations were false.

150.     On August 14th, 2018, the night before Ms. Humphries' restraining order renewal hearing, Sage Humphries filed another false police report in Massachusetts claiming Plaintiffs were using a third-party to stalk her.

151.     This report was unfounded by police as the allegations were false.

152.     On August 15th, 2018, the Court held an ex-parte hearing whereas, Plaintiffs were not aware of the hearing, nor were they present and Ms. Humphries was granted a permanent restraining order against Plaintiffs.

153.     Sage Humphries used the false statements she reported to police in Court but neglected to bring the actual reports which showed her allegations were all false and unfounded, which Plaintiffs were never aware of until 2022.

154.     Ms. McCawley intentionally lied to the media, the press and the public regarding Sage Humphries stating: *"she had tried to pursue her perpetrators" and [Sage] "tried to get into discussions with detectives and none of that had really come to fruition"*.

155.     As seen, *supra*, Sage Humphries **did** pursue Plaintiffs and in fact, law enforcement was diligent in hearing her allegations on every occasion however, what Ms. McCawley *intentionally excluded* was that, on multiple occasions, due to Sage Humphries' false allegations and inconsistencies in her story, at least on seven different occasions, law enforcement found her statements to be unfounded and inconsistent with the evidence of her consensual dating relationship with Plaintiffs.

156.     Given Defendant's actual knowledge of the relationship between Sage Humphries and Plaintiffs, her repeated statements that Plaintiffs

were perpetrators, criminals, mentors to Sage and predators, are knowingly and entirely defamatory statements made with actual malice, which destroyed Plaintiffs' business and any chance of recovering from the damage which was immediately done to their careers and reputations.

157.    The importance of Defendant's role in this destruction was to eliminate Plaintiffs' ability to work, thus assuring that they would be incapable of funding a defense against her client's frivolous and malicious lawsuit filed against Plaintiffs with the singular purpose of forcing Plaintiffs to destroy evidence that federally incriminates Sage Humphries and one of the wealthiest and most prominent men in the country, Daryl Katz, (owner of the Edmonton Oilers NHL team), for illegal prostitution, which Sage Humphries verified to be authentic through her own admissions, that her mother did in fact sell herself through sexual acts and favors to Mr. Katz for the sum of $50,000.

158.    Ms. McCawley had actual knowledge of Sage Humphries' consensual dating relationship with Plaintiffs and in fact, had the restraining order in her possession from 2017 prior to filing her clients' complaint whereas, the restraining order states that Sage Humphries was never forced, threatened or under duress at any time during her dating relationship with Plaintiffs, including during intimate or sexual relations.

159.     Ms. McCawley intentionally chose to write a frivolous complaint, and embellish on those frivolous and fraudulent statements within the complaint, to the media, misleading the media to believe that Sage Humphries was "mentored" by Plaintiffs, abused and raped.

160.     The evidence of Humphries' and Katz behavior, that the Boston Municipal Court has ruled was the rightful property of Plaintiffs has been the key focus of Ms. Humphries' fraudulent lawsuit, as all parties involved in the Nevada litigation, (aside from Dusty and Taylor Button) have fought, perjured themselves and manipulated the Court in the hopes of forcing the Court to order the destruction of this evidence that will eventually lead to criminal charges against the parties it is relative to.

161.     Mr. Katz, a third-party Defendant in the litigation named above, has abused his wealth and power by hiring a convicted felon to threaten the lives of Plaintiffs while ordering their silence and like Katz, the corruption and illegal activity of his hired "gun" Anthony Pellicano runs deep and that activity has placed them both in various Courts and various headlines over the decades.

162.     While the reasons behind Sigrid McCawley's defamation remain entirely irrelevant, considering that her public shaming and abuse are now and always have been false and malicious in their entirety, the depths of

<div align="center">48</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

the illegal and corrupt connections may illuminate the arrogance required to perform these acts, arrogance that stems from law school and the misguided feelings of immunity that come from attacking innocent people, at the pinnacle of their careers, while knowing they would be financially ruined and incapable of defending against the defamation of a powerful and renowned attorney, backed by one of the most powerful firms in the country.

163.     Illegal prostitution, abuse of power, sex trafficking and egotistical eagerness to promote her litigation... Sigrid McCawley maliciously and aggressively defamed Plaintiffs and destroyed any glimmer of a future they could hope for and did so with zero remorse and a proverbial middle finger to anyone who questioned her authority in the matter.

164.     Sigrid McCawley was in possession of the evidence proving the aforementioned statements to be true *over a year* prior to filing Sage Humphries' complaint including "hundreds of hours" of interviews conducted to diligently investigate her clients' claims.

165.     Ms. McCawley intentionally filed Sage Humphries' complaint with frivolous and fraudulent allegations which, in turn, provided the fuel to the fire of Ms. McCawley's false and defamatory statements to the media, the press and the public including any potential juror.

**B. Gina Menichino, Danielle Gutierrez and Jane Doe 2**

166.     In 2018, Gina Menichino, Danielle Gutierrez and Jane Doe 2 all filed false police reports with the Hillsborough County Sherriff's Department, simultaneously.

167.     Their (false) allegations all state they were abused by Plaintiff Taylor Button in or around 2008 and 2009 but the allegations brought forth all contradict their new complaint filed in 2021 and have been negated by their own deposition testimony as well as other discovery matter.

168.     All three of Sigrid McCawley's clients, (named above), made statements within their reports that are not only false in their entirety but are in no way similar to what Ms. McCawley filed in the complaint and in fact, are corroborated by discovery provided by her clients, proving Ms. McCawley knowingly filed a false and frivolous complaint.

169.     Plaintiff Taylor Button was never aware of these reports or statements to law enforcement until 2022; however, these reports were cleared by exception as the District Attorney declined to press charges against Plaintiff Taylor Button in 2018 and the case was closed.

170.     Ms. McCawley intentionally continues to refer to Plaintiffs as criminals, predators and perpetrators to invoke harassment from third

parties and to ensure the media and the press are controlled by her false

and defamatory narrative which is non-existent.

171.    As one example of proof, Danielle Gutierrez stated to law

enforcement and in a text message to Plaintiff Taylor Button's ex-

girlfriend Courtney Guerin in 2011, "worst I got from him was that he

gave me a bloody lip from elbowing me".

172.    The allegations brought forth by Ms. Gutierrez accuse Mr. Button

of further exaggerated abuse including outrageous allegations of threat

with a knife, squeezing her until her nose bled, dragging her across the

floor by her hair amongst other outlandish and false allegations.

173.    Ms. McCawley was in possession of these documents prior to filing

Ms. Gutierrez's complaint.

174.    Though the above referenced message is untrue in and of itself, Ms.

McCawley had actual knowledge of Danielle Gutierrez's statements in

this particular text message, her statement to the police, her therapy

records and through various messages prior to filing Ms. Gutierrez's

complaint, all of which contradict the frivolous complaint filed which

states numerous instances of violence and abuse, which never occurred

and which are corroborated by the evidence against Ms. Gutierrez.

175.     This is just one of many examples that Sigrid McCawley had actual knowledge of her clients' frivolous complaints but which she continued to disregard and instead, launched a global defamatory media campaign against Plaintiffs.

**C. Jane Doe 1**

176.     Plaintiffs Taylor and Dusty Button have never met or heard of Jane Doe 1, have provided proof that her allegations are literally impossible and filed Rule 11 Sanctions against Ms. McCawley and Jane Doe 1 for filing a frivolous complaint.

177.     Ms. McCawley has severely defamed Plaintiffs with the allegations brought forth by Jane Doe 1 in the complaint however, Ms. McCawley has gone further by defaming Plaintiffs through the media, the press and the public by way of making false and defamatory statements regarding Jane Doe 1 such as:

"*Dusty and Taylor said they would make her a star*".

"*Dusty and Taylor took her back to their apartment, plied her with alcohol and raped her*".

178.     Plaintiffs have never met or heard of Jane Doe 1 however, the defamatory statements made in the media were not even consistent with Jane Doe 1's allegations including because Ms. McCawley stated "she

was a minor", while Jane Doe 1 cannot name a day, month, time, location, season or year which her allegations took place but states she "believes" it took place in 2014.

179.    Jane Doe 1's allegations consist of statements including that she alleges Taylor and Dusty Button raped her at gun point and had an "arsenal" of guns hanging on the wall.

180.    Jane Doe 1 plagiarized Ms. Humphries' affidavit from 2017 whereas, Ms. Humphries' stated Plaintiffs had an "arsenal of guns" however, Plaintiffs disproved these allegations in 2017 with receipts and photos proving they never had any "arsenal of guns" hanging on the wall.

181.    Ms. McCawley was in possession of the receipts from 2017 as well as Sage Humphries' affidavit and therefore, the third-party defamatory statements were a direct result of Sigrid McCawley's unethical false and frivolous filing, including the amended complaint following the Safe Harbor Provision which was issued to Ms. McCawley by Plaintiffs proving Jane Doe 1's allegations are impossible.

182.    In January of 2022, Ms. McCawley and Jane Doe 1 attempted to file charges against Plaintiffs with Homeland Security.

183.    Upon learning of this investigation against Plaintiffs due to Sigrid McCawley's slanderous statements about Plaintiffs to Homeland Security,

Plaintiffs emailed the department and any and all law enforcement agencies associated with the locations Jane Doe 1 stated she lived in, in search for Jane Doe 1's allegations or reports filed with law enforcement.

184.     Plaintiffs discovered that Jane Doe 1 has never filed a report with any law enforcement but instead Sigrid McCawley conspired with her client in an attempt to falsely accuse Plaintiffs and have them prosecuted, who have never met or heard of Jane Doe 1, for allegations that never occurred.

185.     Plaintiffs made contact with the New Bedford Police Department who informed them that Special Agent Evan Picariello from Homeland Security stated, "although the criminal investigation did not result in charges, there is an ongoing civil litigation, and it appears that the Buttons are seeking any information pertaining to the Plaintiffs in an effort to clear their names." And; "No crime occurred in Bedford"[NH].

186.     Ms. McCawley had actual knowledge that her client was lying and is still perjuring herself but continues to make slanderous statements to the media, the press and even law enforcement.

187.     Ms. McCawley's defamatory statements to law enforcement are not privileged and therefore constitute slander, libel and defamation against Plaintiffs.

188.    As a direct and proximate result of Sigrid McCawley's unethical play to the media and eagerness to convince the media and the press, on a global scale, that her clients' allegations were out of Epstein and Maxwell's "playbook", Plaintiffs suffered tremendous and catastrophic loss which will never be recovered.

***Sigrid McCawley's Defamatory Statements made in the Media and the Press***

**A. Sigrid McCawley's False and Defamatory Statement to The New York Times on July, 26th 2021.**

- *"This is a pair of perpetrators who are highly sophisticated, highly manipulative, and are continuing, which is exactly what my clients were concerned about,"* Sigrid McCawley said.

189.    Ms. McCawley intentionally used false and defamatory statements to mislead the public, the media and the press, including any potential juror by stating Plaintiffs were "perpetrators who are highly sophisticated, highly manipulative" and "continuing".

190.    Plaintiffs have never committed a crime or been convicted of a crime.

191.    In fact, Ms. McCawley's clients previously filed false allegations with law enforcement resulting in false police reports filed in 2017 and 2018 in which all reports were either unfounded, declined, not pursued

and/or cleared by exception based on those fraudulent allegations against Plaintiffs.

192.     Sigrid McCawley was in possession of the reports which showed her clients' allegations were false, unfounded and cleared on every occasion.

**B. Sigrid McCawley's Defamatory Statements to The Boston Globe on September 29th, 2021**

- *"What you have here is the highest level of betrayal".*

- *"You see the use of a famous female ballerina to coax these victims into a situation where they become prey for this serial abuser."*

- *"In an instance like this, where you have a serial abuser, you often times see other women feeling empowered enough to come forward and say, 'me, too."*

- *"Each one of these ballerinas wants this abuse to stop".*

193.     The Defendant's statements are not privileged.

194.     Ms. McCawley used false and defamatory statements to mislead the public in the media and the press by stating Plaintiff Dusty Button "coaxed victims into a situation where they become prey for this serial abuse".

195.    Ms. McCawley again, refers to Plaintiff Mitchell Taylor Button as a

"serial abuser" on at least two occasions.

