UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:24-cv-60911-LEIBOWITZ/AUGUSTIN-BIRCH

DUSTY BUTTON and
MITCHELL TAYLOR BUTTON,

       *Plaintiffs*,

*v.*

SIGRID MCCAWLEY,

       *Defendant.*

_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant Sigrid McCawley's ("Defendant" or "McCawley") Motion to Dismiss the Amended Complaint (the "Motion") [ECF No. 24], filed on July 26, 2024. *Pro se* Plaintiffs Dusty Button ("Dusty") and Mitchell Taylor Button ("Mitchell" or "Taylor") (collectively, "Plaintiffs" or "the Buttons") submitted a response to the Motion [ECF No. 43], and Defendant submitted a reply [ECF No. 44]. The Court has reviewed the parties' arguments, the record, and the relevant legal authorities. For the reasons stated below, the Motion [ECF No. 24] is **GRANTED IN PART and DENIED IN PART**.

### I.    BACKGROUND

On May 28, 2024, Plaintiffs filed their original Complaint in this action. [ECF No. 1]. On July 12, 2024, Plaintiffs filed an Amended Complaint (the "Complaint"), which is the subject of this Motion. [ECF No. 13]. This case arises from Sigrid McCawley's representation of her clients in a case against Plaintiffs filed in the District of Nevada. Plaintiffs now bring this suit against Sigrid McCawley, alleging that she transmitted and published intentionally false and defamatory statements about them in relation to the District of Nevada case. [*Id.* ¶ 2].

Plaintiffs bring this eight-count Complaint alleging the following: injurious falsehood (Count I), defamation per se (Count II), libel per se (Count III), slander per se (Count IV), intentional infliction of emotional distress (Count V), prima facie defamation (Count VI), civil conspiracy (Count VII), and defamation per quod (Count VIII).  Defendant seeks dismissal of the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For background and convenience, what follows are the alleged defamatory statements.

### A.   Fourteen Alleged Defamatory Statements

### Statement 1: McCawley's Statement to The New York Times - July 26, 2021

*"This is a pair of perpetrators who are highly sophisticated, highly manipulative, and are continuing, which is exactly what my clients were concerned about,"* Sigrid McCawley said.

[ECF No. 13 at 49–50].

### Statement 2: McCawley's Statements to The Boston Globe - September 29, 2021

*"What you have here is the highest level of betrayal."*

*"You see the use of a famous female ballerina to coax these victims into a situation where they become prey for this serial abuser."*

*"In an instance like this, where you have a serial abuser, you often times see other women feeling empowered enough to come forward and say 'me, too.'"*

*"Each one of these ballerinas wants this abuse to stop."*

[*Id.* at 50–52].

### Statement 3: McCawley's Statement to CNN - September 30, 2021

*"Taylor and Dusty Button can no longer use the dance world to perpetrate their criminal behavior against young girls. Brave women are now coming forward and saying this must stop."*

[*Id.* at 52–53].

### Statement 4: McCawley's Statement to The Daily Star - September 30, 2021

2

*"Dusty and Mitchell promised to make her [Jane Doe 1] a star before abusing their power,"* Ms. McCawley said.

[*Id.* at 53–54].

### Statement 5: McCawley's Statements to Law.com - August 5, 2021

*"That quote and that commitment rang true with her, because she had tried to pursue her perpetrators, she had a restraining order against them and tried to get into discussions with detectives and none of that had really come to fruition,"* McCawley said. *"She had sort of put it behind her and moved on, but just couldn't. So when she saw that episode, she said that hat was really a turning point for her and she picked up the phone and she called me."*

*"Ultimately, the goal of the majority of my clients is really to stop the predators, so it's just: how do we do that?"* McCawley said. *"It's really a beautiful thing to witness Sage and Gina and their strength in being able to come together and stand up against this perpetrator, who is still out there in the dance community, still has full access to young children. When you bring light to the abuse, people are actually more protected."*

*"That's really the saddest part of this work for me,"* McCawley said. *"I think we give them back some of themselves by bringing these actions, but we'll never get back the little girl who was 13 in that dance studio, and that's really heartbreaking."*

*"You have a dance teacher who is going to be physically close to the student just by the nature of the work they're doing, and a student who wants to impress their teacher and be the best that they can be for that instructor,"* McCawley said.

*"McCawley said the litigation is likely to expand, as she's fielding calls from other women alleging they were victimized by the same perpetrators."*

[*Id.* at 54–59].

### Statement 6: McCawley's Statement to Cosmopolitan Magazine - April 5, 2022

*"Perpetrators don't really change their playbook."*

[*Id.* at 59].

