**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

DUSTY BUTTON AND MITCHELL TAYLOR BUTTON,

Plaintiffs,

v.

SIGRID MCCAWLEY,

Defendant.

Case No.: 0:24-cv-60911-DSL

Hon. David S. Leibowitz

**DEFENDANT SIGRID MCCAWLEY'S MOTION FOR ATTORNEYS' FEES**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

PROCEDURAL HISTORY ........ 3

LEGAL STANDARD ........ 5

ARGUMENT ........ 5

I. Ms. McCawley is entitled to attorneys' fees under Florida's Anti-SLAPP statute........ 5

A. The Buttons' claims against Ms. McCawley lacked merit. ........ 6

B. This lawsuit was filed primarily because Ms. McCawley exercised her rights to speak about public issues. ........ 7

C. Fee shifting here is mandatory. ........ 8

II. Ms. McCawley's fee request is reasonable. ........ 9

A. The rates requested are reasonable given the credentials and expertise of Ms. McCawley's legal team. ........ 10

B. The time billed was reasonable given the breadth of the work required. ........ 13

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Cases**


*Alghanim v. Alghanim*,
2024 WL 3055692 (C.D. Cal. May 8, 2024) ... 12

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 (1975) ... 6

*Anderson v. Best Buy Stores L.P*,
2020 WL 5122781 (M.D. Fla. July 28, 2020) ... 6, 7

*Belton v. GE Capital Consumer Lending, Inc.*,
2022 WL 407404 (S.D.N.Y. Feb. 10, 2022) ... 13

*Blum v. Stetson*,
465 U.S. 886 (1984) ... 9

*Bongino v. Daily Beast Co.*,
477 F. Supp. 3d 1310 (S.D. Fla. 2020) ... 5, 6, 9

*Brown v. Google LLC*,
2022 WL 2789897 (N.D. Cal. July 15, 2022) ... 12

*Button v. Melcher*,
2025 WL 937175 (D. Mass. Mar. 24, 2025) ... 2

*Button v. Roe*,
2024 WL 5136694 (D.N.H. Dec. 17, 2024) ... 2

*Button v. Thonis*,
2025 WL 1092636 (D.N.H. Apr. 11, 2025) ... 2

*Caracol TV, S.A. v. Telemundo TV Studios, LLC*,
2022 WL 17583608 (S.D. Fla. Aug. 4, 2022) ... 12

*CITGO Petroleum Corp. v. Petroleum Logistics Serv. USA, Inc.*,
2022 WL 17718802 (S.D. Fla. Nov. 30, 2022) ... 12

*City of Almaty, Kazakhstan v. Ablyazov*,
2020 WL 2488179 S.D.N.Y. Jan. 7, 2019) ... 13

*City of Almaty, Kazakhstan v. Sater*,
2023 WL 8237115 (S.D.N.Y. Nov. 28, 2023) ... 13

*Coleman v. Grand*,
523 F. Supp. 3d 244 (E.D.N.Y. 2021) ... 7

*Corsi v. Newsmax Media, Inc.*,
2022 WL 18586842 (S.D. Fla. Jan. 6, 2022) ... 13

*Corsi v. Newsmax Media, Inc.*,
519 F. Supp. 3d 1110 (S.D. Fla. 2021) ... 6, 8

*Davis v. McKenzie*,
2017 WL 8809359 (S.D. Fla. Nov. 3, 2017) ... 7

*Dillard v. City of Greensboro*,
213 F.3d 1347 (11th Cir. 2000) .................... 10

*Dossett v. Ho-Chunk, Inc.*,
472 F. Supp. 3d 900 (D. Or. 2020) .................... 7

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
2023 WL 6563864 (11th Cir. Oct. 10, 2023).................... 10

*Global Digit. Solutions, Inc. v. Bolzan*,
2021 WL 7630524 (S.D. Fla. Aug. 13, 2021) .................... 12

*Gray v. Bostic*,
625 F.3d 692 (11th Cir. 2010) .................... 9

*Infogroup Inc. v. Off. Depot Inc.*,
2024 WL 4110526 (S.D. Fla. Aug. 21, 2024) .................... 10

*Kenny A. ex rel. Winn v. Perdue*,
547 F.3d 1319 (11th Cir. 2008) .................... 9

*Loranger v. Stierheim*,
10 F.3d 776 (11th Cir. 1994) .................... 9

*Mac Isaac v. Twitter, Inc.*,
557 F. Supp. 3d 1251 (S.D. Fla. 2021) .................... 6, 7, 8