196.    Ms. McCawley refers to her clients in the second amended

complaint as "each one of these ballerinas", yet, the only ballerina is Sage

Humphries; this is relevant as it differentiates the career paths whereas,

Plaintiffs did not mentor and teach these women together as dance

teachers, which is precisely what Ms. McCawley so eagerly and falsely

promoted as a headline.

197.    Plaintiffs never abused anyone.

198.    Ms. McCawley's defamatory statements directly resulted in false

titles and allegations such as:

- "Star ballerina accused of helping husband abuse underage
  girls" – Independent / Yahoo!news

- "In the original lawsuit, two professional dancers allege that Mr.
  Button, assisted by his wife, assaulted young dancers he was
  instructing." – The Daily Mail

- "A star ballerina accused of helping her husband sexually abuse
  two underage girls is now facing similar claims from three other
  women" – The Daily Mail

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- "In the original suit, filed in US District Court in Nevada, Mitchell was the only person named as a defendant, with dusty mentioned as an alleged predator. Since then, three more alleged victims have come forward and joined the expanded lawsuit filed last week. All three of those women have named Dusty as a defendant." – The Daily Mail

- "5 dancers allege sex abuse by Las Vegas instructor and his ballerina wife" – Las Vegas Review Journal

- "The lawsuit alleges that the couple lured their victims by promising them a mentoring relationship, but instead sexually and physically abused them." – Las Vegas Review Journal

- "Five dancers have accused a Las Vegas instructor and his wife, a former star in the Boston Ballet, of sexually abusing them, according to a federal lawsuit". – Las Vegas Review Journal

- "Dusty and Mitchell Taylor Button are accused of sexually assaulting numerous young dancers" – Dailystar.co.uk

- "Former Boston Ballet principal dancer Dusty Button is accused of piling booze onto the girl and taking her back to her gun-filled apartment to be attacked" – MailOnline

- "She is now facing a total of five vile sexual assault allegations, with three more women coming forward in recent days". – Dailystar.co.uk.

**C. Sigrid McCawley's Defamatory Statement to CNN on September 30th, 2021**

- *"Taylor and Dusty Button can no longer use the dance world to perpetrate their criminal behavior against young girls. Brave women are now coming forward and saying this must stop."*

199.     The Defendant's statements are not privileged.

200.     Ms. McCawley used false and defamatory statements to mislead the public in the media and the press by stating Plaintiffs "can no longer use the dance world to perpetrate their criminal behavior against young girls".

201.     Plaintiffs never perpetrated criminal behavior against any person, and especially not against young girls.

202.     Plaintiffs have never committed or been convicted of a crime and in fact, were cleared of any and all false allegations associated with false police reports filed by clients of Sigrid McCawley, whereas she was in possession of those reports which were either unfounded, declined, not pursued or cleared by exception.

**D. Ms. McCawley's defamatory statements to The Daily Star on September 30th, 2021**

- *"Dusty and Mitchell promised to make her [Jane Doe 1] a star before abusing their power"*, Ms. McCawley said.

203.    Ms. McCawley's statements are not privileged.

204.    Ms. McCawley made false and defamatory statements to the media, the press and the public by stating "Dusty and Mitchell promised to make her a star before abusing their power".

205.    Ms. McCawley referred to her client Jane Doe 1, who Plaintiffs have never met.

206.    Plaintiffs have already filed Rule 11 sanctions against Ms. McCawley and her client Jane Doe 1.

207.    Ms. McCawley does not quote the complaint and instead makes a false and defamatory statement to the public, the press and the media which is untrue and harassing towards Plaintiffs.

208.    Ms. McCawley knew that her statements were false and defamatory, intentionally inflicting harm on Plaintiffs by way of her defamatory and false statements.

**E. Sigrid McCawley's Defamatory Statement to Law.com on August 5th, 2021** - https://www.law.com/dailybusinessreview/2021/08/05/a-jeffrey-

epstein-documentary-led-boies-schillers-sigrid-mccawley-to-boston-

ballet-sex-assault-suit/?slreturn=20240327174207

- *"That quote and that commitment rang true with her, because she had tried to pursue her perpetrators, she had a restraining order against them and tried to get into discussions with detectives and none of that had really come to fruition,"* McCawley said. *"She had sort of put it behind her and moved on, but just couldn't. So when she saw that episode, she said that that was really a turning point for her and she picked up the phone and she called me."*

209.    Ms. McCawley's statements are not privileged.

210.    Ms. McCawley used false and defamatory statements to mislead the public in the media and the press by stating her client, "tried to pursue her perpetrators" and "tried to get into discussions with detectives and none of that had really come to fruition", whereas, Sage Humphries, in fact died "pursue" Plaintiffs Dusty and Taylor Button, (her ex-boyfriend and girlfriend) and as admitted by Sigrid McCawley herself, obtained abuse prevention orders against them in 2017.

211.    Sage Humphries did in fact make contact and reported her false allegations, by filing false police reports with multiple law enforcement

agencies including "detectives" from Somerville Police Department, Melrose Police Department, Orange County Sherriff's Department, Boston Police Department and the District Attorney's Office in Somerville, MA.

212.     Plaintiffs have spoken to and subpoenaed every agency listed above whereas, the reports prove that Ms. Humphries in fact did communicate with all of the above-mentioned agencies and that due to her inconsistencies in her testimony and the proof against her allegations, including evidence of a consensual dating relationship with Plaintiffs, her reports were unfounded.

213.     The Somerville District Attorney's Office declined to move forward in pressing any charges following Sage Humphries' false allegations even after she obtained a permanent abuse prevention order, (due to fraud on the Court), in 2018.

214.     Ms. McCawley knew that her client "pursued" Plaintiffs, as she admits in the above referenced quote and in addition, had actual knowledge of the reports and declination of charges against Plaintiffs.

215.     Instead of Ms. McCawley truthfully stating Ms. Humphries had a consensual dating relationship with Plaintiffs, she twisted the narrative

and portrayed Plaintiffs as two "dance instructors" who "mentored" her client and committed criminal acts against her.

216.     Ms. McCawley knew that her statements were defamatory and made them anyway.

217.     Ms. Humphries false allegations were proven unfounded on numerous occasions and Plaintiffs were cleared of any wrong doing on every occasion.

218.     Ms. McCawley's client's "discussions with detectives" came to "fruition" and therefore, Ms. McCawley lied to press and the media by way of speaking false and defamatory statements which were not privileged and in fact, were intentionally misleading, intentionally inflicting harm upon Plaintiffs.

219.     Ms. McCawley declared in litigation that she diligently investigated her clients' allegations beginning over a year and a half prior to filing her complaint whereas, she was in possession of the reports filed by her client proving her allegations to be false, fraudulent and unfounded and additionally was in possession of prove of her clients' "discussions with detectives' which came to "fruition".

220.     Ms. McCawley has stated on a number of occasions that she spent hundreds of hours in interviews and researching her clients' allegations

therefore, proving she knew her statements were defamatory and false but chose to make them anyway, withholding the truth from the media, public and the Court.

- *"Ultimately, the goal of the majority of my clients is really to stop the predators, so it's just: how do we do that?"* McCawley said. *"It's really a beautiful thing to witness Sage and Gina and their strength in being able to come together and stand up against this perpetrator, who is still out there in the dance community, still has full access to young children. When you bring light to the abuse, people are actually more protected."*

221.    Ms. McCawley again refers to Plaintiff Taylor Button as a "perpetrator" who is "still out there in the dance community", and stating Plaintiff has "still has full access to young children".

222.    Ms. McCawley made knowingly false and defamatory statements to the public, the media and the press by misleading them to believe Plaintiffs had again, committed and/or been convicted of a crime and that they were accessing young children in the dance community for abusive purposes.

223.    Plaintiff Taylor Button is not and was never a perpetrator, as proven by evidence.

224. Plaintiffs never knew Sage Humphries as a child; Ms. McCawley's statement regarding "full access to young children" is entirely and utterly defamatory and harassing, intentionally misleading the press, the media and the public including any potential juror that Plaintiffs are "still out there in the dance community", "access" [ing] young children to abuse.

225. This statement in and of itself is not only false but so egregious that it led to a global media campaign against Plaintiffs alleging they were abusing children as dance teachers, which was precisely the narrative Ms. McCawley instigated.

- *"That's really the saddest part of this work for me,"* McCawley said. *"I think we give them back some of themselves by bringing these actions, but we'll never get back the little girl who was 13 in that dance studio, and that's really heartbreaking."*

226. Ms. McCawley used false and defamatory statements to mislead the public, the media and the press by stating "we'll never get back the little girl who was 13 in that dance studio", again, misleading the public, the media and the press to believe Plaintiffs were the cause of her clients' inability to recover her innocence due to criminal behavior committed by Plaintiffs.

227.     Ms. McCawley's clients, Ms. Menichino, Ms. Gutierrez, and Jane
Doe 2, (all best friends from the same dance studio in 2009), previously
filed false police reports together, in 2018 whereas, the DA cleared any
and all false allegations against Plaintiff Taylor Button.

228.     Ms. McCawley was already in possession of this cleared report
from the DA as she had been investigating her clients for over a year and
a half prior to filing her clients' original complaint.

- *"You have a dance teacher who is going to be physically close
  to the student just by the nature of the work that they're doing,
  and a student who wants to impress their teacher and be the best
  that they can be for that instructor,"* McCawley said.

229.     Ms. McCawley's statements are not privileged.

230.     Ms. McCawley's statement and portrayal of Plaintiffs' "closeness"
to any "student" were false, defamatory and misleading to the public, the
media and press as Plaintiff Mitchell Taylor Button was not a dance
teacher at the time of the article being published and was not involved in
the dance industry for over a decade prior to Ms. McCawley's false and
defamatory statements being made.

- "McCawley **said** *the litigation is likely to expand, as she's fielding calls from other women alleging they were victimized by the same perpetrators.*"

231.   Ms. McCawley's statements are not privileged.

232.   Ms. McCawley intentionally stated she was "fielding calls from other women alleging they were victimized by the same perpetrators" in an effort to intentionally inflict harm on Plaintiffs by misleading the public, the press and the media to believe Plaintiffs had committed or been convicted of any crime, had engaged in criminal behavior and had "victimized" an innumerable amount of people, including "young girls" which she previously mentioned in her aforementioned defamatory statements.

### F. Ms. McCawley's Defamatory Statement to Cosmopolitan Magazine on April 5th, 2022

- *"Perpetrators don't really change their playbook."*

233.   Ms. McCawley's statements are not privileged.

234.   Ms. McCawley again, refers to Plaintiffs as "perpetrators", misleading the public, the media and the press to believe that Plaintiffs committed any crime and/or they were convicted of a crime.

235.     Plaintiffs were never convicted of any crime as none have been committed and additionally, Plaintiffs were cleared of any and all false allegations reported to law enforcement whereas, multiple reports were "unfounded" as it was discovered that Ms. McCawley's' clients had lied in their reports.

236.     Ms. McCawley was in possession of these reports prior to making her intentional false and defamatory statements to the public, the media and the press.

237.     Ms. McCawley's reference to a "playbook" is intentionally in reference to the "black book" which was so famously referenced in the media and the press during her representation of Virginia Giuffre in the Epstein and Maxwell case.

238.     Ms. McCawley, once again, *knowingly* made this reference and defamatory statement to mislead the media and the press into believing Plaintiffs were the next Epstein and Maxwell, causing further defamation and severe harassment toward Plaintiffs.

G. **Ms. McCawley's Defamatory Statement to Good Morning America on May 27th, 2022 –**

https://www.goodmorningamerica.com/news/video/ballerina-speaks-sexual-abuse-allegations-boston-ballet-star-85016424

COMPLAINT AND DEMAND FOR JURY TRIAL

- *"I am incredibly proud to be representing this group of survivors in the dance community as they battle for justice."*

239.     Ms. McCawley's statements are not privileged.

240.     On May 27th, 2022, Ms. McCawley and Sage Humphries were interviewed by Amy Robach on ABC News program, Good Morning America.

241.     Ms. McCawley cannot state she is "representing this group of survivors" as they have neither proven they "survived" any allegation stated in their complaints nor did any action take place in which they "survived" such as the "criminal behavior" Ms. McCawley repetitively references against Plaintiffs.