3

**Statement 7: McCawley's Statement to Good Morning America - May 27, 2022**

*"I am incredibly proud to be representing this group of survivors in the dance community as they battle for justice."*

[*Id.* at 60–62].

**Statement 8: McCawley's Statements to The Bleacher Report/NBC News and Yahoo.com - July 21, 2022**

*"Sage had a business relationship with Mr. Katz and there was never any sexual relationship between them. As is typical of abusers facing serious litigation, with four walls of facts closing in, the Buttons have filed counterclaims that distract from and distort the truth. Abusers often try to weaponize the allegations brought against them, and that's exactly what is happening here,"* she said. *"The counterclaims the Buttons have filed falsely and recklessly implicate others, including Daryl Katz, and are a factually unfounded attempt to portray the women they abused as liars."*

[*Id.* at 62–64].

**Statement 9: McCawley's Statements to The Daily Mail and Meaww.com - September 28, 2022**

The accusers' attorney Sigrid McCawley said in a statement, *"As put forth in our complaint, Dusty and Taylor Button assaulted seven different dancers, including women who have chosen to make their claims anonymously. The Buttons' on-their-heels assertion now that seven different women made up detailed and harrowing accounts of abuse for fame is absurd."*

McCawley added, *"A judge in Boston granted Sage Humphries a permanent restraining order against the Buttons after hearing her testimony, and stated that he 'fully credited' her testimony making clear that he was satisfied 'beyond a reasonable doubt' that the Buttons' conduct amounted to abuse under the criminal laws. The Buttons are not only engaging in shameless victim-blaming, but they are also intentionally violating the Boston court's restraining orders, which mandated them to surrender information that they stole from Ms. Humphries' cell phone to the Boston Police*

*Department. The Buttons are abusers of young vulnerable women who were in their sphere of influence as aspiring dancers and now the rule of law."*

[*Id.* at 64–71].

**Statement 10: McCawley's Statements to Cosmopolitan Online Magazine - March 7, 2023**

*The plaintiffs' counsel Sigrid McCawley, managing partner at Boies Schiller Flexner LLP and a leading victims' rights attorney, is eager for the trial to begin. "We look forward to putting the women's case before a jury, which will hear the facts of the abuse they suffered while pursuing their dreams as dancers and not the fiction the Buttons are peddling in an act of desperation," she told Cosmopolitan following a February hearing.*

[*Id.* at 71–72].

**Statement 11: McCawley's Statements on NBC Miami, "How Sigrid McCawley helped bring down Jeffrey Epstein" - January 29, 2024**

*"Most recently we're doing a case on some ballerinas that had been victimized, some of them with the Boston Ballet, so the work has been pro bono in this case, and the commitment of the firm has been astronomical."*

[*Id.* at 73–74].

**Statement 12: McCawley's Biography on the Boies Schiller & Flexner LLP Website – Date Unknown**

*"She is also presently representing pro bono a group of ballerinas in their efforts to hold their abusers accountable on sex trafficking charges."*

[*Id.* at 74–75].

**Statement 13: McCawley's Statements to Fox News - September 30, 2021**

*"They are no longer in a position to use the dance world and their professions to perpetrate criminal behavior against young girls aspiring to become great dancers," she told Fox News in a statement. "Brave women are now coming forward and saying they must be stopped. We are grateful their voices are being heard."*

[*Id.* at 76–77].

**Statement 14: McCawley's Statements to The Washington Post - October 1, 2021**

*"As often happens in these cases, once a survivor is strong enough to go public, you'll find other people who are familiar with the circumstances reach out," McCawley said in an interview Thursday. "I think we're going to see an avalanche of people going forward who have been exposed to these individuals and have been abused by them."*

[*Id.* at 77].

## II.    LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), as a general rule a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he

court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

The Court notes that *pro se* plaintiffs are generally held to a more liberal standard of pleading under the Federal Rules.  The Court has a duty to "liberally construe a pro se litigant's assertions[.]" *See Sanders v. United States*, 113 F.3d 184, 187 (11th Cir. 1997) (cleaned up).  Nevertheless, even *pro se* litigants must meet certain minimal standards of pleading.  *Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981).  The Court is not required to abrogate the basic pleading essentials or conjure up unpled allegations simply because a plaintiff is proceeding *pro se*.  *See Haines v. Kerner*, 404 U.S. 519 (1972); *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir. 1983).

Through this lens, the Court considers the Motion.