*Moreira-Brown v. Las Vegas Rev. J., Inc.*,
648 F. Supp. 3d 1278 (D. Nev. 2023).................... 7

*Parekh v. CBS Corp.*,
2019 WL 223007 (M.D. Fla. Feb. 13, 2019).................... 14

*Parekh v. CBS Corporation*,
820 F. App'x 827 (11th Cir. 2020) .................... 6, 7, 8

*Reed v. Chamblee*,
2024 WL 69570 (M.D. Fla. 2024).................... 6

*Scelta v. Delicatessen Support Servs., Inc.*,
146 F. Supp. 2d.................... 9

*Todd v. Lovecruft*,
2020 WL 60199 (N.D. Cal. Jan. 6, 2020).................... 7

*Trividia Health, Inc., v. Nipro Corp.*,
2022 WL 1744701 (S.D.N.Y. May 31, 2022) .................... 12

*Valley v. Ocean Sky Limo*,
82 F. Supp. 3d 1321 (S.D. Fla. 2015) .................... 10

*Vesselov v. Harrison*,
2024 WL 536061 (S.D. Fla. Jan. 4, 2024).................... 6

*Vibe Ener v. Duckenfield*,
2020 WL 6373419 (S.D. Fla. Sept. 29, 2020) .................... 6, 8

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,
881 F.3d 835 (11th Cir. 2018) .......... 6

*Woodard v. Navient Sols., LLC*,
2024 WL 94468 (D. Neb. Jan. 9, 2024) .......... 12

*WPB Residents for Integrity in Gov't, Inc. v. Materio*,
284 So. 3d 555 (Fla 4th DCA 2019) .......... 5

**Statutes**

Fla. Stat. § 768.295 .......... 1, 5, 8

**Other Authorities**

Florida Legislative Staff Analysis, H.B. 1041 (March 25, 2015) .......... 2

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that upon the accompanying Motion for Attorneys' Fees, Defendant Sigrid S. McCawley will move this Court for an order awarding attorneys' fees under Florida's Anti-SLAPP statute, Fla. Stat. § 768.295(1).

Dated: July 21, 2025

Respectfully submitted,

*/s/ Jason Hilborn*

Stuart H. Singer (FBN 377325)
Jason Hilborn (FBN 1008829)
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
jhilborn@bsfllp.com

**PRELIMINARY STATEMENT**

This lawsuit was an ill-advised attempt to prevent Sigrid McCawley from exercising her constitutional right to speak on a matter of public concern: her clients' high-profile lawsuit concerning alleged sexual misconduct by the Plaintiffs here, Dusty and Taylor Button. Florida's Anti-SLAPP statute is meant to address this exact type of strategic lawsuit against public participation. *See* Fla. Stat. § 768.295(1).

Ms. McCawley is a well-known lawyer and advocate for sexual-abuse survivors. As part of her commitment to protecting women and girls from sexual violence, she represents *pro bono* a group of six women suing the Buttons in the District of Nevada for sexual assault, sex trafficking, and related causes of action. In connection with that representation, Ms. McCawley has made public statements concerning her clients' claims. [*See* ECF No. 63 ("Order") at 3–4 (listing statements)]. The Buttons sued Ms. McCawley here to attempt to silence that speech.

This case is not the Buttons' only unlawful attempt to censor those who have spoken out against them. In 2024 alone, the Buttons filed seven frivolous lawsuits against the Nevada plaintiffs' family, friends, therapists, *pro bono* counsel, and other supporters—all to distract from their own misconduct and intimidate their alleged victims and those who care for them.[1]

Four of those lawsuits have been dismissed with prejudice. A court dismissed one on the grounds that the Buttons' complaint violated Federal Rule of Civil Procedure 8 and "even a cursory look ... indicate[d] that it" could not "meet the pleading standard under Rule 12(b)(6)." [*See Button et al. v. Humphries et al.*, 8:24-cv-01730-JVS-DFM (C.D. Cal.), ECF No. 94 at 3–5]. Another

[1] *See Button et al. v. McCawley*, 0:24-cv-60911-DSL (S.D. Fla.); *Button et al. v. Humphries et al.*, 8:24-cv-01730-JVS-DFM (C.D. Cal.); *Button et al. v. Roe et al.*, 1:24-cv-00220-SM-AJ (D. N.H.); *Button et al. v. Melcher*, 1:24-cv-12632-WGY (D. Mass.); *Button et al. v. The New York Times et al.*, 1:24-cv-05888-MKV (S.D.N.Y.); *Button et al. v. Breshears*, 1:24-cv-03757-MKV (S.D.N.Y.); *Button et al. v. Doherty et al.*, 1:24-cv-05026-JPC-KHP (S.D.N.Y.).