242.     Ms. McCawley set up the interview with Good Morning America, Ms. Robach and her client as her firms' connections, prior connections with the production company and Ms. Robach were closely intertwined, as Ms. Robach initially retained the first list regarding Epstein and Hunter Biden, who was formerly an employee of Boies Schiller & Flexner with Ms. McCawley was previously interviewed by Ms. Robach, allowing Ms. McCawley to ensure her client received her "15 minutes of fame".

243.     Plaintiffs filed a counterclaim of defamation against Ms. McCawley's client, Sage Humphries, pertaining to her interview with

Good Morning America whereas, Ms. McCawley and her client filed to dismiss Plaintiffs' counterclaim however, Ms. Humphries' motion was DENIED as the judge stated, "Based on the details herein and in light of the record as a whole, the Court denies Sage Humphries' Motion to Dismiss the counterclaim of defamation per se.'

244.    Sigrid McCawley was a part of this same defamatory interview.

245.    Ms. McCawley abused her power and influence with the media, intentionally arranging her own interview with Amy Robach and her client, Sage Humphries, whereas, her elite connections with the media and her firm's prior connections with Good Morning America were used to gain notoriety and traction thus supplementing the fraudulent case Ms. McCawley manipulated the press to believe was her next Epstein and Maxwell case.

246.    Ms. McCawley made false and defamatory statements to mislead the public, the press and the media by way of stating she was "representing a group of survivors in the dance community".

247.    Plaintiffs have never met Ms. McCawley's client, Jane Doe 1.

248.    Jane Doe 1 is not involved in the dance community.

249.    Plaintiffs have never abused anyone, have never committed a crime and have never been convicted of a crime.

250.     Ms. McCawley's clients filed false police reports in 2017 and 2018 whereas, every report was either unfounded, declined, cleared by exception or not pursued due to the false allegations of the report.

251.     Ms. McCawley's false and defamatory statements were intentional to mislead the public, the media and the press, including any potential juror to believe her "seven", (now six), clients "survived" abuse committed by Plaintiffs within the dance community.

252.     Ms. McCawley knew that her statements were false, defamatory and misleading and made them anyway.

## H. Ms. McCawley's Defamatory Statements to The Bleacher Report / NBC News and Yahoo.com on July 21st, 2022

- *"Sage had a business relationship with Mr. Katz and there was never any sexual relationship between them. As is typical of abusers facing serious litigation, with four walls of facts closing in, the Buttons have filed counterclaims that distract from and distort the truth. Abusers often try to weaponize the allegations brought against them, and that's exactly what is happening here," she said. "The counterclaims the Buttons have filed falsely and recklessly implicate others, including Daryl Katz,*

*and are a factually unfounded attempt to portray the women*

*they abused as liars."*

253.    Ms. McCawley's statements regarding Daryl Katz are entirely and

knowingly false and defamatory.

254.    Plaintiffs provided proof of her clients' sexual relationship with

Daryl Katz, a man old enough to be her clients' grandfather, who pursued

her through abuse of his power and financial position, as he has

previously been accused of.

255.    Ms. McCawley *knew* Mr. Katz had previously been accused of the

same predatory behavior, yet Ms. McCawley, as a "victims' advocate"

chose to knowingly defame Plaintiffs while protecting Mr. Katz and her

client Ms. Humphries' relationship, defending Mr. Katz.

256.    In fact, upon Plaintiffs submitting such proof in the Nevada District

Court, Sigrid McCawley immediately motioned to seal Plaintiffs' proof of

text messages between her client and Mr. Katz, the tolling agreement

between Plaintiffs and Mr. Katz and even Plaintiffs' own declarations

regarding what Ms. Humphries told them about Mr. Katz.

257.    Ms. McCawley is recognized for "protecting victims" on her public

facing side yet her unethical behavior aggressively sealing evidence from

the public that proves her client was actually a victim of Mr. Katz illegal

and disgusting preying on a girl young enough to be his granddaughter in order to protect his public image is the other side of that corrupt coin

258.　　This defamatory statement about Mr. Katz was intentional and meant to harass Plaintiffs, who had never abused Ms. Humphries and which Ms. McCawley had proof of.

259.　　Sigrid McCawley knew that her statements were harmful, defamatory and false.

260.　　Ms. McCawley again, refers to Plaintiffs as "abusers" on more than one occasion, stating Plaintiffs' counterclaims "distract from and distort the truth", stating Plaintiffs are again, "abusers facing serious litigation" and that Plaintiffs are "weaponizing the allegations brought against them".

261.　　Ms. McCawley also states here that Plaintiffs "filed falsely and recklessly" while "implicate [ing] others" and that their counterclaims are a "factually unfounded attempt to portray the women they abused as liars", thus exposing their true nature.

262.　　Ms. McCawley's statements are not privileged.

263.　　Ms. McCawley knew that her statements were false and/or of reckless disregard for the truth including because she possessed information which proved her clients' allegations to be false and that Plaintiffs statements within their Counterclaim were true.

264.    Ms. McCawley referred to Plaintiffs as "abusers" on three

occasions in one defamatory statement.

265.    Ms. McCawley falsely states Plaintiffs portray the women "they

abused" as liars.

266.    Ms. McCawley knew that her statements were false and

defamatory, misleading the press, the media and public including any

potential juror to prematurely believe that Plaintiffs absolutely "abused"

women and children.

267.    Ms. McCawley's actions are unacceptable.

I.  **Ms. McCawley's Statements to The Daily Mail and Meaww.com on**

**September 28th, 2022** - https://meaww.com/dusty-and-mitchell-button-

accusers-sexually-abused-in-gun-room-but-couple-claims-toy-guns

- *The accusers' attorney Sigrid McCawley said in a statement, "As*

*put forth in our complaint, Dusty and Taylor Button assaulted*

*seven different dancers, including women who have chosen to*

*make their claims anonymously. The Buttons' on-their-heels*

*assertion now that seven different women made up detailed and*

*harrowing accounts of abuse for fame is absurd."*

268.    Ms. McCawley's statements are not privileged.

269.     Though the allegations are false in their entirety, Plaintiffs have **never met or heard of Jane Doe 1**, as asserted for three years now.

270.     Ms. McCawley defamatorily states "Dusty and Taylor Button assaulted seven different dancers, **including** women who have chosen to make their claims anonymously", while hiding behind that anonymity and simultaneously speaking to press and spreading their defamation with protection from the Court from any and all accountability.

271.     Ms. McCawley made knowingly false and defamatory statements by way of stating "*As put forth in our complaint, Dusty **and** Taylor Button assaulted seven different dancers…*".

272.     Ms. McCawley intentionally inflicted harm upon Plaintiffs to mislead the public, the media and the press by knowingly using the word "and" whereas, Ms. McCawley intentionally and maliciously provided misleading statements regarding the "seven different dancers", as this allegation is not even listed in the complaint.

273.     Plaintiffs have never met one of Ms. McCawley's clients.

274.     At the time of the defamatory statement, Plaintiff Dusty Button had only met two of Ms. McCawley's clients stated as the "seven different dancers".

275.     Ms. McCawley intentionally and maliciously stated Plaintiffs, together, "assaulted seven different dancers" by knowingly using the word "and"; misleading the media, the press and the public to believe Plaintiffs assaulted seven women together as dance teachers while those seven were students.

276.     Ms. McCawley knew that her defamatory statements would be far more enticing for the press, the media and the public, exposing her clients to mass media attention and gaining traction in the public eye for the litigation she was leading.

277.     The Defendant intentionally and knowingly made false and defamatory statements by way of stating *"The Buttons' on-their-heels assertion now that seven different women made up detailed and harrowing accounts of abuse for fame is absurd"*.

278.     Ms. McCawley, again, made intentional false and defamatory statements as Plaintiffs have never committed or been convicted of any crime and in fact, in every situation where any client of Ms. McCawley's brough forth false allegations to law enforcement, the reports resulted in unfounded reports, declination by the District Attorney to pursue the allegations and/or declination due to uncooperative behavior with law enforcement in 2017 and 2018.

279.     Ms. McCawley was in possession of such declination in various reports which were closed by each and every law enforcement officer which her clients reported false allegations to.

280.     Plaintiffs were harassed, defamed and threatened due to Ms. McCawley's intentional misrepresentation and/or reckless disregard for the truth as numerous third-party press and media outlets published that Plaintiffs, together, carried out a campaign of abusing children together, including all of Ms. McCawley's clients.

- McCawley added, "*A judge in Boston granted Sage Humphries a permanent restraining orders against the Buttons after hearing her testimony, and stated that he 'fully credited' her testimony making clear that he was satisfied 'beyond a reasonable doubt' that the Buttons' conduct amounted to abuse under the criminal laws. The Buttons are not only engaging in shameless victim-blaming, but they are also intentionally violating the Boston court's restraining orders, which mandated them to surrender information that they stole from Ms. Humphries' cell phone to the Boston Police Department. The Buttons are abusers of young vulnerable women who were in*

*their sphere of influence as aspiring dancers and now the rule of law."*

281.    Ms. McCawley made *knowingly false* and defamatory statements with the intent to mislead the public, the media and the press regarding Ms. Humphries' permanent restraining orders; as Ms. Humphries was not granted permanent restraining orders after hearing her testimony in 2018.

282.    Ms. Humphries did not testify in 2018, her attorney made fraudulent statements on Sage Humphries' behalf in Court on August 15th, 2018 stating Plaintiffs stalked Ms. Humphries and that Plaintiffs were selling illegal firearms in California, (both of which were false allegations), to ensure permanent restraining orders against Plaintiffs, and which is now subject to appeal on the grounds of fraud on the Court.

283.    Plaintiffs were not present for this hearing and the decision was made ex-parte and Plaintiffs were incapable of defending themselves against the false allegations and in fact, were unaware of the fraudulent allegations made in Court in 2018 against them until discovery in the Nevada litigation took place.

284.    Ms. McCawley knew her statements were defamatory as she was in possession of such reports and Court transcripts even prior to Plaintiffs

being aware of this discovery and over a year prior to Ms. Humphries

filing her complaint in 2021.

285.     Ms. McCawley intentionally lied to the press and the media,

misleading the public by way of stating the restraining orders "mandated

them to surrender information that they stole from Ms. Humphries' cell

phone to the Boston Police Department".

286.     Ms. McCawley's statements are not privileged.

287.     Ms. McCawley was in possession of her clients' abuse prevention

orders, (obtained fraudulently), which in fact, does not state that Plaintiffs

are "mandated to surrender information" that Plaintiffs "stole from Ms.

Humphries' cell phone to the Boston Police Department".

288.     The abuse prevention order actually states: *"D (Defendant) is to*

*surrender any and all personal information pertaining to P, including*

*electronically stored information < is not to be published, (arrow up) to*

*Boston Police Department)"*; whereas, it was stated at the 2017 hearing

that Dusty and Taylor Button could turn over any electronically stored

information to Ms. Humphries' attorney rather than the Boston Police

Department, which they did ( as stated in their 2017 Court transcript ).

289.     Ms. McCawley knew that her statements were false whereas, she

has since backtracked her statement regarding stolen information after

COMPLAINT AND DEMAND FOR JURY TRIAL

misleading the Court in Nevada that Plaintiffs stole her data and only after sanctions were issued against them for stolen data; she then backtracked after Ms. Humphries admitted the data was never stolen.

290. The damage from Ms. McCawley's statements was already done as numerous media outlets had already published her statements.

291. Plaintiffs never stole any information from Ms. McCawley's clients' cell phone and in fact, this statement by Ms. McCawley was never written on any restraining order regarding "mandating" Plaintiffs to surrender "stolen" data.

292. Ms. McCawley had the restraining order in her possession whereas, the written order is located on the page (as seen below):

COMPLAINT FOR PROTECTION FROM ABUSE (G.L. c. 209A) Page 1 of 2

1701RO192

TRIAL COURT OF MASSACHUSETTS

Sage Humphries

Dusty Button
445 Artisan Way #531
Somerville MA

I am 18 or older.
I am under the age of 18, and
my ______ (relationship to Plaintiff) has filed this complaint for me.
The Defendant is 18 or older.

The Defendant and Plaintiff:
are currently married to each other
were formerly married to each other
are not married but we are related to each other by blood or marriage; specifically, the Defendant is my
are the parents of one or more children
are not related but live in the same household
were formerly members of the same household
are or were in a dating or engagement relationship.

To my knowledge, the Defendant possesses the following guns, ammunition, firearms identification card, and/or license to carry: has over fifty guns at home

Are there any prior or pending court actions in any state or country involving the Plaintiff and the Defendant for divorce, annulment, separate support, legal separation or abuse prevention? No Yes If Yes, give Court, type of case, date, and (if available) docket no.