## III.   DISCUSSION

In support of her request for dismissal, Defendant advances five principal arguments: (1) the majority of the Buttons' defamation claims are time-barred; (2) Ms. McCawley's statements are inactionable matters of opinion; (3) the Buttons fail to plead facts sufficient to demonstrate actual malice; (4) the Buttons' remaining claims violate Florida's single publication/single action rule; and (5) because the Buttons' defamation claim fails and because Ms. McCawley's statements concern a public issue, Ms. McCawley is entitled to attorney's fees and costs under the mandatory fee-shifting provision in Florida's Anti-SLAPP statute.  The Court will consider each argument in turn.

### A.  Statute of Limitations

Defendant contends that nine of the alleged defamatory statements are time-barred.  [ECF No. 24 at 13].  Florida law imposes a two-year statute of limitations on defamation claims, Fla. Stat. § 95.11(5)(h), the limitations period begins to run from the time the cause of action accrues, Fla. Stat. §

95.031, and a defamation cause of action accrues on the date of publication, Fla. Stat. § 770.07. Defendant notes that Plaintiffs' original Complaint was filed on May 28, 2024. [ECF No. 1]. Thus, Defendant argues that Statements 1 through 7, 13, and 14 are time-barred because they were made before May 28, 2022. [ECF No. 24 at 13].

This Court mostly agrees. In its November 8, 2024 Order, I held that even though the original Complaint was not filed until May 28, 2024, the Complaint was timely filed for statute of limitations purposes as to alleged defamatory statements that occurred on May 27, 2022, because May 27, 2024, was a legal holiday. [ECF No. 45 at 2–3]; *see Moorey v. Eytchison & Hoppes, Inc.*, 338 So. 2d 558, 559 (Fla. 2d DCA 1976) ("Where the last day of a limitation period falls on a Saturday, Sunday or legal holiday the period runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday.").

For the 14 sets of defamatory statements above the Court will consider those that Defendant claims are time-barred based on the statute of limitations for defamation claims. Statement 1 was published on July 26, 2021, so the Court agrees that it is time-barred. [ECF No. 13 at 49–50]. The set of statements in Statement 2 were published on September 29, 2021, so the Court agrees that Statement 2 is time-barred. [*Id.* at 50–52]. Statement 3 and Statement 4 were published on September 30, 2021, so the Court agrees that they are time-barred. [*Id.* at 52–54]. The set of statements in Statement 5 were published on August 5, 2021, so the Court agrees that Statement 5 is time-barred. [*Id.* at 54-59]. Statement 6 was published on April 5, 2022, so the Court agrees that it is time-barred. [*Id.* at 59].

Statement 7 was published on May 27, 2022. [*Id.* at 60–62]. As the Court previously held, the Complaint was timely filed for statute of limitations purposes as to alleged defamatory statements that occurred on May 27, 2022 [ECF No. 45 at 2–3], so Statement 7 is *not* time-barred.

The defamatory statements in Statement 13 were published on September 20, 2021, so the Court agrees that Statement 13 is time-barred.  [ECF No. 13 at 76–77].  Lastly, Statement 14 was published on October 1, 2021, so the Court agrees that it is time-barred.  [*Id.* at 77].

To the extent that Plaintiffs argue that the Court may apply the doctrine of equitable tolling, the doctrine of equitable estoppel, or the continuous wrong doctrine to toll the statute of limitations period, [ECF No. 43 at 11–14], those doctrines do not apply to this case.  Thus, Statements 1 through 6, Statement 13, and Statement 14 are barred by the statute of limitations and must therefore be dismissed with prejudice.  *See Rendon v. Bloomberg, L.P.*, 403 F. Supp. 3d 1269, 1273 (S.D. Fla. 2019) ("If the time to comply with the statutory precondition has expired, the action should be dismissed with prejudice." (quoting *City of Coconut Creek v. City of Deerfield Beach*, 840 So. 2d 389, 393 (Fla. 4th DCA 2003))).

Rule 15 of the Federal Rules of Civil Procedure states that courts "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Despite this generally permissive approach, a district court need not grant leave to amend where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed"; (2) "allowing amendment would cause undue prejudice to the opposing party"; or (3) the "amendment would be futile."  *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam).  The basis for dismissal of Statements 1 through 6, Statement 13, and Statement 14 addressed by the Court—expiration of the statute of limitations—cannot be cured by amending the complaint.  *See Norkin v. The Fla. Bar*, 311 F. Supp. 3d 1299, 1306 (S.D. Fla. 2018).  Amendment here would be futile, so Statements 1 through 6, Statement 13, and Statement 14 of the Complaint are **DISMISSED WITH PREJUDICE**.