court dismissed the Buttons' defamation and related claims against a Nevada plaintiff's former attorney *sua sponte* under the litigation privilege. *See Button v. Melcher*, 2025 WL 937175, at *2–3 (D. Mass. Mar. 24, 2025). Yet another rejected the Buttons' "frivolous and vexatious attempt to intimidate friends and family of the Nevada plaintiffs" because even "charitably constru[ed]," their claims against Nevada plaintiff Jane Doe 1's parents, therapist, and former attorney "lack any legal merit." *Button v. Roe*, 2024 WL 5136694, at *2, *7 (D.N.H. Dec. 17, 2024); *see also Button v. Thonis*, 2025 WL 1092636 (D.N.H. Apr. 11, 2025).[2]

This Court likewise dismissed the Buttons' claims with prejudice. It held that all of Ms. McCawley's allegedly defamatory statements were constitutionally protected opinion, and that the Buttons' alternative claims were barred by Florida's single action/single publication rule. [*See* Order at 6–12]. Undeterred, the Buttons have repeatedly threatened to continue their campaign of retaliatory litigation against other third parties. [*See, e.g.*, *Humphries et al. v. Button et al.*, 2:21-cv-01412-ART-EJY (D. Nev.) ("Nevada Litigation"), ECF No. 480 at 10 n.13 (The Buttons stating they have filed lawsuits in multiple courts and "will continue … until the Buttons prove the corruption and fraud committed against them")]. And the Buttons' have now started moving to disqualify—without success—the federal judges who have dismissed their frivolous claims. [*See Button et al. v. Humphries et al.*, 8:24-cv-01730-JVS-DFM (C.D. Cal.), at ECF No. 114 (denying the Buttons' motion to disqualify the district court judge)].

Because this Court concluded that the Buttons' claims are meritless, Ms. McCawley is entitled to recover her reasonable attorneys' fees under Florida's Anti-SLAPP statute. The purpose of Florida's Anti-SLAPP statute is clear: to protect the free speech rights of Floridians by ensuring that if a plaintiff sues them "without merit" and targets their lawful First Amendment expression,

[2] Motions to dismiss in the remaining three actions are fully briefed and pending.

that plaintiff will have to foot the bill of defending the meritless action. *See, e.g.*, Florida Legislative Staff Analysis, H.B. 1041, at I(A) (March 25, 2015) (defending against a SLAPP suit "even when the legal defense is strong, requires a substantial investment of money, time, and resources" which alone can "divert the SLAPP defendant from pursuing the constitutionally protected activity" and therefore "chill[] speech").

Ms. McCawley has no interest in seeking an exorbitant fee award. That said, the Buttons' broad attack on free speech—including their brazen attacks on their victims' *pro bono* attorney—cannot go without consequence. The Buttons also must be deterred from launching further frivolous attacks elsewhere. Accordingly, Ms. McCawley is seeking reimbursement of just a fraction of her reasonable attorneys' fees after dramatically reducing her fee request in two ways. First, she has substantially discounted her attorneys' rates to align with the rates granted in other fee awards in this District. Second, and more significantly, rather than seek reimbursement for the hundreds of attorney hours expended throughout the life of this case going back to May 2024, she seeks reimbursement only for the 62.5 hours spent opposing the Buttons' motion for leave to file a Second Amended Complaint. In total, Ms. McCawley seeks $32,259.00 in fees, as set forth in Exhibit 1 to the Declaration of Jason Hilborn ("Hilborn Decl.") accompanying this motion.

Ms. McCawley's narrow request is reasonable and focused on fulfilling the Florida Legislature's purpose of deterring meritless suits that target free speech. Ms. McCawley respectfully requests that it be granted by this Court.

## **PROCEDURAL HISTORY**

The Buttons filed their original complaint on May 28, 2024. [ECF No. 1]. Ms. McCawley moved to dismiss. [ECF No. 9]. In response, the Buttons filed an Amended Complaint, [ECF No. 13], which Ms. McCawley again moved to dismiss. [ECF No. 24]. On January 8, 2025, the Court

granted Ms. McCawley's motion to dismiss the Amended Complaint in full but for denying her request for fees and costs under Florida's Anti-SLAPP statute [ECF No. 50].