Does the Plaintiff have any children under the age of 18? No Yes
If Yes, the Plaintiff shall complete the appropriate parts of Page 2.

On or about (dates) March 2017 through July 2017 I suffered abuse when the Defendant:
attempted to cause me physical harm
placed me in fear of imminent serious physical harm
caused me physical harm
caused me to engage in sexual relations by force, threat or duress.

THEREFORE, I ASK THE COURT:
1. to order the Defendant to stop abusing me by harming, threatening or attempting to harm me physically, or placing me in fear of imminent serious physical harm, or by using force, threat or duress to make me engage in sexual relations.
2. to order the Defendant not to contact me, unless authorized to do so by the Court.
3a. to order the Defendant to leave and remain away from my residence. See Plaintiff Confidential Information Form. If this is an apartment building or other multiple family dwelling, check here.
3b. to order the Defendant to leave and remain away from my workplace. See Plaintiff Confidential Information Form.
3c. to order the Defendant to leave and remain away from my school. See Plaintiff Confidential Information Form.
4a. to order that my residential address not appear on the order.
4b. to order that my workplace address not appear on the order.
4c. to order that my school address not appear on the order.
5. to order the Defendant to pay me $______ in compensation for the following losses suffered as a direct result of the abuse.
6. to order the Defendant, who has a legal obligation to do so, to pay temporary support to me.
7. to order the relief requested on Page 2 of this Complaint pertaining to my minor child or children.
8. to order the following:
9. to order the relief I have requested, except for temporary support for me and/or my child(ren) and for compensation for losses suffered, without advance notice to the Defendant because there is a substantial likelihood of immediate danger of abuse. I understand that if the Court issues such a temporary Order, the Court will schedule a hearing within 10 court business days to determine whether such a temporary Order should be continued, and I must appear in Court on that day if I wish the Order to be continued.

8/1/17 [signature]

Please complete affidavit on reverse of this page.

COURT COPY

293.     As seen, the abuse prevention order states: 1) Are or were in a

dating relationship and 2) was not caused by force, threat or duress to

engage in sexual relations.

294.     Ms. McCawley was in possession of this abuse prevention order

and knew that her statements were false, defamatory and malicious, which

caused severe harassment toward Plaintiffs including prior to filing Sage

Humprhies' complaint alleging rape which is proven false with this abuse

prevention order, amongst other evidence such as Ms. Humphries own

admission during her deposition where she verified that this abuse

prevention order was obtained not to prevent abuse, but to prevent the

public from ever discovering her and Daryl Katz illegal sexual

misconduct.

295.     In fact, Ms. McCawley's client, Sage Humphries has since admitted

that she uploaded her camera roll onto Plaintiffs' hard drive in 2017

whereas, Ms. McCawley knowingly and falsely defamed Plaintiffs by

stating they "stole" information from her clients' "cell phone"; this was an

intentional infliction of harm against Plaintiffs to cause severe distress as

Plaintiffs then stated for three years that they never stole any information

from Ms. Humphries, but which led the press, the media and the public to

believe that they did.

296.     In fact Sigrid McCawley suspiciously obtained a copy of Plaintiff's private tolling agreement with Mr. Katz which she then filed with the Court and sealed without Plaintiff's knowledge.

297.     Ms. McCawley made intentional false and defamatory statements to mislead the press, the media and the public, including any potential juror that Plaintiffs stole information from her clients' cell phone.

298.     Ms. McCawley severely defamed Plaintiffs by stating *"The Buttons are abusers of young vulnerable women who were in their sphere of influence as aspiring dancers and now the rule of law."*

299.     Not only did the Defendant make the defamatory statement that Plaintiffs are abusers, she then states that the "vulnerable women" were "in their sphere of influence as aspiring dancers".

300.     Plaintiffs have never met one of her clients.

301.     Plaintiffs have never abused anyone, have never been convicted of abusing anyone and have never had any engagement with law enforcement regarding abuse; in fact, the false allegations and reports were cleared by exception, were declined, unfounded and not pursued due to the false nature of the allegations and the proof which showed the allegations to be false.

**J. Sigrid McCawley's Defamatory Statements to Cosmopolitan Online Magazine on March 7th, 2023**

- *The plaintiffs' counsel Sigrid McCawley, managing partner at Boies Schiller Flexner LLP and a leading victims' rights attorney, is eager for the trial to begin. "We look forward to putting the women's case before a jury, which will hear the facts of the abuse they suffered while pursuing their dreams as dancers and not the fiction the Buttons are peddling in an act of desperation," she told Cosmopolitan following a February hearing.*

302.    Ms. McCawley's statements are not privileged.

303.    Ms. McCawley's defamatory and false statements intentionally misled the public, the media and the press by stating the jury "will hear the facts of the abuse", "while pursuing their dreams as dancers" and "not the fiction the Buttons are peddling in an act of desperation".

304.    Ms. McCawley stated Plaintiffs are "desperate" as a matter of fact and not as a personal opinion.

305.    Ms. McCawley stated Plaintiffs are "acting" as a matter of fact and not an opinion.

306.    Ms. McCawley referred to Plaintiffs' evidence and measures of defense as a matter of fact and not an opinion by stating that Plaintiffs were "peddling fiction".

307.    Ms. McCawley continued to make defamatory statements about Plaintiffs in the press and in the media *even after* a Court hearing on February 2nd, 2023 whereas, her clients' motion to dismiss Plaintiffs' counterclaim was DENIED and which included factual evidence of her clients' false police reports, perjury to law enforcement and evidence that her clients' allegations were fraudulent.

K. **Sigrid McCawley's Defamatory Statements Made on NBC Miami "How Sigrid McCawley helped bring down Jeffrey Epstein" –** https://www.youtube.com/watch?v=O4Ru8K6xiIY **on January 29th, 2024.**

- *"Most recently we're doing a case on some ballerinas that had been victimized, some of them with the Boston Ballet, so the work has been pro bono in this case, and the commitment of the firm has been astronomical".*

308.    Ms. McCawley's statements are not privileged.

309.    Ms. McCawley made defamatory and false statements in order to intentionally harm Plaintiffs, particularly by unnecessarily inserting an

intentional defamatory statement into an interview about Ms. McCawley's

representation of Virginia Giuffre and "taking down Epstein"; including

by eluding to similarities between Epstein and Maxwell and Plaintiffs at

every opportunity.

310.    Ms. McCawley intentionally and falsely stated, "we're doing a case

on some ballerinas that had been victimized, some of them with the

Boston Ballet".

311.    Ms. McCawley has only ever represented one client with the

Boston Ballet, her client, Ms. Humphries but instead she states that "some

of them" are "with the Boston Ballet", intentionally misleading the public,

the media and the press that there were multiple victims and possibly

children with the Boston Ballet who were abused by Plaintiffs.

312.    Ms. McCawley made false and defamatory statements regarding

her representation by way of stating that she was "doing a case on some

ballerinas" whereas, at the time this defamatory, false and misleading

statement took place, Ms. McCawley was only representing one ballerina,

who was Plaintiffs' ex-girlfriend.

313.    Ms. McCawley knowingly, intentionally and maliciously made

defamatory and false statements to the media, the press and the public,

including any potential juror to mislead them by way of her false statements.

314. Ms. McCawley's statements were intentionally false and defamatory and intentionally inflicted harm on Plaintiffs.

**L. Sigrid McCawley's Biography on the Boies Schiller & Flexner LLP Website**

315. Sigrid McCawley's biography which is posted on the Boies Schiller & Flexner LLP website is defamatory in and of itself as her biography states:

> *"She is also presently representing pro bono a group of ballerinas in their efforts to hold their abusers accountable on sex trafficking charges."*

316. Ms. McCawley intentionally and knowingly presents false and defamatory statements in her biography on the Boies Schiller & Flexner website by stating she is "representing a group of ballerinas".

317. Ms. McCawley is not representing a group of ballerinas, she is representing one ballerina, (Sage Humphries), two contemporary and jazz dance teachers (Danielle Gutierrez and Jane Doe 2), one contemporary dance teacher (Gina Menichino), one unemployed yoga enthusiast (Rosemarie DeAngelo) and one aerobics teacher (Jane Doe 1).

318.     Aside from Sage Humphries and Plaintiff Dusty Button, there are no ballerinas being represented by Ms. McCawley and which has been verified through her client's own depositions.

319.     Again, Ms. McCawley unethically played her false narrative to the media regarding "children", "ballerinas", "dance teachers", "students", and "mentors" amongst other "trigger words" to spread a false narrative that did not exist.

320.     Ms. McCawley's false and defamatory narrative spread like wildfire, including leading the world to believe that Plaintiffs raped children who were their students. This false narrative is not even in the complaint, if the allegations in the complaint were true, which they are not.

321.     Ms. McCawley's unethical acts of delusion and grandeur were a ploy to intentionally manipulate the press, the media, the public, the Court and any potential juror against Plaintiffs before they could even begin their defense nearly three years ago.

322.     Ms. McCawley's biography only includes her representation of Ms. Giuffre in the Epstein and Maxwell case and mention of her representation of her clients in their litigation against Plaintiffs, once

again ensuring a comparative false narrative that Plaintiffs were criminals whose actions were out of Epstein's "playbook".

323.    Ms. McCawley also states in her biography that she is making "effort" to "hold" her clients' "abusers accountable for sex trafficking charges".

324.    Plaintiffs were never facing any "charges" and in fact, have spoken to any and all law enforcement, on their own accord, associated with Sigrid McCawley's and her clients' attempts to falsify allegations to law enforcement, on multiple occasions whereas, Plaintiffs have sought help from law enforcement pertaining to the conspiracy and harassment against them.

### *The Aftermath of Sigrid McCawley's Defamatory Global Media Campaign Waged Against Plaintiffs*

325.    Plaintiffs will never recover from Ms. McCawley's global defamatory media campaign which was unethically and unfairly waged against them prior to the onset of the litigation in Nevada.

326.    Ms. McCawley's reach and her firms' connections are so intertwined with the media and elite network of those who are capable of "shaping the press to purvey their malicious and frivolous narrative" that Plaintiffs could not keep up with the defamatory, harassing and

intimidating statements made by Ms. McCawley, her clients and her associates, particularly once Plaintiffs lost their counsel in October of 2022.

327.     Ms. McCawley knew that the narrative she so eagerly created and spread to the media was one of such an egregious nature that it would inflict severe harm and trauma upon Plaintiffs whereas, there would be no recovery from the defamatory statements made.

328.     The aftermath of Ms. McCawley's defamatory statements and global media campaign against Plaintiffs was catastrophic; preventing Plaintiffs from being able to properly defend themselves in the media and even in their own litigation, including being prevented from taking action against Sigrid McCawley, herself.

329.     Ms. McCawley intentionally arranged for her clients' to be interviewed by Julia Jacobs of The New York Times *prior* to her clients' complaint being filed and Plaintiff Taylor Button being served.

330.     On July 28th, 2021, The New York Times' defamatory article featuring Sigrid McCawley and her clients, Sage Humphries and Gina Menichino was published.

331.     Plaintiff Mitchell Taylor Button was not yet served when the article was published whereas, Plaintiff discovered he was being sued by reading

The New York Times defamatory article which was sent to Plaintiffs by numerous third parties.

332.     Plaintiff Dusty Button was not named as a Defendant in the lawsuit filed by Sage Humphries or Gina Menichino.

333.     The impact of Defendants' defamatory statements to the media, the public and the press was **catastrophic** to Plaintiffs, their livelihood and their mental health.

334.     Immediately, upon the publishing of Defendants' defamatory statements in The New York Times on July 28th, 2021, Plaintiffs' businesses, careers, and reputations were destroyed.

335.     Plaintiffs received *hundreds* of messages directly following the article published in The New York Times whereas, any and all contracted work and sponsorships for the foreseeable future.

336.     This resulted in millions of dollars lost in revenue, assets and income, as Plaintiffs' businesses were destroyed.

337.     As seen, *supra,* Plaintiffs themselves, were their business, contracted by numerous private contractors which immediately ceased working with Plaintiffs following the defamatory global media campaign waged against them, including but not limited to contractors and sponsors

who had employed and worked with Plaintiffs for *over fifteen years,* and

who immediately disassociated themselves from Plaintiffs.