## B.  Inactionable Matters of Opinion

Defendant argues that all fourteen of Ms. McCawley's statements are inactionable matters of opinion, are protected by the fair comment doctrine, and are subject to a qualified privilege.  [ECF

No. 24 at 16].  Without citing any law, Plaintiffs argue in response that "[a]ttorney statements to the press are not covered by the fair comment doctrine when they contain excessive personal opinions, inflammatory language, unsubstantiated accusations, or information that could potentially prejudice a jury pool in an ongoing case; essentially, when the attorney goes beyond simply reporting factual information about the case and injects their own biased commentary."  [ECF No. 43 at 14].

The Court will only consider Defendant's first argument—that all of Ms. McCawley's statements are inactionable matters of opinion.  Defendant argues that "[e]ach of Ms. McCawley's statements is an opinion based on facts alleged in the publicly available Nevada Litigation and expresses her views about her clients' allegations and legal theories."  [ECF No. 24 at 16].  The Court agrees for the following reasons.

"[S]tatements of pure opinion are protected from defamation actions by the First Amendment."  *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018).  In other words, "[s]tatements of pure opinion are not actionable."  *Blake v. Giustibelli*, 182 So. 3d 881, 884 n.1 (Fla. Dist. Ct. App. 2016).  "Under Florida law, a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public."  *Turner*, 879 F.3d at 1262 (citing *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. Dist. Ct. App. 1981)).  "Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the publication or assumed to exist by the parties to the communication."  *From*, 400 So. 2d at 57; *Stembridge v. Mintz*, 652 So. 2d 444, 446 (Fla. Dist. Ct. App. 1995).

Whether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court.  *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 715 (11th Cir. 1985); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006); *From*, 400 So. 2d at 56–57.  When making this assessment, a court should construe statements in their

totality, with attention given to any cautionary terms used by the publisher in qualifying the statement. *Keller*, 778 F.2d at 717.  It is also the court's function to determine "whether an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the assertion of undisclosed facts that justify the expressed opinion about the plaintiff or his conduct." *Stembridge*, 652 So. 2d at 446 (quoting Restatement (Second) of Torts § 566, comment c).

Because the Court already determined that Statements 1 through 6, Statement 13, and Statement 14 were barred by the statute of limitations and thus dismissed with prejudice, the Court will focus its analysis here on Statements 7 through 12.

In Statement 7, Ms. McCawley states: "I am incredibly proud to be representing this group of survivors in the dance community as they battle for justice."  [ECF No. 13 at 60].  Ms. McCawley's statement here is "based on facts which are set forth in the publication" and "which are otherwise known or available to the reader or listener as a member of the public."  *Turner*, 879 F.3d at 1262. Statement 7 was made in a Good Morning America interview that is clearly referring to the lawsuit in the District of Nevada, and the facts of that lawsuit are discussed in the interview and can be found on the District of Nevada case docket.  Therefore, the Court finds that Statement 7 is pure opinion and thus protected by the First Amendment.

In Statement 8, Ms. McCawley states:

> Sage had a business relationship with Mr. Katz and there was never any sexual relationship between them. As is typical of abusers facing serious litigation, with four walls of facts closing in, the Buttons have filed counterclaims that distract from and distort the truth. Abusers often try to weaponize the allegations brought against them, and that's exactly what is happening here … The counterclaims the Buttons have filed falsely and recklessly implicate others, including Daryl Katz, and are a factually unfounded attempt to portray the women they abused as liars.

[ECF No. 13 at 62].  Ms. McCawley's statement here is based on facts set forth in the Buttons' publicly available counterclaims and is also a "statement of pure opinion with respect to [Ms. McCawley's] subjective assessment of the merits" of the counterclaims in the District of Nevada litigation.  *See Vibe*

*Ener v. Duckenfield*, 2020 WL 6373419, at *8 (S.D. Fla. Sept. 29, 2020).  Statement 8, therefore, is pure

opinion and is not actionable as a matter of law.

In Statement 9, Ms. McCawley states:

As put forth in our complaint, Dusty and Taylor Button assaulted seven different dancers—including women who have chosen to make their claims anonymously. The Buttons' on-their-heels assertion now that seven different women made up detailed and harrowing accounts of abuse for fame is absurd.

A judge in Boston granted Sage Humphries a permanent restraining order against the Buttons after hearing her testimony, and stated that he 'fully credited' her testimony making clear that he was satisfied 'beyond a reasonable doubt' that the Buttons' conduct amounted to abuse under the criminal laws. The Buttons are not only engaging in shameless victim-blaming, but they are also intentionally violating the Boston court's restraining orders, which mandated them to surrender information that they stole from Ms. Humphries' cell phone to the Boston Police Department. The Buttons are abusers of young vulnerable women who were in their sphere of influence as aspiring dancers and now the rule of law.