Specifically, the Court dismissed with prejudice the Buttons' claims as to eight of Ms. McCawley's fourteen allegedly defamatory statements—Statements 1 through 6, Statement 13, and Statement 14—because those claims were time-barred. [*Id.* at 9]. The Court also dismissed the Buttons' remaining claims over Statements 7 through 12, but it did so "without prejudice to allow Plaintiffs a final opportunity to amend their Complaint (if they can)" in "an abundance of caution, and primarily because the Plaintiffs appear *pro se*." [*Id.* at 13]. The Court warned them that "[e]ven *pro se* plaintiffs are subject to sanctions for filing frivolous and vexatious complaints." [*Id.* at 17]. The Court also held that Ms. McCawley was not "entitled to an award of fees and costs *at this juncture*" because "the Court [had not] made the finding that Plaintiffs' lawsuit as a whole is without merit." [*Id.* at 21 (emphasis added)].

The Buttons then moved for leave to file a second amended complaint. [ECF No. 55]. The proposed second amended complaint dropped their previously asserted claims for injurious falsehood, libel per se, slander per se, and defamation per quod. But it re-asserted their claims for defamation per se (Count I), prima facie defamation (Count IV), intentional infliction of emotional distress (Count II), and civil conspiracy (Count III). It also added a new claim for defamation by implication (Count V) and included new factual allegations. [*See generally* ECF No. 55-2]. Ms. McCawley opposed the Buttons' motion for leave to amend. [ECF No. 59].

On May 28, 2025, the Court denied the Buttons' request for leave to amend as futile and dismissed this case with prejudice. [*See* Order]. The Court held that all of Ms. McCawley's alleged statements were inactionable opinion under the First Amendment. [*Id.* at 7, 11]. It also held that the Buttons' remaining claims were barred by Florida's single publication/single action rule. [*Id.*

at 7, 11]. Further, the Court recently denied the Buttons' motion to proceed *in forma pauperis* on appeal because the issues raised by the Buttons' claims are "frivolous from an objective standard." [ECF No. 69 at 2 (citation omitted)].

In denying the Buttons' request for leave to amend, the Court expressly noted that it would "retain[] jurisdiction to address any motion by Defendant for the award of attorneys' fees and costs pursuant to Florida's Anti-SLAPP statute for the Court to consider." [*Id.* at 12].

## LEGAL STANDARD

Florida's Anti-SLAPP statute applies to claims that are "without merit" and filed "primarily because" the defendant "has exercised the constitutional right of free speech in connection with a public issue." Fla. Stat. § 768.295(1)–(3). The "point of" Florida's "anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights." *WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555, 559 (Fla 4th DCA 2019) (citation omitted). Under the statute, the "court *shall* award the prevailing party reasonable attorney fees and costs" when the underlying suit was brought "in violation of this section." *Id.*; § 768.295(4) (emphasis added). In other words, fee shifting is mandatory. *See, e.g.*, *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1321 (S.D. Fla. 2020) ("the statute awards a defendant fees and costs if a plaintiff files a forbidden suit").

## ARGUMENT

### I. Ms. McCawley is entitled to attorneys' fees under Florida's Anti-SLAPP statute.

To recover attorneys' fees under Florida's Anti-SLAPP statute, a movant must show that (1) the lawsuit against her was "without merit," and (2) the suit was filed "primarily" because she "exercised the constitutional right of free speech in connection with a public issue." *Bongino*, 477 F. Supp. 3d at 1321. Ms. McCawley meets both elements here.

**A. The Buttons' claims against Ms. McCawley lacked merit.**

This Court already determined that the Buttons' claims against Ms. McCawley were meritless when it dismissed each claim without leave to amend. [*See generally* Order]. Indeed, the Court denied the Buttons' motion to proceed *in forma pauperis* on appeal because their claims are "without arguable merit either in law or fact." [ECF No. 69 at 2]. These orders alone are sufficient to show that the Buttons' claims were sufficiently "without merit" to justify fees under the Anti-SLAPP statute.

In *Parekh v. CBS Corporation*, for example, the Eleventh Circuit affirmed the district court's award of Anti-SLAPP fees after dismissing a claim for defamation. 820 F. App'x 827, 836 (11th Cir. 2020). And this Court has awarded Anti-SLAPP fees many times for dismissed defamation claims. *See, e.g.*, *Bongino*, 477 F. Supp. 3d at 1322 (holding that "[b]ecause [p]laintiff's suit fails to state a claim for defamation, it was without merit under [the Anti-SLAPP statute]"); *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021) (dismissing defamation lawsuit with prejudice and awarding Anti-SLAPP fees); *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1128 (S.D. Fla. 2021) (same); *Vesselov v. Harrison*, 2024 WL 536061, at *5 (S.D. Fla. Jan. 4, 2024), *aff'd*, 2024 WL 4449685 (11th Cir. Oct. 9, 2024) (same); *see also Anderson v. Best Buy Stores L.P*, 2020 WL 5122781, at *4 (M.D. Fla. July 28, 2020) (dismissing intentional-infliction-of-emotional-distress claim and awarding Anti-SLAPP fees).[3]