338.    Plaintiffs were sent death threats and harassing messages, as

hundreds of thousands of accounts reposted Defendants' defamatory

statements from the articles which were intentionally harmful to Plaintiffs

as part of Sigrid McCawley's global defamatory media campaign against

Plaintiffs from the onset.

339.    Plaintiffs were physically, forcibly and embarrassingly removed

from public events where their names and likenesses were recognized

from the media that Defendant orchestrated.

340.    Sigrid McCawley's eagerness for exposure of the litigation she was

leading in the media, the press and the public was so egotistical that she

unethically played to the media even before Plaintiffs were served with

the complaint.

341.    Sigrid McCawley even conspired with her client Sage Humphries

to create a defamatory social media campaign against Plaintiffs three

months prior to the complaint being filed whereas, Sage Humphries' best

friend, (Madison Breshears)[10], instigated the campaign that would gain

---

[10] Plaintiffs currently have an ongoing lawsuit against Madison Breshears in The Southern District of New York – see case: 1:24-CV-03757 – Button et al. v Breshears

traction leading up to Ms. Humphries' complaint being filed, as seen in the screenshots below.

342.       Around 9:00pm EST on May 13th, 2021, Plaintiff Dusty Button received an initial attack of two false and defamatory public comments on her Instagram profile page in response to a video she posted of herself dancing from Defendant's personal Instagram account with the username, @mjbreshears[11] which stated the following:

"stop preying on young girls" and "feel like y'all should know she can't keep a ballet job bc she grooms young girls into sex acts with herself and her husband".



---

[11] @mjbreshears is Defendant Madison Jane Breshears' personal Instagram account.

COMPLAINT AND DEMAND FOR JURY TRIAL

343.    Within *seconds* of Plaintiffs blocking and reporting, (what Plaintiffs now know to be Madison Breshears' personal account), @mjbreshears, the following defamatory statements were posted by Madison Breshears on her anonymous, yet famous account @Real_World_Ballerina:

## POST ONE BY MADISON BRESHEARS

"PSA: DUSTY BUTTON IS A PREDATOR"



**POST TWO BY MADISON BRESHEARS**

"This keeps getting removed. And she blocked me. But if you follow Dusty Button, you should know she can't keep a ballet job because she grooms young girls to engage in sex acts with herself and her husband".



COMPLAINT AND DEMAND FOR JURY TRIAL

**POST THREE BY MADISON BRESHEARS**

"[toxic emoji], if u or someone u know has been victimized by dusty_button, u aren't alone. She can't keep a ballet job because she grooms young dancers for sex acts with herself and her husband. This will probably get removed, she has managed to block and remove my other posts, but I hope at least someone can see this [toxic emoji]".



**POST FOUR BY MADISON BRESHEARS**

"I have friends who have personally been victimized, or known someone victimized by @dusty_button. Don't give her a platform".

COMPLAINT AND DEMAND FOR JURY TRIAL



## POST FIVE BY MADISON BRESHEARS

"I don't expect anyone to take my word on faith! This is a serious accusation,

and you are justified in being skeptical. From my end, knowing what I know

(but am unable to disclose in detail), I feel like the right thing to do is at least

warn you guys. If anyone is at least a little more careful or cautious around her,

it's worth it to me."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

11:53

I don't expect anyone to
take my word on faith! This
is a serious accusation, and
you are justified in being
skeptical.

From my end, knowing what I
know (but am unable to
disclose in detail) I feel
like the right thing to do
is at least warn you guys.
If anyone is at least a
little more careful or
cautious around her, it's
worth it to me.

Believe victims doesn't
even apply here, IM NOT A
VICTIM. I'm here to say
keep asking questions. stay
alert, stay safe, I love u

25
26
27
28

344.     As a direct result of Ms. McCawley "diligently investigating" her

client, Madison Breshears posted near exact verbiage of what would be

written in Sigrid McCawley's complaint three months later.

345.    For the record, Madsion Breshears is an attorney in New York at Davis Wright Tremaine LLP in Manhattan, NY.

346.    For examples seen in the below screenshots, Plaintiffs' previous "fan page" accounts on social media were transitioned into hate pages due to Ms. McCawley's defamatory statements in the press and the media; every person formerly associated with Plaintiffs believed they were going to prison as a direct cause of Ms. McCawley's defamatory statements:

• "Hey Dusty! I hope prison is everything you hope for! Maybe those tilts and competition tricks will come in handy behind bars?! Best of luck!" – Instagram user - @lauramarbs



COMPLAINT AND DEMAND FOR JURY TRIAL

- "@schonraker_foto him and the missus have been too busy BF'n[12] little girls to make social media posts it would appear" – Instagram user @the_mechanicalanimal.



- "Hi! According to a recent post by @real_world_ballerina, dusty button is a predator who is not someone people should be looking up to! Just spreading the word." – Instagram User - @cheryltanxr



---

[12] *BF'n – abbreviation for "butt fucking" but which means "sodomizing"; in this case, a female child.

COMPLAINT AND DEMAND FOR JURY TRIAL

- "#dustybutton You child rap1st[13] P#S[14]. You need to be thrown in a wood

    chipper." -- Instagram User - @dunerooster

    - "Child rapist POS[15]. You need to be thrown in a wood chipper." --

    Instagram User - @dunerooster



347.     As another example, (as depicted by the screenshot below),

following the initial post, numerous hate pages and accounts were created

as a direct result of Sigrid McCawley's conspiring and defamatory

statements, in order to bully, harass and threaten Plaintiffs.

- Username -- @dusty_button_hatepage

---

[13] Rap1st = rapist.
[14] P#S = Piece of shit.
[15] POS = piece of shit.



348.    This is just a *fraction* of the communications, notifications, threats and harassment which Plaintiffs received following Defendants' defamatory post, all of which Plaintiffs have documented and preserved for discovery.

349.     As a direct result of Sigrid McCawley's defamatory statements,

Plaintiffs received further harassing and defamatory messages regarding

posts on the internet:



350.     Ms. McCawley uses unethical behavior inside and outside of the

Courtroom to ensure her manipulative tactics gain and advantage for

herself and her clients, conspiring with her clients to defame and harass

Plaintiffs by whatever means necessary.

351.    Ms. McCawley's defamatory statements were intentional, willful and malicious whereas, she knowingly made false and defamatory statements about Plaintiffs.

352.    Ms. McCawley's intentional defamatory statements caused Plaintiffs severe emotional distress including because Ms. McCawley ensured Plaintiffs discovered they were being sued through The New York Times article about her clients' rather than the appropriate manner of being served a summons.

353.    Ms. McCawley's unethical behavior and defamatory statements to the media, the press and the public was the direct cause of Plaintiffs' loss of income, destruction of reputation and careers and severe emotional trauma.

354.    Due to Ms. McCawley's intentional defamatory statements and arrangement of a global media campaign against Plaintiffs, Dusty and Taylor Button immediately lost any and all business including that those who once employed and had business relations with Plaintiffs, entirely disassociated from them including but not limited to the examples of text messages below:

- Email from Holly Tudor Miles of BLOCH INC. who Plaintiff worked for and had a business and personal relationship with for over fifteen years but who completely disassociated from Plaintiff *immediately* following The New York Times article, with no questions asked, just one day after the defamatory article, arranged by Sigrid McCawley was published.



- Text message from Bree Hafen to Dusty Button, notifying Plaintiff of terminated agreement and negotiations regarding a collaboration.

**Mon, Jun 21 5:14 PM**

Checking in. I want you to know....

I believe you. I believe 100% that you are innocent. I will support you and defend you always!

The way things have gone I'm afraid we need to put an indefinite pause/halt on what we are doing together. The truth is, Even though I firmly believe in your innocence...I feel it is going to take time to repair the damage that has been done, and *financially - it's hard to continue* developing a line with you that I just can't assure can to come to fruition.

I'm not sure how to reconcile something like this. I feel so torn inside. I would love to ask for your blessing to move forward with the two leos/crops that I altered the original designs. The third that we kept 100% the same... I wouldn't feel right asking to continue to develop that piece knowing that it was all your original sketch.

If you don't feel comfortable with that, I understand and I will honor your wishes... I just hate that the development funds will be wasted at that point. But ultimately I feel this needs to be your call, and I will respect your wishes either way. Just let me know your thoughts.

Thank you for the message. Do whatever is financially best for you. I appreciate your words.
At the end of the day there's a reason why

- Text message from Shelby Richardson to Dusty Button, notifying

  Plaintiff of termination of employment.

Mon, Jul 19, 9:38 AM

Hi Dusty,

First and foremost we wanted to thank you for all that you have taught our kids and bringing the love of ballet back into the classroom as its such a huge part of our program. However, at this time we will not be having you at our intensive this year. We had some concerned parents come forward with some social media posts and feel that we cannot ignore them even if social media is to be taken with a grain of salt. Our top priority is our families and the dance community we have built. This is a time where we need to put them first. I really hope you can understand where we are coming from as we truly have enjoyed having you at the studio and we are hopeful that we will have you back very soon. Again, thank you so much for all that you have done for our students. We will miss you having you at the intensive.

- Text message from Jacqueline Porter, (owner and director of The Dallas Conservatory), to Dusty Button, notifying Plaintiff of termination of employment.

**Wed, Jun 16, 7:07 AM**

Hi, Dusty. I am sure you might have been expecting this. With profound respect for you and your years of incredible work ... and gratitude for your work with our children ... and deep regret for the situation that you find yourself in, I will need to cancel our agreement to bring you in for intensive.

There is a possibility that private clients who respect your work as I do might have you do a solo.

355.     These messages are just an example and a *tiny fraction* of what Plaintiffs suffered by way of loss of business and employment.

356.     As another example, as a direct result of Sigrid McCawley's defamatory statements, an entire forum discussion was started to additionally defame, harass and threaten Plaintiffs, and additionally update the forum on cancelled business in which third parties were conspiring with Sigrid McCawley's clients to send defamatory messages to Plaintiffs' employers, contractors and sponsors as seen in just a few examples below:

**Parents at the Barre**
Kim Johnson Comelek · 3d · 🌐

EDITED: The Dallas Conservatory has now removed Dusty Button from their summer intensive faculty roster. Thank you AGAIN to those who spoke out against sexual predators and stood up for young women! Thank you to TDC for doing the right thing immediately upon being informed. 🙏

ANYONE WHO IS A VICTIM OF DUSTY BUTTON &/OR HER HUSBAND SHOULD CONTACT The Dance Safe.

The Grand Premier Invitational has CANCELLED their contract with Dusty Button to appear at their 2 summer intensives. While the owners of the intensive are aware of her and her husband being a sexual predators, Natalia Bashakova was not. She is the ballet mistress of the organization and upon several people reaching out to her over the weekend to inform her, she has done the right thing.

I want to thank those members here who took action after seeing my original post and stood up to protect children & women. It took less than 24 hours to make a difference! Let us not be silent! Let's keep standing together! 🙌

I'm NOT wanting to revisit a debate on this, so I

---

**Kim's Post**

predators in her story, so notifications come & go.
3d   Like   Reply

**Mary Ewart**
Kim Johnson Comelek can you post her account link?
3d   Like   Reply

**Kim Johnson Comelek**
Mary Ewart @jojogomezxo
3d   Like   Reply

Write a reply...

**Meredith Floyd Stephenson**
The Dallas Conservatory just cancelled her contract for this summer's intensive. Glad to know they are on top of things.
3d   Like   Reply   3 😮😊

**Kim Johnson Comelek**
Meredith Floyd Stephenson THIS IS AMAZING! Thank you for updating us!!!!
3d   Like   Reply

Write a reply...

---

357.    As a direct result of Sigrid McCawley's defamatory statements, an

entire Reddit discussion was created to further spread this defamation,

harass, shame, embarrass and threaten Plaintiffs including defamatory

posts from "anonymous" users which further destroyed the reputations of

Plaintiffs including but not limited to the following screenshots below:

"I heard her and her husband had an underage prostitute overdose in their room

in Vegas" – anonymous user on Reddit known as u/dancerd13.

COMPLAINT AND DEMAND FOR JURY TRIAL



- Reddit thread created to defame Plaintiffs as a direct result of Sigrid McCawley's false and defamatory statements – Username @scarletdancer.