[ECF No. 13 at 64, 66–67].  Statement 9 references the complaint and a permanent restraining order

issued by a judge, making it clear to the reader that Ms. McCawley is expressing her opinion on the

merits of her clients' claims in the District of Nevada case.  The Court thus finds that Statement 9 is

a statement of pure opinion.  *See Turner*, 879 F.3d at 1262 ("Under Florida law, a defendant publishes

a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth

in the publication or which are otherwise known or available to the reader or listener as a member of

the public.").  Furthermore, Statement 9 is inactionable to the extent that it contains statements of

fact that are "demonstrably true."  *Vibe Ener*, 2020 WL 6373419, at *8.  Ms. McCawley is quoting a

judge's statements on the record.  Thus, Statement 9 is also not actionable.

In Statement 10, Ms. McCawley states:  "We look forward to putting the women's case before

a jury, which will hear the facts of the abuse they suffered while pursuing their dreams as dancers and

not the fiction the Buttons are peddling in an act of desperation."  [ECF No. 13 at 72].  Again, the

reference to the case and a jury makes clear that Ms. McCawley is sharing her opinion about the merits

12

of her clients' case in the District of Nevada.  Therefore, the Court finds that Statement 10 is pure opinion, protected by the First Amendment, and not actionable.

In Statement 11, Ms. McCawley states: "Most recently we're doing a case on some ballerinas that had been victimized, some of them with the Boston Ballet, so the work has been pro bono in this case, and the commitment of the firm has been astronomical."  [*Id.* at 73].  First, this statement does not even reference the Buttons directly.  This statement is clearly referring to a publicly accessible case and thus is commentary based on facts that are publicly available.  Thus, the Court finds that Statement 11 is not actionable under the law of defamation.

Lastly, Statement 12 is an undated quote from Ms. McCawley's law firm biography that does not mention the Buttons and is not something that Ms. McCawley stated.  Her firm biography states: "She is also presently representing pro bono a group of ballerinas in their efforts to hold their abusers accountable on sex trafficking charges."  [*Id.* at 74].  Like Statement 11, this statement is in express reference to ongoing legal proceedings that are publicly available.  Thus, the Court finds that Statement 12 is not actionable under the law of defamation.

Based on the analysis above, the Court must dismiss Statements 7 through 12 as they fail to allege defamation.  In an abundance of caution, and primarily because the Plaintiffs appear *pro se*, the Court dismisses these statements without prejudice to allow Plaintiffs a final opportunity to amend their Complaint (if they can) in accordance with this Order as to Statements 7 through 12 of the Complaint only.

### C.  Defamation Claim

To establish a claim for defamation under Florida law, a plaintiff must demonstrate: (1) publication; (2) falsity; (3) knowledge or reckless disregard of falsity on a matter concerning a public figure, or negligence on a matter concerning a private person; (4) actual damages; and (5) that the statement is defamatory.  *See Mennella v. Am. Airlines, Inc.*, 824 F. App'x 696, 701 (11th Cir. 2020) (citing

*Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).  At issue here is whether the Buttons are public figures and must plead actual malice.  Defendant argues that the Buttons are public figures and thus must plead actual malice to state a claim for defamation.  [ECF No. 24 at 20].  Plaintiffs argue that they are not public figures and therefore do not need to plead actual malice.  [ECF No. 43 at 14].

Whether Plaintiffs are public figures is a question of law for the Court.  *Brewer v. Memphis Publ'g Co.*, 626 F.2d 1238, 1247 n.13 (5th Cir. 1980).[1]  "An individual may qualify as a public figure either generally—that is one with such fame and notoriety that he will be a public figure in *any* defamation case—or for only 'limited' purposes, where the individual has thrust himself into a particular public controversy, and thus must prove actual malice in regard to certain issues."  *Basulto v. Netflix, Inc.*, No. 1:22-CV-21796, 2023 WL 7129970, at *39 (S.D. Fla. Sept. 20, 2023).

The Buttons are public figures from the face of the Complaint.  In their Complaint, Plaintiffs state that "Plaintiff Dusty Button was a *world-renowned* ballet dancer who trained at the Jacqueline Kennedy Onassis School at the American Ballet Theatre in New York City," and that she "is best known for her work with the Boston Ballet" where she was a principal ballerina.  [ECF No. 13 ¶¶ 28, 30].  Dusty Button "was Red Bull's first and only ballet athlete and has been published in media publications across the globe, positively influencing hundreds of thousands of people nationally and internationally, including by performing and teaching in over thirty different countries and across the United States."  [*Id.* ¶ 31].  At the time of the events described in the Complaint, Plaintiff Dusty Button's Instagram account "amassed nearly half of a million followers and subscribers."  [*Id.* ¶ 32].  Plaintiffs also state in their Complaint that "Plaintiff Mitchell Taylor Button … was one of the world's *most influential* custom Ferrari and military vehicle designers and builders for seven years, approximately from 2014 – 2021, with his work having been published in media publications across the globe for his