[3] These cases also show that Florida's Anti-SLAPP statute's fee-shifting mechanism "'unequivocally' appl[ies] in a federal court exercising diversity jurisdiction." *Bongino*, 477 F. Supp. 3d at 1324. The Anti-SLAPP statute's fee-shifting provision creates a "substantive right," so this Court is "bound to apply" it. *Reed v. Chamblee*, 2024 WL 69570, at *5 (M.D. Fla. 2024) (quoting *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 848 (11th Cir. 2018)); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) (state law on fees "should be followed" in federal diversity cases).

### B. This lawsuit was filed primarily because Ms. McCawley exercised her rights to speak about public issues.

This suit was filed primarily as retaliation for Ms. McCawley's statements regarding a "public issue."

*First*, as this Court already recognized, Ms. McCawley's alleged statements all concerned "her clients' case in the District of Nevada." [Order at 8, 9, 20]. That "public litigation proceeding" is a matter of public interest. *Vesselov*, 2024 WL 536061, at *5, 13–14; *see also Vibe Ener v. Duckenfield*, 2020 WL 6373419, at *5 (S.D. Fla. Sept. 29, 2020) (holding "publicly filed lawsuit" is a "public issue" and awarding Anti-SLAPP fees); *see also, e.g.*, *Mac Isaac*, 557 F. Supp. 3d at 1261 (statements were connected to a public issue where they concerned a grand jury subpoena).

*Second*, Ms. McCawley's statements were subject to widespread media coverage and were all published in newspapers, magazine articles, and television broadcasts. [*See* Order at 3–4]. This fact, too, demonstrates public interest and concern. *See Anderson*, 2020 WL 5122781, at *4 (holding that Florida's Anti-SLAPP law applied to lawsuit because the statements were "made in or in connection with" a "news report, or other similar work"); *see also Parekh*, 820 F. App'x at 836 (concluding that lawsuit was subject to Anti-SLAPP law because "it arose out of the defendant's protected First Amendment activity—publishing a news report on a matter of public concern").

*Third*, Ms. McCawley's statements concerned alleged sexual misconduct, which is also a matter of public interest. For example, in *Davis v. McKenzie*, this Court held that a case involving sexual-abuse allegations involved "matters of public concern." 2017 WL 8809359, at *16 (S.D. Fla. Nov. 3, 2017). Other courts across the country have similarly concluded that statements concerning allegations of sexual misconduct implicate matters of public concern. *See, e.g.*, *Coleman v. Grand*, 523 F. Supp. 3d 244, 259 (E.D.N.Y. 2021) ("[T]he Court finds that sexual

impropriety and power dynamics in the music industry ... were indisputably an issue of public interest."); *Moreira-Brown v. Las Vegas Rev. J., Inc.*, 648 F. Supp. 3d 1278, 1287 (D. Nev. 2023) (holding that statements reporting on allegations of sexual abuse "concern the public's interest in court proceedings"); *Todd v. Lovecruft*, 2020 WL 60199, at *13 (N.D. Cal. Jan. 6, 2020) ("[A]ccusations of abuse on their own can serve the interest of the public at large" because they "invite discussion on identifying, responding to, and preventing sexual abuse"); *Dossett v. Ho-Chunk, Inc*., 472 F. Supp. 3d 900, 909 (D. Or. 2020) ("[A]llegations of sexual harassment … are in the public interest even if the allegations are disputed (and of course, they usually are).").

*Finally*, that this case was filed as part of a broad retaliation campaign against the Nevada plaintiffs further shows it was brought as an unlawful attempt to silence the speech of one of the Nevada plaintiffs' most outspoken advocates, rather than as a good-faith attempt to resolve a legitimate legal dispute. *See Vibe Ener.*, 2020 WL 6373419, at *4–5 (holding that a defamation lawsuit brought against an attorney for statements about a "publicly filed lawsuit" was filed "primarily because such person [] has exercised the constitutional right of free speech in connection with a public issue"). To the extent the Buttons deny the claims against them, their proper recourse is to defend the Nevada lawsuit on the merits—not to try to censor the Nevada plaintiffs' *pro bono* attorney.

The statements by Ms. McCawley at issue in this litigation were made in connection with a public issue.