358.     Further examples of defamatory and harassing posts as a direct

result of Sigrid McCawley's false and defamatory remarks are below:

"Now that it's finally public that Dusty Button is a sexual predator, don't you

think it's time ya'll stop following her on Instagram? That your children stop

following her? That your company stops following her? Who we follow is a

reflection of our own values. Do you share the values of a sexual predator?" –

Username: Kim Comelek



COMPLAINT AND DEMAND FOR JURY TRIAL

- "Yikes. Who MAKES us set goals that we can ONLY reach with them"
  [eye roll emoji].  Yeah, congrats on achieving your abuse goals. Wonder
  if sexually assaulting minors was worth your career dissolving over.
  You're not enough for him; you never were, never will be. You can not be
  the missing piece for a sociopath and pedophile."



- "like not to be crazy but can we tag all her recent gigs and any other dance competitions bc she shouldn't be working with children". – Instagram user @bae.hamas.



- "Pedo" – Instagram user @royalt_xo



- "Care to address your partnership with @dusty_button considering the latest accusations against her?" – Instagram user @blossomandbranchfam to Plaintiff's sponsor BLOCH Inc.



- "I heard her and her husband had an underage prostitute overdose in their room in Vegas"; "where did you hear that??; "Just from a friend who

1

2

3

knows a lot, not reputable but dusty and her husband are clearly abusing

young dancers. More are coming out now."



359.    These above referenced screenshots from third parties are just a

*fraction* of the loss of reputation and business, harassment, bullying,

threats and further defamation Plaintiffs received as a direct result of

Sigrid McCawley's false and defamatory statements made in the media.

360.    Due to Ms. McCawley's defamatory, false and misleading

statements, Plaintiffs were harassed and threatened by third parties,

including death threats and cyber harassment which followed directly

after her defamatory statements were published in the media and the

press.

361.     Ms. McCawley intentionally manipulated and misled the world to believe Plaintiff Taylor Button was "fleeing" the Country when he moved to be with his wife, (then girlfriend), while she was working for the Birmingham Royal Ballet in England.

362.     Ms. McCawley's false and defamatory statements regarding Plaintiff Taylor Button's move to England encouraged further defamation of Plaintiffs.

363.     In addition to these statements, Ms. McCawley also stated that Plaintiff Taylor Button has "several aliases" that he goes by in order to escape his criminal activity. Plaintiff Taylor Button was born with the name Mitchell Taylor Moore whereas, some of his family and friends referred to him as Mitch or Mitchell and others referred to him as Taylor.

364.     Plaintiff Taylor Button took his wife's last name when they were married as most women take their husband's last name and Plaintiff Dusty Button was the last to carry on the Button name which Plaintiffs will now pass on to their son.  Plaintiff Taylor Button took his wife's name to honor her grandfather who passed away during the first wave of defamation that Ms. McCawley's client curated prior to their partnership.

365.     Ms. McCawley's intentional defamatory statements, leading the public and any potential juror to believe Mr. Button changed his name for

any other purpose than to take the last name of his wife is malicious,

unethical and morally wrong as it immediately caused severe harassment,

bullying and further defamation of Plaintiffs.

366.    In fact, due to Ms. McCawley intentionally sensationalizing her

clients' complaint, the Nevada District Court granted Plaintiffs' motion to

strike certain portions of her complaint as they were intentionally meant

to mislead and sensationalize the complaint and had nothing to do with

the allegations brought forth.

367.    As an example, this "anonymous" Reddit user took to the forum to

harass and defame Plaintiffs as a direct result of Sigrid McCawley's

defamatory statements made in the media and in the written complaint.



368.    For the record, Mr. Button has never been sued prior to July 28th,

2021 and has never been accused of any crime or other criminal behavior,

including the allegations brought forth twelve years after he left the

country to be with his wife. Plaintiffs left England in 2011 and did not get married until 2015 whereas, Plaintiff Taylor Button took his wife's last name as an act of chivalry and respect to Dusty's grandfather who passed away in 2017 and therefore did not change his name when he left the country, nor did he "flee" the Country. These defamatory statements were a direct cause of Ms. McCawley's defamatory remarks written in her clients' complaint where she stated, "Taylor fled to London, England".

369.    Although Ms. McCawley's defamatory and egregious statements in the complaint are protected, her defamation in the media is not.

370.    Ms. McCawley knew her statements inside and outside the Courtroom were defamatory and harassing but was intentionally manipulative, deceitful and harassing toward Plaintiffs as she knew that her name, her firm's name and her accolades would excuse her behavior however, Ms. McCawley's unethical tactics and eagerness to destroy the lives of two people who did not deserve the harm she caused, should not go unpunished.

**Sigrid McCawley's Destruction of Plaintiffs' Business, Goods and Services**

371.    As stated in the above references, Plaintiffs' names and likeness was their *only business*, which generated literally all of their revenue, income and business, whereas Plaintiffs, themselves, and what they

provided to their respective industries was solely based on what they provided as their name brands known as Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built, Button Brand and Bravado by Dusty Button.

372.     Plaintiffs' established business, goods and services were directly sourced and provided from their good names, talent, expertise and reputations, which were completely destroyed by Sigrid McCawley, her unethical play to the media and the press and her defamatory posts and remarks.

373.     As stated in the above referenced facts, Plaintiffs were highly respected, extremely well-known, leaders of the dance industry and the automotive industry, and reliant on their businesses which were well established for over fifteen years, as each Plaintiff was their own business in which they were hired based on their desired skill sets in their industries, which others could not offer.

374.     Plaintiffs had established business with signed negotiated contracts with three companies to manufacture and sell their dancewear line which was in its initial phase and well under way as Plaintiffs were beginning the second wave of these partnerships when Sigrid McCawley's defamatory statements derailed all operations.

375.     Plaintiffs lost any and all business immediately and for the foreseeable future as a direct result of Sigrid McCawley's unethical play to the media and intentional defamatory statements.

376.     Sigrid McCawley made her statements with actual malice as she knew that, as a result of the publications, the Plaintiffs would suffer financial harm.

377.     Sigrid McCawley knew that her statements were false and intentionally crippled Plaintiffs' business and ability to generate revenue and income as she maliciously referred to Plaintiffs' goods and services because the "power" she claims Plaintiffs "abused" was the power of their business which was their talent, expertise and their reputable names.

378.     Sigrid McCawley knew that her statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Dusty Buttons' teaching, provided choreography, modeling, dancing, guest performing, speaking engagements, design concepts, marketing and brand ambassadorship, all of which were destroyed as Plaintiff Dusty Button was her own goods and services, as her name and career was her brand and her business.

379.     Sigrid McCawley knew that her statements were false and intentionally crippled Plaintiffs' goods and services which included

Plaintiff Taylor Buttons' design work, custom automotive creations, sponsorships, commercial shoots, events, marketing, advertising and speaking engagements, all of which were destroyed as Plaintiff Taylor Button was his own goods and services, as his name and career was his brand and his business.

380.    Sigrid McCawley intentionally, willfully and maliciously made defamatory statements to numerous media and press outlets which in turn, resulted in further defamation by hundreds of thousands of third parties on social media, in the press and other new outlets.

381.    Defendants' defamatory post spread like fuel-soaked wildfire throughout the dance industry and community, automotive industry and community and further, to dance and automotive forums including but not limited to Facebook, Reddit and TikTok and was widely spread via communications through various messaging platforms nationally and internationally.

382.    Sigrid McCawley's defamatory remarks were not only spread in written form but were widely spread via word of mouth through the grapevine of the industries which Plaintiffs were so highly respected and prominent in.

383. Sigrid McCawley was the curator and creator defamatory remarks and posts in which she had complete control of, using her influence and abuse of power to reach millions of people to intentionally, willfully and maliciously defame Plaintiffs while knowingly inflicting intentional harm on Plaintiffs and their business and reputations.

384. Sigrid McCawley's defamatory posts and remarks to a mass media audience was intentionally dishonest and her defamatory remarks were stated for an improper motive with the intent to injure Plaintiffs without just cause or excuse.

385. Sigrid McCawley knew that, as a result of the publications, Plaintiffs would suffer financial harm and never be capable of generating revenue using their names again.

386. Plaintiffs suffered complete loss of business and sales including that their income was solely based on a per performance basis whereas, Plaintiffs' income was generated upon completion of work as they were themselves, their business.

387. For example, Plaintiff Dusty Button's teaching classes and performances were immediately canceled following Sigrid McCawley's defamatory statements including but not limited to, in The New York Times.

388.     As another example, Plaintiff Dusty Button immediately lost any and all business with all scheduled dance studios, summer intensive courses, and events which she was scheduled to guest teach and choreograph for, including scheduled guest performance appearances nationally and internationally as a direct result of Sigrid McCawley's defamatory statements and unethical play to the press and the media.

389.     As another example, Plaintiff Taylor Button immediately lost any and all business related to his brands including his business and brand "Button Built", with all scheduled events in the automotive industry including pre-planned design builds for clients and customers including prominent name brands which were sponsors of Plaintiff Taylor Button, all of whom canceled their builds and design concept work with Plaintiff for the foreseeable future.

390.     Further, Plaintiffs both immediately lost any and all contracts with sponsors, endorsements and event appearances in their respective industries including but not limited to: BLOCH Inc., Tiger Friday, Capezio, Yumiko, MPG Sport, Fenti, Volcom, Discount Dance, RedBull, Adidas, WeWork,  Rotiform Wheels, Brixton Forged, Momo racing, Bride Racing, Nitto Tires, Toyo tires, Brembo, Ferrari Parts, Tial Concepts, Xona Rotor, Aviva Performance, Impressive Wraps, Inozetek,

Tubi Style, Vivid Motorsport, Voodoo Automotive, SEMA Auto Show, Crep Protect, Accuair Suspensions, Currie axels, Pelican LLC, Greyman Tactical, PRP seats, KMC wheels, RAM mounts, Metalcloak suspension and body components, THULE, Rebel Offroad, PPG paint, Morimoto LED lighting solutions, BAJA off-road lighting solutions, Powertank, Maxxtraxx, HP tuners, Emory Motorsports, SABELT and Illest, amongst many others not listed here.

391.     Plaintiffs not only lost their business "Button Brand", suffering the complete destruction of their self-made brand but were forced to refund customers for items sold due to the connection of the defamatory statements made by Sigrid McCawley and the third parties who "grapevined" off of her defamatory statements in the media and the press.

392.     Plaintiffs completely lost and forfeited their brand, Button Brand due to the defamatory statements made in the media and the press by Sigrid McCawley and her clients.

393.     Plaintiffs had a pre-planned, negotiated contract with dancewear company Tiger Friday whereas, Plaintiffs designed, licensed and would market the line of leotards and dancewear utilizing the Button name and brand to expand their already successful company and image.

394.     Plaintiffs' contract was immediately canceled as a direct result of Defendants' defamatory remarks.

395.     Plaintiffs were not paid for work already completed as Tiger Friday continued to use Plaintiffs' already completed designs, due to the false and defamatory statements made by Sigrid McCawley and her global media campaign waged against Plaintiffs.

396.     Plaintiffs' brand, Bravado by Dusty Button was a dancewear and leotard line for dancers in which Plaintiffs had previous negotiated contracts with sponsored third-party companies and distributors such as Discount Dance, Showstopper and GK Elite, as well as advertised and garnered sales of this line through their own website "bravadodancewear.com" and through Plaintiffs' former social media page on Instagram, @bravado_dancewear and Plaintiffs' personal social media account, @dusty_button.

397.     Bravado by Dusty Button was sold at various dance events for distribution, whereas, sales and contracts were immediately terminated following $100,000.00 of partner investment and nearly a year of travel and planning as a direct result of Sigrid McCawley's defamatory statements in the global media campaign waged against Plaintiffs.

398.    Defendants' defamatory remarks forced the termination of Bravado by Dusty Button as all sales came to a halt and additionally, customers demanded refunds stating the brand was associated with "sexual predators", "perpetrators", "criminal behavior" and "rapists".

399.    Immediately following Sigrid McCawley's defamatory statements in the media and the press, Plaintiffs' businesses, Button Brand, Button Built, and Bravado by Dusty Button were completely destroyed, losing hundreds of thousands of dollars in revenue and costs, which were already paid, promised and negotiated with third party companies and distributors.

400.    Any and all marketing for the above reference brands with associated accounts advertising those brands including all sales were terminated as a direct result of Sigrid McCawley's false and defamatory posts and remarks.