---

[1]      In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

automotive design, builds and work in the industry." [*Id.* ¶ 34]. He "has positively influenced hundreds of thousands of people nationally and internationally and has been procured from global organizations for speaking engagements and commissions that continue to live on with his legacy today[.]" [*Id.* ¶ 35]. Plaintiffs also note that at the time of the events described in the Complaint, Plaintiff Taylor Button's Instagram account "amassed nearly half of a million followers and subscribers." [*Id.* ¶ 36]. Furthermore, the Buttons appear to concede the point that they are public figures by attempting to plead facts in support of the element of actual malice in their Complaint. *See Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1122 (S.D. Fla. 2021). As Defendant notes, the Buttons allege that Ms. McCawley's statements were made with "actual malice" on 23 occasions throughout the Complaint.[2]

Florida courts have found that individuals who "put [themselves] in the public arena" are public figures for defamation purposes. *Turner*, 879 F.3d at 1272; *see also Scholz v. RDV Sports, Inc.*, 710 So. 2d 618, 626 (Fla. Dist. Ct. App. 1998) (noting that he "drew public attention to himself and his employment status with the [professional team] when he met with newspaper reporters"). This Court has found that a doctor who described himself as "one of the world's most famous celebrity doctor" and who had 2.5 million followers on Instagram was considered a public figure. *See Rubinstein v. Ourian*, No. 20-21948-CIV, 2021 WL 4134753, at *6 (S.D. Fla. Sept. 10, 2021). Here, Dusty Button describes herself as "a *world-renowned* ballet dancer" who has "positively influenc[ed] hundreds of thousands of people nationally and internationally" and who has "amassed nearly half of a million followers and subscribers" on Instagram at the time of the events described in the Complaint. [ECF No. 13 ¶¶ 28, 31, 32]. Mitchell Taylor Button describes himself as "one of the world's *most influential* Ferrari and military vehicle designers and builders" who has "positively influenced hundreds of thousands of

---

[2]        *See* ECF No. 13 ¶¶ 5, 15, 50, 104, 191, 422, 476, 485, 494, 502, 514, 522, 532, 540, 550, 558, 567, 575, 585, 593, 607, 615, 624.

people nationally and internationally" and "amassed nearly half of a million followers and subscribers" on Instagram at the time of the events described in the Complaint.  [*Id.* ¶ 34, 35, 36].  Thus, the Court finds, based on *Rubinstein*, that the Buttons are public figures.

Because the Buttons are public figures, they must establish "actual malice" on behalf of the author or publisher in order to maintain a defamation action.  *Nodar v. Galbreath*, 462 So. 2d 803, 806 (Fla. 1984) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)).  Even if the Court only determined that the Buttons were limited public figures, "[b]oth types of public figures must prove that the defamatory statements were made with actual malice."  *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 945 n.9 (11th Cir. 2017).  The Eleventh Circuit has held that the *Twombly/Iqbal* "plausibility pleading standard applies to the actual malice standard in defamation proceedings."  *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).  Thus, to plead actual malice, the Buttons "must allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Id.* (quoting *Sullivan*, 376 U.S. at 280).  Importantly, this is a *subjective* test, focusing on whether the defendant "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false."  *Id.* at 702–03.

The Buttons' Complaint alleges actual malice in a purely conclusory manner.  For example, the Complaint asserts that "[t]he defamatory statements made to the media and the press by Ms. McCawley *were*, and are *now* and *forever* false in their entirety, and were made by Defendant with *actual malice* and/or with a *reckless disregard* for the truth given that Defendant knew her statements were patently and demonstrably false following her self-professed "*hundreds of hours of research and interviews*[.]" [ECF No. 13 ¶ 15].  This statement is a legal conclusion and, as such, does not satisfy the well-pleaded allegation requirement set forth in *Twombly*, 550 U.S. at 555 (holding that a plaintiff's grounds for relief must be based on factual allegations, not a formulaic recitation of the elements of a cause of action);

*see also Iqbal*, 556 U.S. at 667–80 (quoting and citing *Twombly*); *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (quoting and citing *Iqbal*).

There are other instances in the Complaint where the Buttons allege actual malice or reckless disregard for the truth, but they do not set forth *facts* demonstrating that Defendant acted in that way. Thus, the Complaint does not allege sufficient relevant facts to support a claim of actual malice. "A dismissal based on the failure to plead facts giving rise to an inference of actual malice should be without prejudice and the plaintiff should have the opportunity to amend his complaint." *Michel*, 816 F.3d at 706.