**C. Fee shifting here is mandatory.**

Florida's Anti-SLAPP statute is clear that where, as here, a meritless lawsuit targets a defendant's constitutional right of free speech on a public issue, the court "*shall* award the prevailing party reasonable attorneys' fees and costs incurred in connection with a claim that an action was filed in violation of this section." Fla. Stat. § 768.295(4) (emphasis added). In other

words, under the statute, fee-shifting is mandatory, rather than discretionary. *See, e.g.*, *Corsi*, 519 F. Supp. 3d at 1128; *Mac Isaac*, 557 F. Supp. 3d at 1256.

That the Buttons are *pro se* does nothing to change this analysis. The Anti-SLAPP statute contains no special exceptions for *pro se* plaintiffs. Multiple courts in this Circuit—including the Eleventh Circuit itself—have granted or affirmed the grant of Anti-SLAPP motions requiring *pro se* parties to pay an opposing party's fees. *See, e.g.*, *Parekh*, 820 F. App'x at 836 (granting motion for Anti-SLAPP attorneys' fees against a *pro se* plaintiff); *Vibe Ener*, 2020 WL 6373419, at *5 (concluding that "[a]n award of reasonable attorneys' fees and costs is mandatory" against *pro se* plaintiff).[4] And given the Buttons' demonstrated propensity for filing frivolous litigation nationwide against anyone connected to their victims, awarding fees here aligns with the purpose of Florida's Anti-SLAPP statute. *Bongino*, 477 F. Supp. 3d at 1321 (the "Florida legislature enacted the [Anti-SLAPP] statute to deter" meritless lawsuits, and that "for that reason, the statute awards a defendant fees and costs if a plaintiff files a forbidden suit"); *Scelta v. Delicatessen Support Servs., Inc.*, 146 F. Supp. 2d at 1261 n.4 ("an award of attorneys' fees to a prevailing defendant deters frivolous lawsuits and protects defendants from burdensome litigation … the entire public inevitably suffers when a vindicative plaintiff squanders limited judicial resources by prosecuting frivolous lawsuits").

**II. Ms. McCawley's fee request is reasonable.**

Ms. McCawley seeks $32,259.00 in fees, as set forth in Exhibit 1 to the Declaration of Jason Hilborn accompanying this motion.

---

[4] In any event, the Buttons have revealed they have a "sponsor" funding their litigation efforts, which belies any suggestion they cannot pay. *See* Nevada Litigation, ECF No. 340 at 7.

Courts in the Eleventh Circuit use the "lodestar approach" to calculate reasonable attorneys' fees. *Gray v. Bostic*, 625 F.3d 692, 714 (11th Cir. 2010). The lodestar figure is reached by "multiply[ing] the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). After determining the lodestar, courts may adjust the amount upwards or downwards based on the "results obtained." *Kenny A. ex rel. Winn v. Perdue*, 547 F.3d 1319, 1322 (11th Cir. 2008). Reasonable attorneys' fees "are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stetson*, 465 U.S. 886, 895 (1984).

In short, two inquiries are relevant: the reasonableness of the rates charged, and the reasonableness of the number of hours spent by counsel. The fees requested here are reasonable on both fronts.

**A. The rates requested are reasonable given the credentials and expertise of Ms. McCawley's legal team.**

Courts may determine a reasonable hourly rate. It is typically defined as "the prevailing market rate in the relevant community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 2023 WL 6563864, at *1 (11th Cir. Oct. 10, 2023) (citation omitted).

Ms. McCawley is entitled to seek fees at the actual rates that Boies Schiller Flexner LLP ("Boies Schiller") charged. *See Valley v. Ocean Sky Limo*, 82 F. Supp. 3d 1321, 1327 (S.D. Fla. 2015) ("What a lawyer charges his fee-paying clients 'is powerful, and perhaps the best, evidence of his market rate'") (quoting *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354–55 (11th Cir. 2000)). Nevertheless, she has substantially discounted her request below the rates that Boies Schiller and its peer firms regularly charge clients for work of comparable complexity within the

Eleventh Circuit. [*See* Hilborn Decl. ¶ 11]; *see also, e.g.*, *Infogroup Inc. v. Off. Depot Inc.*, 2024 WL 4110526, at *3 (S.D. Fla. Aug. 21, 2024), *report and recommendation adopted*, 2024 WL 4104029 (S.D. Fla. Sept. 6, 2024) (finding hourly rate of $1,050 for senior partner, $900 for partner, $850 for counsel, and $800 for associate for attorneys at DLA Piper and Hogan Lovells to be reasonable).