401.    The seriousness of Defendants' defamatory statements proves a clear intention to cause damage to Plaintiffs.

402.    The nature and substance of Defendants' defamatory posts, remarks and actual knowledge that her statements were untrue prove that Defendants' actions were willful, intentional and malicious.

403.    Defendants' defamatory statements and the audience that the Defendant intended to, and did reach, proves without question, her intent

to harm Plaintiffs' careers, businesses and reputations as the false statements were aimed *specifically* at Plaintiffs' colleagues, clients and target demographics through these defamatory statements in the global media campaign waged against Plaintiffs including but not limited to published defamatory statements in The New York Times, Cosmopolitan, The Boston Globe, ABC News, The Daily Mail and other mass media outlets including the press and nearly every major news outlet and social media account that were otherwise outside of Plaintiffs' industries.

404.    Sigrid McCawley's defamatory statements caused the *entire* dance industry to not only turn against Plaintiff Dusty Button, (who had worked her entire life to build the reputation she was known for in her industry and was at the pinnacle of her career), but caused the industry to disassociate from Dusty, repost the defamatory statements and cease all communication with her, including halting any and all forms of employment for which she had been in extremely high demand for, for over fifteen years.

405.    Sigrid McCawley's defamatory statements caused the *entire* automotive industry to not only turn against Plaintiff Taylor Button, (who had worked over thirteen years to build the reputation of the idol he was and that he was known for in his industry and was at the pinnacle of his

career), but caused the industry to disassociate from Taylor, repost the defamatory statements and cease all communication with him, including halting any and all forms of employment for which he had been in extremely high demand for, for over thirteen years.

406.     The defamatory remarks and posts made by Sigrid McCawley ignited a viral response which spread like wildfire, resulting in a 'grapevine' effect throughout Plaintiffs' industries including to their co-workers, clients, employers, potential employers, parents and children of those Dusty taught in the dance industry, sponsors, potential sponsors, friends and family involved in the industries, customers, former employers, agencies, dance studio owners and other various third parties whereas, Plaintiffs could not defend themselves against such widespread industry gossip.

407.     Sigrid McCawley specifically targeted Plaintiffs in her global media campaign waged against them, as they were influential and informative people in their industries in which the Defendant spread false statements further than it would seem at first blush.

408.     Plaintiffs were completely prevented from defending themselves to all third parties as Defendants' defamatory statements were so immediately viral and out of control, that Plaintiffs could not control or

manage the effects of Sigrid McCawley's false, defamatory and malicious statements.

409.    As a direct cause of Sigrid McCawley's false and defamatory statements and global media campaign waged against Plaintiffs, Plaintiffs have been unable to even have a ringtone, vibration or sound on their phones when notifications or calls come in, due to the influx of notifications, messages, harassment, death threats, unwanted threatening calls and the overwhelming immediate responses to Defendants' posts, comments and reposts whereas, Plaintiffs even had to take turns watching for notifications on each other's phones to even sleep just one hour as the harassing, threatening and defamatory remarks continued for months on end.

410.    To this day, Plaintiffs keep their phones on silent as it results in severe trauma and PTSD as a direct result of Sigrid McCawley's defamatory statements and the global media campaign waged against them.

411.    As previously stated herein, Plaintiffs' business, was their names and likeness as they were individually contracted due to their reputations of who they were as a business and as their names were their brands.

412.     Plaintiffs were well-known and prominent figures in their industries and therefore, were contracted, employed and in high-demand because of their names and reputations, as they, themselves were their businesses for over fifteen years.

413.     Plaintiffs' reputations, *prior* to Defendants' defamatory statements in her global media campaign waged against Plaintiffs and the slaughter of Plaintiffs' good names, was impeccable in both their respective industries whereas, Plaintiffs were well-liked, well-respected and in high demand due to their expertise in their industries, which others could not offer.

414.     Defendant has never made any attempt to rectify the false and malicious statements even after Plaintiffs have proven her statements to be defamatory, false, misleading and intentionally harmful, including in litigation.

415.     The shock and confusion resulting from the defamatory statements, coupled with Sigrid McCawley's abuse of power and influence resulting in intense threats, harassment, and severe bullying and including the use of her fame as an attorney to intimidate and silence Plaintiffs while in litigation against her, Plaintiffs were led to believe recourse would be an impossibility against her.

416.     Plaintiffs were so traumatized by Defendants' actions that they both

suffered from suicidal thoughts, nearly taking their own lives as a direct

result of the defamatory statements made by Sigrid McCawley and the

global media campaign waged against them however, they have since

championed those dark thoughts without the help of the therapy they are

unable to afford due to the destruction of their careers through

Defendant's defamatory conduct.

417.     Sigrid McCawley took affirmative steps to ensure Plaintiffs were

without the ability to seek recourse against her until now with the threat of

a law degree and intentional harm she inflicted on Plaintiffs by way of

forcing them to be unemployed with no ability to generate income,

releasing her of any responsibility as she knew it was a possibility for her

statutes of limitation to expire before Plaintiffs could take action against

her.

418.     Defendant's defamatory campaign against Plaintiffs was directly

responsible for hundreds of death threats and a hired convicted felon that

was paid nearly $100,000.00 to force Plaintiffs to destroy evidence that

Defendant's defamation was meant to conceal; a felon who broke into

Plaintiffs' home and thus rendered them in fear of their lives.

419.    Accordingly, any statute of limitations applicable to Dusty and

Taylor's claims, if any, is tolled.

420.    Sigrid McCawley's actions described above deprived Dusty and

Taylor of the opportunity to commence this lawsuit before now.

421.    Ms. McCawley is equitably estopped from asserting a statute of

limitations defense as to Plaintiffs' claims.

422.    Allowing Sigrid to do so would be unjust.

423.    Sigrid McCawley took active steps to prevent Dusty and Taylor

from commencing this lawsuit before now, including by destroying

Plaintiffs' inability to work after the onset of her defamatory global media

campaign against Plaintiffs began and by using tactical intimidation by

way of using her law degree to suppress and silence Plaintiffs from

defending against her false and defamatory posts and remarks through

litigation.

424.    Plaintiffs have suffered and continue to suffer mental anguish,

severe emotional distress and loss of enjoyment of life as a direct and

proximate result of Sigrid McCawley's defamatory and malicious

statements.

425.    Had Plaintiffs succumbed to the darkness that Sigrid McCawley

cast over their lives, businesses, families and futures, this litigation would

be criminal rather than civil as she is responsible for serving as the

catalyst of the global defamatory media campaign waged against

Plaintiffs and the fraudulent actions that nearly ended two lives that were

once the brightest lights of their careers for millions of people abroad.

## **CAUSES OF ACTION**

## **COUNT I - INJURIOUS FALSEHOOD**

426.     Plaintiffs repeat and reallege the allegations contained within

paragraphs 1 through 426, *supra*, as if set forth herein.

427.     The unprivileged statements made by Ms. McCawley to others

about Plaintiffs were false and defamatory.

428.     Ms. McCawley knowingly published, made defamatory and false

statements and communicated those false statements to a **mass** audience

of third parties including in the press and the media.

429.     Ms. McCawley is liable for arranging the press and media outlets

where the false and defamatory statements were made.

430.     Ms. McCawley made these false and defamatory statements with

actual malice.

431.     Ms. McCawley's posts, false statements and defamatory remarks

were the direct cause of Plaintiffs' complete loss of business and sales

related to their names, likeness and brands whereas, Plaintiffs suffered

132
COMPLAINT AND DEMAND FOR JURY TRIAL

actual damages, proven by bank statements, email and text communications, approval of government assistance programs, loss of counsel, loss of employment and other economic and financial evidence of damages as a result of Sigrid McCawley's false and defamatory statements.

432.     The unprivileged statements made by Sigrid McCawley to others about Plaintiffs caused complete loss and injury to Plaintiffs' businesses, whereas Plaintiffs have not worked one, single job since July 28th, 2021, including that any and all contracts and agreements were immediately and prematurely terminated following Sigrid McCawley's unethical conduct, which is continuing.

433.     Ms. McCawley published and made her defamatory statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

434.     At the time Ms. McCawley's statements were made, she knew or should have known that they were false and defamatory.

435.     Hundreds of thousands of people *actually* read and/or heard the false and defamatory statements.

436.     Ms. McCawley's statements were not privileged.

437.     The statements were made by Sigrid McCawley with actual malice, oppression, and fraud in that she was aware at the time of the falsity of the publications and thus, made said publications and statements in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

438.     Ms. McCawley possessed information and had access to information which showed her statements were false.

439.     Sigrid McCawley made statements which had no factual basis.

440.     Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute *injurious falsehood*.

441.     As a direct and proximate result of the maliciously false and defamatory statements, Plaintiffs have been severely damaged.

442.     Plaintiffs are entitled to punitive damages, because Ms. McCawley's defamatory statements were made with hatred, ill will, and spite, with the intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm.

443.    Because Sigrid McCawley's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Sigrid McCawley for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT II – DEFAMATION PER SE

444.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 426, *supra*, as if set forth herein.

445.    The unprivileged statements made by Sigrid McCawley to others about Plaintiffs were false and defamatory.

446.    The unprivileged statements made by Sigrid McCawley to others about Plaintiffs caused complete loss and injury to Plaintiffs businesses whereas, Plaintiffs have not worked one single job since July, 28th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Ms. McCawley's conduct.

447.    Sigrid McCawley made and published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

448.     At the time Ms. McCawley made such statements, she knew or should have known that they were false and defamatory.

449.     Hundreds of thousands of people *actually* read and/or heard the false and defamatory statements.

450.     Ms. McCawley's statements were not privileged.

451.     Ms. McCawley's statements were made and published with actual malice, oppression, and fraud in that she was aware at the time of the falsity of the publication and thus, made said statements and publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

452.     Ms. McCawley possessed information and had access to information that showed her statements were false.

453.     Ms. McCawley made statements for which she had no factual basis.

454.     Ms. McCawley suggested Plaintiffs were involved in a serious crime involving moral turpitude or a felony, exposing Plaintiffs to ridicule in which reflected negatively on Plaintiffs' characters, morality and integrity whereas, the defamatory statements impaired Plaintiffs' financial well-being.

455.     The false statements made by Ms. McCawley to the media, the press and other third parties, including law enforcement are not privileged

including because reports of a crime that are intentionally false or made with reckless disregard for the truth are not privileged.

456.     Because Ms. McCawley's false statements accused Plaintiffs of a serious crime and maligned Plaintiffs in their professions, those statements constitute defamation per se and Plaintiffs' injuries are presumed.

457.     Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute defamation *per se*.

458.     As a direct and proximate result of the maliciously false and defamatory publication of statements to third parties by Sigrid McCawley, Plaintiffs have been severely damaged.

459.     Plaintiffs are entitled to punitive damages, because Ms. McCawley's defamatory statements were made with hatred, ill will, and spite, with the intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm.

460.     Because Ms. McCawley's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Sigrid McCawley for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT III – LIBEL PER SE

461.     Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 426, *supra*, as if set forth herein.

462.     The unprivileged statements made by Sigrid McCawley to others about Plaintiffs were false and defamatory.

463.     The unprivileged statements made by Ms. McCawley to others about Plaintiffs caused complete loss and injury to Plaintiffs' businesses whereas, Plaintiffs have not worked one single job since July 28th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Sigrid McCawley's conduct.

464.     Sigrid McCawley made and published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

465.     At the time Ms. McCawley made such statements, she knew or should have known that they were false and defamatory.

466.     Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

467.     The statements were not privileged.

468.     The statements were published and stated by Sigrid McCawley with actual malice, oppression, and fraud in that she was aware at the time of the falsity of the publication and thus, made said statements and publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

469.     Sigrid McCawley possessed information and had access to information that showed her statements were false.

470.     Sigrid McCawley made statements for which she had no factual basis.

471.     Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputations in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute libel *per se*.

472.　　As a direct and proximate result of the maliciously false and defamatory statements and publication of statements to third parties by Sigrid McCawley, Plaintiffs have been severely damaged.

473.　　Sigrid McCawley made false and defamatory statements to a **mass** audience in which were so widely understood to be harmful that they are presumed to be defamatory as Sigrid McCawley made statements which accused Plaintiffs of committing crimes against children, particularly, ("young girls").

474.　　Plaintiffs are entitled to punitive damages, because Ms. McCawley's defamatory statements were made with hatred, ill will, and spite, with the intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm.