To summarize, Plaintiffs may file a motion for leave to file a Second Amended Complaint with a copy of the Second Amended Complaint attached as to Statements 7 through 12, setting forth the facts that support this allegation, **no later than February 7, 2025**. Plaintiffs shall also submit a redline with their motion for leave to file a Second Amended Complaint that clearly indicates the changes between the First Amended Complaint and Second Amended Complaint. Failure to comply with this Order will result in the Court dismissing and closing this case. In considering how to amend their complaint, Plaintiffs are reminded that "[*p*]*ro se* litigants are subject to Rule 11 sanctions." *Martins v. Royal Caribbean Cruises, Ltd.*, 431 F. Supp. 3d 1355, 1365 (S.D. Fla. 2019). Even *pro se* plaintiffs are subject to sanctions for filing frivolous and vexatious complaints. *See, e.g., United States v. Barker*, 182 F.R.D. 661, 662–65 (S.D. Ga. 1998).

### D.  Florida's Single Publication/Single Action Rule

#### (i)    Defamation Per Se, Libel Per Se, Slander Per Se, Defamation Per Quod, and Injurious Falsehood Claims

Defendant next argues that the Buttons' defamation per se, libel per se, slander per se, defamation per quod, and injurious falsehood claims fail under Florida's single publication/single action rule. [ECF No. 24 at 25]. Plaintiffs argue in response that Plaintiffs' actions do not arise from the same publication and that "Plaintiffs' claims against Ms. McCawley are not solely based on the

statements on the face of the complaint but also on *actual knowledge* of other defamatory statements made by Sigrid McCawley which were not published in full[.]"  [ECF No. 43 at 17].

Plaintiffs' arguments fail because the individual counts in the Complaint are nearly identical, and they do not distinguish that they are related to any different defamatory statements.  [*See* ECF No. 13 ¶¶ 472–550, 568–85, 608–24].  Furthermore, the fact that Plaintiffs have knowledge of other defamatory statements outside the face of the Complaint is not relevant because "[a] court's review on a motion to dismiss is 'limited to the four corners of the complaint.'"  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

Florida's "single publication/single action rule does *not* permit multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based."  *Ovadia v. Bloom*, 756 So. 2d 137, 141 (Fla. Dist. Ct. App. 2000).  "Thus, if the defamation count fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply."  *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. Dist. Ct. App. 2002).  Here, because the Buttons' defamation count fails, the Buttons' claims for defamation per se (Count II), libel per se (Count III), slander per se (Count IV), defamation per quod (Count VIII), and injurious falsehood (Count I) fail as well, and these counts must also be dismissed without prejudice under the single publication/single action rule.  *See Stone v. Shafran*, 641 F. Supp. 3d 1344, 1366 (S.D. Fla. 2022) (dismissing additional counts for violating the single action rule).

### (ii)    Intentional Infliction of Emotional Distress Claim

Next, Defendant argues that the Buttons' intentional infliction of emotional distress ("IIED") claim also must also be dismissed under Florida's single publication/single action rule.  [ECF No. 24 at 26].  In their response, Plaintiffs state "Ms. McCawley's statements published about the Plaintiffs nearly ended their lives and through there may be no supporting case law for a Plaintiff who nearly

18

took their own lives due to an attorney's outrageous, false and defamatory statements made to the mass media; this case should set a precedent for those to follow[.]"  [ECF No. 43 at 19].

This court will not accept Plaintiffs' invitation to create any new law here, and the well-established law in this area disposes of their argument.  Florida's "single publication/single action rule does *not* permit multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based." *Ovadia*, 756 So. 2d at 141.  "[A] plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as 'outrageous.'" *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992). That is what Plaintiffs are doing here.  However, an IIED claim "must stem from outrageous conduct separate from the defamation[.]"  *Ortega Trujillo v. Banco Cent. del Ecuador*, 17 F. Supp. 2d 1340, 1343 (S.D. Fla. 1998).  As alleged, the Buttons' IIED claim does not stem from outrageous conduct separate from the defamation, and thus, the IIED claim (Count V) must be dismissed without prejudice as well.  *See Stone*, 641 F. Supp. 3d at 1366 (dismissing additional counts for violating the single action rule).

### (iii)   Civil Conspiracy Claim

Finally with respect to the Complaint, Defendant argues that the Buttons' civil conspiracy claim must be dismissed because Florida law does not recognize civil conspiracy as a standalone tort, it violates the single publication/single action rule, and it fails to allege the scope of the conspiracy, its participants, and when the agreement was entered into.  [ECF No. 24 at 26–27].  Plaintiffs argue that their "defamation claim does not fail and therefore, their claim of civil conspiracy succeeds," and "Ms. McCawley's collusion with the New York Times and other media outlets … [is] the basis of their Civil Conspiracy claim and including collusion with her clients[.]"  [ECF No. 43 at 19].