Even though other lawyers also worked on the matter, Ms. McCawley seeks fees for the work of only one partner (Jason Hilborn), two associates (Lindsey Ruff and Kelly Waldo), and two law clerks (Julia Bevan and Naomi Hardin), at the following discounted rates: $660 for Jason Hilborn (discounted from his actual rate of $1,030); $550 for Lindsey Ruff (discounted from her actual rate of $960); $500 for Kelly Waldo (discounted from her actual rate of $920); $420 for Julia Bevan (discounted from her actual rate of $770); and $420 for Naomi Hardin (discounted from her actual rate of $770). [*See* Hilborn Decl., Ex. 1]. As explained in more detail in the declaration of Jason Hilborn, these attorneys possess the following qualifications, among others:

- Mr. Hilborn is a partner at Boies Schiller, who obtained his J.D. from Harvard Law. He is a former Deputy Solicitor General for the State of Florida, he has served as a clerk for Vice Chancellor Glasscock III on the Delaware Court of Chancery and the Honorable John K. Bush of the U.S. Court of Appeals for the Sixth Circuit, and he has extensive litigation experience. [Hilborn Decl. ¶ 3].
- Ms. Ruff is an associate at Boies Schiller who joined the firm right after graduating *magna cum laude* from Cornell Law School in 2019. She has experience litigating in a broad range of practice areas, including significant experience representing survivors of sexual abuse. [*Id.* ¶ 4].
- Ms. Waldo is an associate who joined Boies Schiller after graduating with high

honors from University of North Carolina School of Law in 2019 and completing three clerkships, including a clerkship with the Chief Judge of the U.S. District Court for the Southern District of New York. [*Id.* ¶ 5].

- Ms. Bevan and Ms. Hardin are law clerks at Boies Schiller who joined the firm after graduating from New York University School of Law and Columbia Law School, respectively, in 2024. Both Ms. Bevan and Ms. Hardin have worked on a wide range of matters including complex commercial litigation disputes and multiple cases representing survivors of sexual abuse. [*Id.* ¶¶ 6, 7].

Despite these attorneys' significant qualifications, Ms. McCawley requests fees at discounted rates to align with similar fee awards granted in this Circuit. Ms. McCawley requests a rate of $660 for Jason Hilborn and $420 for Julia Bevan and Naomi Hardin, since those are the rates that were awarded to Boies Schiller attorneys with similar levels of experience in *Global Digit. Solutions, Inc. v. Bolzan*, 2021 WL 7630524, at *3 (S.D. Fla. Aug. 13, 2021) (awarding attorneys' fees for Boies Schiller at rate of $820 for a partner, $660 for a junior partner, and $420 for a junior associate). Finally, Ms. McCawley requests a rate of $550 for senior associate Lindsey Ruff, and $500 for mid-level associate Kelly Waldo, as a reasonable middle ground between the rates she is requesting for a junior partner and junior associates. Courts in this circuit routinely grant fee awards at comparable or higher rates. *See, e.g.*, *CITGO Petroleum Corp. v. Petroleum Logistics Serv. USA, Inc.*, 2022 WL 17718802, at *5 (S.D. Fla. Nov. 30, 2022), *report and recommendation adopted*, 2022 WL 17716483 (S.D. Fla. Dec. 15, 2022) (holding that fees of $850 for a partner and $700 for an associate are reasonable); *Caracol TV, S.A. v. Telemundo TV Studios, LLC*, 2022 WL 17583608, at *3 (S.D. Fla. Aug. 4, 2022) (awarding fees of $765 for work by a partner and $415 for an associate).

On top of comparable rates awarded in this Circuit more broadly, Boies Schiller specifically has been awarded fees for its attorneys at rates above or on par with the rates requested here. *See, e.g.*, *Woodard v. Navient Sols., LLC*, 2024 WL 94468, at *9 (D. Neb. Jan. 9, 2024) (awarding $10,750,000 in attorneys' fees with Boies Schiller partner rates set at $1,290 and associate rates ranging from $670 to $710); *Alghanim v. Alghanim*, 2024 WL 3055692, at *2 (C.D. Cal. May 8, 2024) (awarding a $1,270 hourly rate for a partner at Boies Schiller); *Brown v. Google LLC*, 2022 WL 2789897, at *2 (N.D. Cal. July 15, 2022) (awarding attorneys' fees, including hourly rate of $1,950 for a managing partner of Boies Schiller); *Trividia Health, Inc., v. Nipro Corp.*, 2022 WL 1744701, at *2 (S.D.N.Y. May 31, 2022) (awarding attorneys' fees, including the requested hourly rates of $890 for Boies Schiller partner, and $650-$690 per hour for associate work on the matter); *City of Almaty, Kazakhstan v. Ablyazov*, 2022 WL 1406248, at *4 (S.D.N.Y. May 4, 2022) (awarding $221,285.31 in attorneys' fees, including hourly rate of $1,180 for a partner of Boies Schiller, and noting "there is no doubt that all of the individuals who performed work are highly competent. This Court is very familiar with the quality of advocacy in this matter and has at all times found the BSF team to be prepared and skilled advocates."); *Belton v. GE Cap. Consumer Lending, Inc.*, 2022 WL 407404, at *6–7 (S.D.N.Y. Feb. 10, 2022) (awarding $2,000,000 in attorneys' fees with Boies Schiller partner rates set at $1,100 and noting counsel "exhibited exemplary skill" and the hourly rates were "reasonable"); *City of Almaty, Kazakhstan v. Sater*, 2023 WL 8237115, at *1 (S.D.N.Y. Nov. 28, 2023) (awarding $794,544.39 in attorneys' fees to Boies Schiller attorneys). Ms. McCawley's requested rates are reasonable.