475.　　Because Ms. McCawley's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

　　　　WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Sigrid McCawley for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## <u>COUNT IV – SLANDER PER SE</u>

476.     Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 426, *supra*, as if set forth herein.

477.     The unprivileged statements made by Sigrid McCawley to others about Plaintiffs were false and defamatory.

478.     The unprivileged statements made by Sigrid McCawley to the media, the press and other third parties about Plaintiffs caused complete loss and injury to Plaintiffs' businesses whereas, Plaintiffs have not worked one single job since July 28th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Sigrid McCawley's conduct.

479.     Ms. McCawley made defamatory statements to various third parties with negligence, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

480.     At the time Ms. McCawley's statements were made, she knew or should have known that they were false and defamatory.

481.     Hundreds of thousands of people *actually* read and/or heard the false and defamatory statements.

482.     Ms. McCawley's statements were not privileged.

483.     The statements were made and published by Sigrid McCawley with actual malice, oppression, and fraud in that she was aware at the time of

the falsity of the publication and thus, made said statements and publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

484.     Ms. McCawley possessed information and had access to information that showed her statements were false.

485.     Ms. McCawley also made statements for which she had no factual basis.

486.     Ms. McCawley intentionally caused harm by telling Plaintiffs' co-workers, clients and employers these false and defamatory statements as to intentionally inflict harm on their reputations, careers and business including by making defamatory statements which accuse Plaintiffs of crimes and other immoral sexual acts.

487.     Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute slander *per se*.

488.     As a direct and proximate result of the maliciously false and defamatory publication of statements to third parties by Ms. McCawley, Plaintiffs have been severely damaged.

489.     Plaintiffs are entitled to punitive damages, because Ms.

McCawley's defamatory statements were made with hatred, ill will, and

spite, with the intent to harm Plaintiffs or in blatant disregard of the

substantial likelihood of causing them harm.

490.     Because Defendant's defamatory statements constitute intentional

acts which were made with actual malice towards Plaintiffs, Plaintiffs

seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand

judgment against Defendant Sigrid McCawley for damages, punitive damages,

court costs, and such other relief as the Court deems just and proper.

## COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

491.     Plaintiffs repeat and reallege the allegations contained within

paragraphs 1 through 426, *supra*, as if set forth herein.

492.     The unprivileged statements made by Sigrid McCawley to others

about Plaintiffs were false and defamatory.

493.     The unprivileged statements made by Sigrid McCawley to others

about Plaintiffs caused complete loss and injury to Plaintiffs business

whereas, Plaintiffs have not worked one single job since July 28th, 2021

including that any and all contracts and agreements were immediately and

prematurely terminated following Sigrid McCawley's conduct.

494.    Sigrid McCawley made and published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

495.    At the Sigrid McCawley made such statements, she knew or should have known that they were false and defamatory.

496.    Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

497.    Ms. McCawley's statements were not privileged.

498.    The statements were published by Sigrid McCawley with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said statements and publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

499.    Sigrid McCawley possessed information and had access to information that showed her statements were false.

500.    Ms. McCawley made statements which had no factual basis.

501.    Ms. McCawley acted intentionally and/or recklessly whereas her conduct was extreme and outrageous and was the direct cause of Plaintiffs' severe emotional distress in which Plaintiffs continue to suffer today.

502.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitutes *intentional infliction of emotional distress.*

503.    As a direct and proximate result of the maliciously false and defamatory statements and publication of statements to third parties by Ms. McCawley, Plaintiffs have been severely damaged.

504.    Plaintiffs are entitled to punitive damages, because Ms. McCawley's defamatory statements were made with hatred, ill will, and spite, with the intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm.

505.    Because Ms. McCawley's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Sigrid McCawley for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT VI – PRIMA FACIE DEFAMATION

506. Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 426, *supra*, as if set forth herein.

507. The unprivileged statements made by Sigrid McCawley to others about Plaintiffs were false and defamatory.

508. The unprivileged statements made by Sigrid McCawley to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since July 28th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Sigrid McCawley's conduct.

509. Ms. McCawley made and published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

510. At the time Sigrid McCawley made such statements, she knew or should have known that they were false and defamatory.

511. Hundreds of thousands of people *actually* read and/or heard the false and defamatory statements.

512. Ms. McCawley's statements were not privileged.

513. The statements were made and published by Sigrid McCawley with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith,

out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

514.    Ms. McCawley possessed information and had access to information that showed her statements were false.

515.    Ms. McCawley made statements which had no factual basis.

516.    Ms. McCawley made intentionally false statements purporting to be fact, published and communicated those statements to hundreds of thousands of third parties faulting to, at the very least, negligence, whereas the damages and harm to Plaintiffs and their reputations is irreparable as a direct result of the defamatory statements made by Sigrid McCawley.

517.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitutes *Prima Facie Defamation*.

518.    As a direct and proximate result of the maliciously false and defamatory statements and publication of statements to third parties by Ms. McCawley, Plaintiffs have been severely damaged.

519.      Plaintiffs are entitled to punitive damages, because Ms.

McCawley's defamatory statements were made with hatred, ill will, and

spite, with the intent to harm Plaintiffs or in blatant disregard of the

substantial likelihood of causing them harm.

520.      Because Ms. McCawley's defamatory statements constitute

intentional acts which were made with actual malice towards Plaintiffs,

Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand

judgment against Defendant Sigrid McCawley for damages, punitive damages,

court costs, and such other relief as the Court deems just and proper.

## <u>COUNT VII – CIVIL CONSPIRACY</u>

521.      Plaintiffs repeat and reallege the allegations contained within

paragraphs 1 through 426, *supra*, as if set forth herein.

522.      The unprivileged statements made by Sigrid McCawley to others

about Plaintiffs were false and defamatory.

523.      The unprivileged statements made by Ms. McCawley to others

about Plaintiffs caused complete loss and injury to Plaintiffs businesses

whereas, Plaintiffs have not worked one single job since July 28th, 2021

including that any and all contracts and agreements were immediately and

prematurely terminated following Ms. McCawley's conduct.

524.     Ms. McCawley made and published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

525.     At the time Ms. McCawley made such statements, she knew or should have known that they were false and defamatory.

526.     Hundreds of thousands of people *actually* read and/or heard the false and defamatory statements.

527.     Ms. McCawley's statements were not privileged.

528.     The statements were made and published by Sigrid McCawley with actual malice, oppression, and fraud in that she was aware at the time of the falsity of the publication and thus, made said statements and publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

529.     Ms. McCawley possessed information and had access to information that showed her statements were false.

530.     Ms. McCawley made statements which had no factual basis.

531.     Ms. McCawley made an express agreement with another, including but not limited to her clients, whereas Ms. McCawley's actions outside of litigation prove that she conspired to defame, harass, bully and threaten Plaintiffs in a joint effort to destroy their business, reputations, careers,

ability to work and financial ability to defend the frivolous lawsuit Ms.
McCawley and her clients brought forth on July 28th, 2021 to intentionally
deprive Plaintiffs in an overt act in furtherance causing economic loss.

532.    Ms. McCawley's actions resulted in "Unfair Competition" by way
of coordinating efforts to spread false information about Plaintiffs, (whose
names and likeness were their business), to gain an advantage, months
prior to her clients filing their complaints, as to destroy Plaintiffs'
reputations, careers, business, ability to work and defend themselves
against the defamatory statements and litigation itself.

533.    Sigrid McCawley unethically played to the media and the press in
pursuance of conspiracy by way of making false and defamatory
statements to intentionally harm Plaintiffs, resulting in financial loss,
damage to reputation and severe emotional distress.

534.    Ms. McCawley's actions were unlawful including that the
defamatory statements she intentionally made and published were
intentional and wrongful interreferences with Plaintiffs' business
relationships.

535.    Ms. McCawley intentionally and knowingly made false statements
about Plaintiffs to a mass audience, performing an unlawful act to gain
notoriety and mislead the public and any potential juror through the media

and the press to secure bias and to maintain the public praise which she was awarded for her representation of Virginia Giuffre against Epstein and Maxwell, while knowing that her clients allegations were false and even after presented with factual evidence proving her clients allegations were fraudulent.

536.   Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute *Civil Conspiracy*.

537.   As a direct and proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

538.   Plaintiffs are entitled to punitive damages, because Ms. McCawley's defamatory statements were made with hatred, ill will, and spite, with the intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm.

539.   Because Ms. McCawley's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Sigrid McCawley for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT VIII – DEFAMATION PER QUOD

540.     Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 426, *supra*, as if set forth herein.

541.     The unprivileged statements made by Sigrid McCawley to others about Plaintiffs were false and defamatory.

542.     The unprivileged statements made by Ms. McCawley to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since July 28th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Ms. McCawley's conduct.

543.     Ms. McCawley made and published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

544.     At the time Sigrid McCawley made such statements, she knew or should have known that they were false and defamatory.

545.     Hundreds of thousands of people *actually* read and/or heard the false and defamatory statements.

546.     Ms. McCawley's statements were not privileged.

547.     The statements were made and published by Ms. McCawley with actual malice, oppression, and fraud in that she was aware at the time of the falsity of the statements and publications and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

548.     Ms. McCawley possessed information and had access to information that showed her statements were false.

549.     Ms. McCawley made statements which had no factual basis.

550.     Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitutes *Defamation Per Quod*.

551.     As a direct and proximate result of the maliciously false and defamatory publication of statements to third parties by Sigrid McCawley, Plaintiffs have been severely damaged.

552.     Plaintiffs are entitled to punitive damages, because Ms. McCawley's defamatory statements were made with hatred, ill will, and

spite, with the intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm.

553.     Because Ms. McCawley's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Sigrid McCawley for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendant Sigrid McCawley, awarding compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial, including but not limited to:

      A. Entering judgment against the Defendant on all claims made against her in this Complaint;

      B. Entering an Order directing that Defendant pay Plaintiffs reasonable fees and costs pursuant to any applicable law;

      C. For actual damages in an amount to be proven at trial;

      D. For punitive damages in an amount to be proven at trial;

      E. For costs of suit;

COMPLAINT AND DEMAND FOR JURY TRIAL

F.  For pre-judgment and post-judgment interest on the foregoing
sums;

G.  For such other and further relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby
request a trial by jury on all causes of action asserted within this pleading.

Respectfully dated this 23rd day of May, 2024,

Dusty Button and Mitchell Taylor Button (*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
Email: Prosecanyousee@malifence.com
Phone: 310-499-8930
Phone: 310-499-8702

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing was

served by _____ on _____ on all counsel

or parties of record on the Service List below.

**<u>SERVICE LIST</u>**

Dusty Button and Mitchell Taylor Button          Sigrid McCawley
Worldofdusty@gmail.com                            1331 Ponce de Leon
101 Ocean Sands Ct                                Fort Lauderdale, FL 3331
Myrtle Beach, SC 29579
310-499-8930

Dated this 23rd day of May 2024,

/s/ _____

Signature of Plaintiff Dusty Button (*Pro se*)

/s/ _____

Signature of Plaintiff Mitchell Taylor Button (*Pro se*)



# UNITED STATES POSTAL SERVICE®

# PRIORITY MAIL EXPRESS

## MAILING ENVELOPE
### FOR DOMESTIC AND INTERNATIONAL USE


EMS


U.S. Marshal Service

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP

---


UNITED STATES POSTAL SERVICE®

## PRIORITY MAIL EXPRESS®



**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)  PHONE (310) 499-8930
DUSTY BUTTON and MITCHELL TAYLOR BUTTON
101 OCEAN SANDS CT
MYRTLE BEACH, SC
29579

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED *Note:* The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
**Delivery Options**
☑ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)  PHONE (954) 769-5400
US DISTRICT COURT CLERK
299 E BROWARD BLVD STE 108
FORT LAUDERDALE, FL
33301

ZIP + 4® (U.S. ADDRESSES ONLY)

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

**PEEL FROM THIS CORNER**

**PAYMENT BY ACCOUNT**
Federal Agency Acct.

**ORIGIN (POSTAL SERVICE**
☐ 1-Day
PO ZIP Code
89579
Date Accepted (MM/DD/YY)
05/23/24
Time Accepted
12:00 ☐ AM ☐ PM
Special Handling/Fragile
$
Weight  ☐ Flat Rate
2 lbs.    ozs.

**DELIVERY (POSTAL SER**
Delivery Attempt (MM/DD/YY)

Delivery Attempt (MM/DD/YY)

LABEL 11-B, NOVEMBER 2023