The Court need not consider all these arguments because Defendant is correct that "[i]n Florida, actionable civil conspiracy must be based on an existing independent wrong or tort[.]"  *Dane*

*St., LLC v. Nadeau*, No. 16-61565-CV, 2017 WL 11643830, at *4 (S.D. Fla. Mar. 7, 2017).  Since the count regarding the goal of the "conspiracy" (defamation) fails, the conspiracy count fails too.  *See Perdomo v. Jackson Mem'l Hosp.*, 443 So. 2d 298, 300 (Fla. Dist. Ct. App. 1983).  Furthermore, for much of the same reasons already stated the Buttons' civil conspiracy claim violates the single publication/single action rule because Ms. McCawley's alleged defamatory statements "cannot form the basis for the conspiracy claim because they also form the basis for the defamation and defamation per se claims." *Maletta v. Woodle*, No. 2:20-CV-1004-JES-MRM, 2021 WL 1894023, at *6 (M.D. Fla. May 11, 2021).  Accordingly, the civil conspiracy claim (Count VII) violates Florida's single action rule and must be dismissed without prejudice.  *See Stone*, 641 F. Supp. 3d at 1366 (dismissing additional counts for violating the single action rule).

### E.  Attorney's Fees and Costs Under Florida's Anti-SLAPP Statute

Lastly, Defendant argues that she is entitled to mandatory attorneys' fees and costs under Florida's Anti-SLAPP statute.  [ECF No. 24 at 24].  Plaintiffs argue that their Complaint "does not violate Florida's anti-SLAPP law including because the anti-SLAPP law is designed to protect citizens from lawsuits that are primarily intended to silence or intimidate them.  This lawsuit is not intended to silence or intimidate Ms. McCawley[.]"  [ECF No. 43 at 8].

Florida's Anti-SLAPP statute prohibits a person from filing a cause of action "against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue[.]" Fla. Stat. § 768.295(3); *see also* Fla. Stat. § 768.295(2)(a) (defining "[f]ree speech in connection with public issues" as "any written or oral statement that is protected under applicable law and … is made in or in connection with a … magazine article, musical work, news report, or other similar work").  The Anti-SLAPP statute also provides that "[t]he court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." Fla. Stat. § 768.295(4).

Upon review of the parties' arguments, the Court does not agree that Defendant is entitled to an award of fees and costs at this juncture because the Court has not addressed the merits of Plaintiffs' claims, nor has the Court made the finding that Plaintiffs' lawsuit as a whole is without merit.  *See Barbuto v. Miami Herald Media Co.,* No. 21-CV-20608, 2021 WL 4244870, at *4 (S.D. Fla. Sept. 17, 2021); *cf. Parekh v. CBS Corp.,* 820 F. App'x 827, 836 (11th Cir. 2020) (affirming award of fees and costs under Florida Anti-SLAPP statute, where court determined that suit was without merit and arose out of protected First Amendment activity).  Thus, Defendant's request for attorneys' fees and costs under Florida's Anti-SLAPP statute is **DENIED WITHOUT PREJUDICE**.

## IV.    CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that the Motion [**ECF No. 24**] is **GRANTED IN PART and DENIED IN PART**.  Statements 1 through 6, Statement 13, and Statement 14 of the Complaint are **DISMISSED WITH PREJUDICE**.  Statements 7 through 12 of the Complaint are **DISMISSED WITHOUT PREJUDICE**.  Plaintiffs may file a motion for leave to file a Second Amended Complaint with a copy of the Second Amended Complaint attached that addresses the issues the Court highlighted in this Order **no later than February 7, 2025**. Plaintiffs shall remove Statements 1 through 6, Statement 13, and Statement 14 from their Second Amended Complaint.  Plaintiffs may only amend their claims as to Statements 7 through 12.  Plaintiffs shall also submit a redline with their motion for leave to file a Second Amended Complaint that clearly indicates the changes between the First Amended Complaint and Second Amended Complaint. Failure to comply with this Order will result in the Court dismissing and closing this case.  Defendant's request for attorneys' fees and costs under Florida's Anti-SLAPP statute is **DENIED WITHOUT PREJUDICE**.

**DONE AND ORDERED** in the Southern District of Florida on January 8, 2025.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:     Dusty Button, *pro se*
        Mitchell Taylor Button, *pro se*
        counsel of record

22