**B. The time billed was reasonable given the breadth of the work required.**

The hours requested by Ms. McCawley are reasonable because they are substantially discounted from the actual number of hours billed in connection with this year-and-a-half long, meritless case. It would be well within Ms. McCawley's rights to seek reimbursement for all hours

billed during the entire life of this case. *See, e.g.*, *Corsi v. Newsmax Media, Inc.*, 2022 WL 18586842, at *4 (S.D. Fla. Jan. 6, 2022) (awarding fees "from the inception of the lawsuit"). Nevertheless, Ms. McCawley seeks only reimbursement for the 62.5 hours billed in connection with Ms. McCawley's opposition to Plaintiffs' motion for leave to file a Second Amended Complaint.

An award of fees for these 62.5 hours is reasonable given the scope and volume of work required. [*See* Hilborn Decl., Ex. 1]. Among other time-consuming work, to draft the opposition to the Buttons' motion for leave to file a second amended complaint, Ms. McCawley's counsel had to closely review the new allegations in the Buttons' lengthy and disorganized proposed pleading—totaling 172 pages. [*See* ECF No. 55-1]. After trying to make sense of the Buttons' allegations, counsel then had to conduct legal research concerning the revised four claims that the Buttons brought against Ms. McCawley, and extensive research concerning the new claim for defamation by implication. [*See id.*]

This complex work was allocated appropriately among members of the team. Junior and mid-level associates performed the majority of the drafting and editing under the supervision of more senior lawyers. Ms. McCawley's counsel also excluded all block billed time entries from the table of fees associated with filing the sanctions motion and were thus conservative in their calculation, and, as noted above, some attorneys' work has been entirely left off her request.

In the end, Ms. McCawley's counsel "obtained an excellent result" in the complete dismissal of this defamation case. *Parekh v. CBS Corp.*, 2019 WL 2230075, at *3 (M.D. Fla. Feb. 13, 2019), *report and recommendation adopted*, 2019 WL 2225851 (M.D. Fla. Apr. 19, 2019), *aff'd*, 820 F. App'x 827 (11th Cir. 2020). She thus respectfully requests that the Court grant her reasonable request for attorneys' fees.

## CONCLUSION

For the foregoing reasons, Ms. McCawley respectfully requests that the Court grant her request for attorneys' fees under Florida's Anti-SLAPP statute.

Dated: July 22, 2025

Respectfully submitted,

*/s/ Jason Hilborn*
Stuart H. Singer (FBN 377325)
Jason Hilborn (FBN 1008829)
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
jhilborn@bsfllp.com

**LOCAL RULES 7.1(a)(3) AND 7.3 CERTIFICATION**

Counsel for Ms. McCawley hereby certify that they served a draft of this motion on the Buttons on June 27, 2025. On July 16, the Buttons provided written objections to Ms. McCawley's draft motion. Counsel for Ms. McCawley met and conferred with the Buttons on July 17, 2025. The parties were unable to resolve this dispute absent Court intervention. At the Buttons' insistence, email correspondence regarding this motion is attached to the Declaration of Jason Hilborn as Exhibit 2.

**VERIFICATION**

Under penalty of perjury, and pursuant to 28 U.S.C. § 1756 and Local Rule 7.3, I verify that the foregoing motion and its attachments are true and correct. Executed on July 22, 2025.

*/s/ Jason Hilborn*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served on July 22, 2025 via the Court's CM/ECF electronic-filing system addressed to all parties on the e-service list.

*/s/ Jason Hilborn*